# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Skky, Inc.,

        Plaintiff,

vs.

Manwin USA, Inc., and Manwin Holding, s.a.r.l,

        Defendants.

Case No.:  13-2086 (PJS/JJG)

---

Skky, Inc.,

        Plaintiff,

vs.

Vivid Entertainment, LLC,

        Defendant.

Case No.:  13-2087 (PJS/JJG)

---

Skky, Inc.,

        Plaintiff,

vs.

Playboy Enterprises, Inc.,

        Defendant.

Case No.:  13-2089 (PJS/JJG)

---

# DEFENDANTS' MEMORANDUM OF LAW
# IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY

# TABLE OF CONTENTS

Page

Introduction ...................................................................................................... 3

Relevant Factual and Procedural Background ................................................... 4

Legal Authority.................................................................................................. 7

Argument ........................................................................................................... 8

   A.  Parker Rosen's Disqualification is Warranted Under Minnesota Rule of
       Professional Conduct 1.8(i) ................................................................. 8

   B.  Parker Rosen's Disqualification is Warranted Under Minnesota Rule of
       Professional Conduct 1.8(k) ............................................................. 10

   C.  Defendants Have Standing to Bring This Motion ................................. 12

   D.  Defendants Alternatively Move To Amend The Protective Order ........ 13

Conclusion ....................................................................................................... 14

# TABLE OF AUTHORITIES

Page

## Cases

*Bernhoft Law Firm, S.C. v. Pollock* ,

    2013 U.S. Dist. LEXIS 97165 ........................................................................9

*Carlsen v. Thomas*,

    159 F.R.D. 661 (E.D. Ky. 1994)....................................................................5

*Colyer v. Smith*,

    50 F.Supp.2d 966 (C.D. Cal. 1999) ............................................................10

*Helgemo v. Pampered Chef*,

    No. A04-1434, 2005 WL 949155 (Minn. App. Apr. 25, 2005) ................6, 8

*Hernandez v. Guglielmo*,

    796 F. Supp. 2d 1285 (D. Nev. 2011).........................................................10

*North Star Hotels Corp. v. Mid-City Hotel Assocs.*,

    118 F.R.D. 109 (D. Minn. 1987) ..................................................................5

*Northbrook Digital LLC v. Vendio Servs.*,

    625 F. Supp. 2d 728 (D. Minn. 2008)...........................................................5

*O'Connor v. Jones*,

    946 F.2d 1395 (8th Cir. 1991) ......................................................................5

*Olson v. Snap Prods., Inc.*,

    183 F.R.D. 539 (D.Minn. 1998) ...................................................................6

*Pergament v. Ladak*,

    2013 U.S. Dist. LEXIS 102824 ...................................................................9

*United States v. Miller*,

    624 F.2d 1198 (3rd Cir. 1980) ......................................................................5

*Williams v. Transworld Air Lines, Inc.,*

    588 F. Supp. 1037 (W.D. Mo. 1984) ...........................................................6

Defendants Manwin USA, Inc., Manwin Holding, s.a.r.l., Playboy Enterprises, Inc. and Vivid Entertainment, LLC (collectively "Defendants") hereby move pursuant to Minnesota Rules of Professional Conduct 1.8(i) and 1.8(k) to disqualify the Parker Rosen law firm and its named partners Andrew Parker and Daniel Rosen from further representing Plaintiff Skky Inc. ("Skky") in the above-captioned actions.

## INTRODUCTION

Plaintiff Skky Inc. is a non-practicing entity ("NPE") that admittedly operates out of an office suite shared by its litigation counsel, the Parker Rosen law firm. For nearly six months Andrew Parker served as Skky's litigation counsel in these actions. Unbeknownst to Defendants and this Court, Mr. Parker was also Skky's Chief Operating Officer during this time. Only after Defendants discovered both material facts from their own research did Skky acknowledge these facts. Skky now appears to recognize that Mr. Parker's representation was inappropriate in light of these facts, as evidenced by Skky's immediate offer to remove Mr. Parker as counsel of record and Mr. Parker's subsequent withdrawal from these actions. Skky's remedy, however, to replace Mr. Parker with one of his two legal partners, Daniel Rosen, fails to address Defendants' concerns. Indeed, the continued representation of Skky by Andrew Parker, Daniel Rosen or any of the five (5) attorneys at the Parker Rosen firm is prohibited by the Minnesota Rules of Professional Conduct and will unduly prejudice Defendants by eviscerating key protections of confidentiality in these actions.

3

Defendants, therefore, respectfully request that the Court disqualify the Parker Rosen law firm.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Skky commenced the above-captioned matters on July 31, 2013.[1]  Subsequent to filing their respective pleadings, Skky and the Defendants engaged in extensive negotiations regarding the parties' Protective Order, specifically carving out protections for highly confidential information and source code designated as "Outside Counsel Eye's Only."  At no time during these discussions did Skky disclose the fact that its litigation counsel, Andrew Parker, was also Skky's Chief Operating Officer – a fact that was material to the negotiations and effectively eviscerated key safeguards of the proposed Protective Order.

On November 21, 2013, the Court held its Rule 26 conference and entered the parties' Protective Order on November 22, 2013.  (Dkt. No. 32).  Defendants and Skky exchanged initial disclosures on November 22, 2013.  Notably Andrew Parker was the only Skky Executive Officer *not* named in Skky's disclosures.  Affidavit of Todd Nosher dated January 27, 2014 ("Nosher Aff."), Ex. 1 (Skky 26(a) disclosures).  The parties have since exchanged initial discovery requests and have recently reached a verbal agreement regarding the discovery of electronically stored information ("ESI").[2]  Skky has

---

[1] After being advised by Defendants that its indirect infringement claims were insufficient under controlling law, Skky filed Amended Complaints against each of the Defendants on September 20, 2013.

[2] At the parties' October 31, 2013 Rule 26(f) meet and confer, Defendants requested that Skky propose a plan for ESI discovery.  Skky delayed in circulating its proposal for nearly

additionally served deposition notices on all Defendants pursuant to Fed. R. Civ. P. 30(b)(6).[3]

On January 14, 2014, Defendants, through their own research, discovered a Skky SEC filing dated December 5, 2013 listing Andrew Parker as one of its three Executive Officers.  Nosher Aff. Ex. 3 (SEC Form D).  Equally concerning, the filing lists 888 Colwell Building, 123 North Third Street, Minneapolis Minnesota as Skky's "Principal Place of Business."  *Id.  This is the same address and same office suite as the Parker Rosen law firm*.[4]  *Compare* Exhibit 3 *with* Parker Rosen website materials attached hereto.  Nosher Aff. Ex. 4.  This same office suite was also provided as the address for *all* five individuals listed as either Skky Executive Officers or Directors in the SEC filing.  Nosher Aff. Ex. 3.

Defendants immediately wrote to Skky requesting a meet and confer and expressing deep concern with not only the fact that Mr. Parker was contemporaneously serving as Skky's Executive Officer and litigation counsel, but that Skky failed to raise this material fact during what Defendants believed were good faith negotiations of the Protective Order.

---

six weeks.  Nosher Aff. Ex. 2 (Skky email dated December 10, 2013).  After significant negotiations, the parties' finally reached a verbal agreement regarding ESI discovery on January 24, 2014.

[3] To maintain the protection of their confidential information, Defendants have postponed the scheduling of the Rule 30(b)(6) depositions and the production of confidential information until the issues raised in the present motion are resolved by the Court.  At this time discovery is still in its very early stages in each of the above-captioned cases.

[4] Skky previously listed its principal place of business as 825 E. Wayzata Blvd., Wayzata Minnesota 55391 in its original and amended pleadings.

Nosher Aff. Ex. 5 (Defendants' Jan. 16, 2014 Letter).  That same day, the parties met via teleconference, and Skky *immediately* offered to remove Andrew Parker as counsel of record.  Skky also made clear that no Parker Rosen attorney would represent Skky in any of the cases going forward.  No mention was made of Daniel Rosen.

One day later, Defendants wrote to Skky to address, *inter alia*, Skky's Amended Rule 30(b)(6) notices in view of this newly discovered conflict.  Nosher Aff. Ex. 6 (Defendants' Jan. 17, 2014 Letter).  Skky responded on January 20, 2014 and acknowledged for the first time that Andrew Parker is Skky's Chief Operating Officer whose executive role is "related to the operations of the company."  Nosher Aff. Ex. 7 (Skky's Jan. 20, 2014 letter).  Skky also confirmed that it now shares the same address with the Parker Rosen firm.[5]  *Id.*  Skky then offered to "file the necessary paperwork this week to substitute Mr. Daniel Rosen of Parker Rosen LLC for Mr. Parker as one of the counsel of record for Skky in the litigations."  *Id.*  On January 23, 2014, Skky replaced Andrew Parker with his partner Daniel Rosen as counsel of record for all the above litigations.  (Dkt. 36).  One day later, the parties met via teleconference.  Defendants once again objected to Parker Rosen's continued representation and explained that Skky's purported remedy of replacing counsel was in violation of M.R.P.C. 1.8(k) and asked that Parker Rosen withdraw as counsel of record based on the inherent conflict.[6]  Skky refused.  *Id.*  Skky

---

[5] Indeed, Skky admitted that it "moved" its "corporate headquarters" to a suite shared by the Parker Rosen firm *after the filing of these actions*.  *Id.*  The timing of this move only raises additional concerns.

[6] Immediately following the January 24, 2014 meet and confer, Defendants wrote to Skky restating their objections to Parker Rosen's representation and making clear that all

and Defendants are now at an impasse regarding Parker Rosen's continued role as counsel to Skky in the above-captioned litigations.

## LEGAL AUTHORITY

The authority to disqualify attorneys derives from a Court's inherent power to preserve the integrity of the adversary process. *United States v. Miller*, 624 F.2d 1198, 1201 (3rd Cir. 1980); *Carlsen v. Thomas*, 159 F.R.D. 661, 663 (E.D. Ky. 1994). "To maintain public confidence in the legal profession and the courts, a court has inherent authority to regulate and discipline attorneys at bar, and a court may address violations of professional ethics on its own initiative." *Northbrook Digital LLC v. Vendio Servs.*, 625 F. Supp. 2d 728, 764 (D. Minn. 2008) (Graham, J.); *see also O'Connor v. Jones*, 946 F.2d 1395, 1399 (8th Cir. 1991); *North Star Hotels Corp. v. Mid-City Hotel Assocs.*, 118 F.R.D. 109, 112 (D. Minn. 1987). A court, therefore, has wide discretion in framing sanctions, including attorney disqualification. *Id.*

"The party moving for disqualification must satisfy a high standard of proof, but 'any legitimate doubts, which are created by the movant's proffer, must be resolved in favor of disqualification.'" *Helgemo v. Pampered Chef*, No. A04-1434, 2005 WL 949155, at *4 (Minn. App. Apr. 25, 2005) (Court upheld the district court's decision to disqualify an attorney in a subsequent litigation for using information garnered in a case that was settled against same defendants  in violation of a protective order) (citing *Olson v. Snap*

---

scheduling of 30(b)(6) depositions would be postponed until this matter is resolved and safeguards to Defendants' confidentiality are restored.  Nosher Aff. Ex. 8 (Defendants' Jan. 24, 2014 letter).

*Prods., Inc.*, 183 F.R.D. 539, 542 (D.Minn. 1998)). The *Helgemo* court also stated that "defendants have an interest in a trial free from even the risk that confidential information has been unfairly used against it." *Id.* (citing *Williams v. Transworld Air Lines, Inc.,* 588 F. Supp. 1037, 1046 (W.D. Mo. 1984)).

In this District, attorney professional conduct is governed by the Minnesota Rules of Professional Conduct D.Minn. LR 83.6(d)(2). These rules expressly prohibit an attorney from acquiring "a proprietary interest in the cause of action or subject matter of litigation the attorney is conducting for the client." M.R.P.C. 1.8(i). This prohibition extends to all lawyers of a conflicted-attorney's firm. M.R.P.C. 1.8(k).

## ARGUMENT

### A. Parker Rosen's Disqualification is Warranted Under Minnesota Rule of Professional Conduct 1.8(i)

Andrew Parker has a proprietary interest in Plaintiff Skky. He is the current Chief Operating Officer, one of only three Executive Officers, and is publicly listed as one of only five "Directors or Officers of Skky." Nosher Aff. Ex. 2. Mr. Parker also has a proprietary interest in each of these litigations and the underlying subject matter of the same. Skky is a non-practicing entity ("NPE") with ostensibly no business activities other than seeking to monetize intellectual property it claims to own through patent litigation. It seemingly has no current products for sale, no customers, and it does not have a website. As is typical with the NPE business model, Skky derives its value from its purported

intellectual property which includes two U.S. Patents – the patent-in-suit[7] and another issued divisional patent which claims priority to the patent-in-suit. Here, Skky alleges that Defendants infringe one of its two patents and seeks damages for the same. Any settlement and licensing deal to the patent-in-suit or court award based on patent infringement will inure to the benefit of Mr. Parker.[8] Thus, Mr. Parker has a significant proprietary interest in the patent-in-suit and the outcome of these actions. [9]

---

[7] U.S. Patent No. 7,548,875 ("the '875 patent or patent-in-suit) is the sole patent asserted the above-captioned litigations.

[8] As Skky's Chief Operating Officer, Mr. Parker handles the "operations of the company." But like most NPEs, Skky's operations are limited to seeking monetization of its intellectual property through patent litigations like the present actions. Mr. Rosen, therefore, likely has not only a decisional role in initiating these litigations, but will play an important role in Skky's settlement negotiations and proposed licensing activities. Mr. Rosen's attendance at recent negotiations between Skky and certain Defendants confirms this point.

[9] In its latest letter, Skky attempts to justify Parker Rosen's representation by citing, *inter alia*, *Syscon Corp. v. United States*, 10 Cl. Ct. 200, 203-204 (Cl. Ct. 1986). Nosher Aff. Ex. 9 (Skky Letter dated January 27, 2014). In *Syscon*, the Court of Claims denied a motion to disqualify an attorney and his firm from representing a plaintiff whose law partner served as its general counsel and owned a portion of plaintiff's stock. But the fact-specific *Syscon* decision is easily distinguished from the present facts. First, unlike the Minnesota Rules of Professional Conduct here, the American Bar Association ("ABA") Model Rules of Professional Conduct of 1983 – on which the *Syscon* Court relied – did not impute a conflict based on an attorney's proprietary interest in the cause of action or litigation subject matter to the attorney's law firm. *Id.* at \*9 ("The flaw in the Government's position is obvious: Rule 1.10(a) does not impute disqualification where the underlying violation is of Rule 1.8(j), as is alleged here"). Moreover, *Syscon's* reasoning is inapplicable to the present facts. *See id.* ("Should Syscon prevail, Mr. Israel will not receive any money from the Government. The only financial benefit accruing to Mr. Israel would be an increase in the value of his Syscon stock which would theoretically result from a judgment in Syscon's favor. In light of the myriad factors influencing a ***publicly-traded stock's value***, however, it is speculation to say that such a judgment would produce an actual increase in market price.") (emphasis added). Skky is not a publically traded company with countless

### B. Parker Rosen's Disqualification is Warranted Under Minnesota Rule of Professional Conduct 1.8(k)

The Parker Rosen firm – like Mr. Parker – cannot continue to represent Skky in these litigations for three reasons.   *First*, because Mr. Parker is prohibited from representing Skky under M.R.P.C. 1.8(i) as described *supra*, his firm is likewise prohibited from representing Skky under M.R.P.C. 1.8(k).   *See* M.R.P.C. 18(k) ("While lawyers are associated in a firm, a prohibition in the foregoing paragraphs (a) through (i) that applies to any one of them shall apply to all of them").

*Second*, Skky's "corporate headquarters" is based out of the Parker Rosen firm.  *See* Nosher Aff. Exs. 3, 4 and 7. Therefore, Defendants will suffer an actual, concrete injury unless the Parker Rosen firm, not just Andrew Parker, is disqualified.  For example, when confidential documents or discovery responses are served on Skky's counsel of record, including "Outside Counsel Eye's Only" material, ***it will be delivered to Skky's Corporate headquarters***. This will wholly undermine Defendants' confidentiality.  And even if such materials are not directly mailed to the Parker Rosen firm, those documents will inevitably be distributed electronically to the firm and printed, viewed, analyzed and/or otherwise kept in the small confines of the shared suite.  This will occur regardless of whether Mr. Parker or Mr. Rosen (or any other attorney of the Parker Rosen firm) serves as counsel in these actions.  Although some larger firms are able to create a "Ethical Wall" when internal conflicts arise, the fact that Skky's corporate headquarters share the same office suite with

---

shareholders.  It is a privately held company consisting of five principals, all of whom will benefit greatly from an award or licensing agreements stemming from these actions.

Parker Rosen, the presence of this conflict and the size of Parker Rosen undermines an otherwise possible solution (although Skky never offered such solution).

*Third*, under the current Protective Order, highly confidential information can be disclosed to "attorneys and their associates." (Dkt 32). Therefore, Andrew Parker can still access Defendants' sensitive materials if any Parker Rosen attorney remains counsel of record. Skky's purported remedy of replacing Andrew Parker with Daniel Rosen is, therefore, of no comfort to Defendants and does not alleviate the risk of confidential disclosures to Skky's principals.[10]

Further, the Court must weigh the evidence and equities and "any legitimate doubts . . . must be resolved in favor of disqualification." *Helgemo v. Pampered Chef*, 2005 WL 949155 at *6 (attorney disqualified following use of discovery obtained in a previous case against the same Defendants for "his and his client's benefit in violation of the federal court's protective order"). Here, the equities support the Defendants' motion to disqualify Parker Rosen. To be clear, there is no harm to Skky as it already has the large, competent law firm of Robins Kaplan actively participating as co-counsel of record since the beginning of these actions. In fact, Skky now suggests that Robins Kaplan is "lead trial counsel for Skky." Nosher Aff. Ex. 9. The harm to Skky is therefore minimal at best. Without the requested relief, Defendants' confidentiality will continue to be at risk. Such risk is too great to allow Parker Rosen to continue as counsel of record.

---

[10] This concern is heightened based on Skky's current prosecution of continuation patent applications claiming priority to the patent-in-suit.

11

C. <u>**Defendants Have Standing to Bring This Motion**</u>

Courts have generally found that parties have standing in situations like this (*i.e.*, unlike the usual case where movant is a former client, but where the integrity of court proceedings would otherwise be called into question). Courts "rarely deny disqualification motions for lack of standing because '[p]rinciples of standing are matters of public policy, and in the area of regulating the practice of law, those principles must be flexible enough to allow a court to insure that the integrity of proceedings before it is maintained, especially where a court recognizes the existence of a conflict." *Pergament v. Ladak*, 2013 U.S. Dist. LEXIS 102824 at *4-5 ("Because resolution of potential conflicts of interest is essential to maintaining the integrity of court proceedings, '[e]thical concerns dictate that other persons, especially other attorneys, be permitted to raise the issue . . .'");[11] *see also Bernhoft Law Firm, S.C. v. Pollack*, 2013 U.S. Dist. LEXIS 97165 at * 6-7 ("Defendant claims that the Court erred in granting Plaintiff's motion for disqualification because Plaintiff lacked standing to bring that motion. Defendant contends that only former clients have standing to bring a motion to disqualify opposing counsel. *The Court finds Defendant's argument unavailing*.") (emphasis added) (internal citations omitted).

Although some courts require non-client movants to make a heighted demonstration of injury when seeking disqualification based on conflicts including, *inter*

---

[11] The Minnesota Rules of Professional Conduct further prohibit an attorney from acting as an "advocate at a trial in which the lawyer is likely to be a necessary witness." M.R.P.C. 3.7. This rule, unlike 1.8(i), does not extend to all members of a law firm. To the extent that Daniel Rosen, like Andrew Parker, has a relationship with Skky that would make him a witness in this matter, he should also be disqualified pursuant to M.R.P.C. 3.7.

*alia*, the conflicts raised in M.R.P.C. 1.8(i.)), that threshold is easily met here.  *See e.g.*, *Hernandez v. Guglielmo*, 796 F. Supp. 2d 1285, 1290 (D. Nev. 2011) ("A non-client may have standing to seek disqualification if, but only if, the non-client demonstrates an injury that is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical"); *Colyer v. Smith*, 50 F.Supp.2d 966, 971 (C.D. Cal. 1999).  Again, unless Parker Rosen is disqualified, Skky will have inappropriate access to Defendants' highly confidential information through the Parker Rosen firm.

## D. <u>Defendants Alternatively Move To Amend The Protective Order</u>

To the extent this Court does not disqualify the Parker Rosen firm, Defendants seek alternative relief to ensure the protection of their confidential information.  The Protective Order in its current form was issued by the Court on November 22, 2014, however, that Order offers little protection in light of Mr. Parker's role as both Chief Operating Officer and litigation counsel of record, and the recent move of Skky's corporate headquarters to a suite shared by the Parker Rosen firm.   But for Defendants' discovery of these facts, Skky would have had unfettered access to all of Defendants' highly confidential information and source code without Defendants ever knowing the same.

To protect Defendants' confidential information going forward, Defendants alternatively seek leave to amend the Protective Order to preclude attorneys from the Parker Rosen law firm from having access to Defendants' highly confidential information and source code.  Moreover, Defendants request that no highly confidential information be sent to, stored or reviewed in Skky and Parker Rosen's shared office space at 888 Colwell

13

Building, 123 North Third Street, Minneapolis Minnesota.  Good cause exits for such

amendment for the same reasons set forth *supra*.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant its

motion to disqualify.

Dated: January 27, 2014

<u>s/Justi Rae Miller</u>
Barbara Podlucky Berens (#209788)
Justi Rae Miller (#387330)
**Berens Miller P.A.**
3720 IDS Center 80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 349-6171
Facsimile: (612) 349-6416
Bberens@berensmiller.com
Jmiller@berensmiller.com

Frank M. Gasparo (Admitted *Pro Hac Vice*)
Todd M. Nosher (Admitted *Pro Hac Vice*)
**Venable LLP**
1270 Avenue of the Americas
Twenty-Fourth Floor
New York, New York 10020
Telephone:  (212) 307-5500
Facsimile:  (212) 307-5598
fmgasparo@venable.com
tmnosher@venable.com

*ATTORNEYS FOR DEFENDANTS Manwin USA,*
*Inc., Manwin Holding, s.a.r.l., Playboy Enterprises,*
*Inc., and Vivid Entertainment, LLC*

14