# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

|  |  |  |
|---|---|---|
| Skky, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0:13-cv-02086-PJS-JJG |
| | ) | |
| v. | ) | |
| | ) | |
| Manwin USA, Inc. and | ) | |
| Manwin Holding, s.ar.l, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY

# TABLE OF CONTENTS

**Page**

I.      THE FACTS ......................................................................................................... 1

    A.      Skky and the Parker Rosen Law Firm. ................................................. 1

    B.      Procedural Background to the Motion. ................................................. 3

II.     ARGUMENT ...................................................................................................... 5

    A.      Defendants' Motion to Disqualify is A Baseless Tactical Maneuver. .................. 6

    B.      Mr. Parker Does Not have a "proprietary interest in the cause of action or substance of the litigation." ................................................................ 8

        1.      Mr. Parker's position as COO of Skky would not violate Rule 1.8(i) if he continued to act as litigation counsel for Skky. ..................... 8

        2.      Mr. Parker's interest in Skky did not and does not violate Rule 1.8(i) if he continued to act as litigation counsel. .................................... 10

    C.      Defendants did not Meet and Confer Regarding a Proposed Modification of the Protective Order, and There is No Good Cause to Support Defendants' Overly Preclusive Modification. ..................................... 13

        1.      Mr. Parker should have access to Defendants' non-technical highly confidential information.......................................................... 15

        2.      Mr. Rosen should have access to highly confidential information as he is counsel of record for Skky. ............................................. 16

        3.      There is no basis to allege that a small law firm cannot create and maintain an ethical wall or honor the obligations in a protective order. .............................................................................. 16

III.    CONCLUSION................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Colyer v. Smith*,
    50 F. Supp. 2d 966 (C.D. Cal. 1999) ....................................................................................... 6

*Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    646 F.2d 1020 (5th Cir. 1981) ........................................................................................... 6, 9

*Eon Streams, Inc. v. Clear Channel Communs., Inc.*,
    No. 05-cv-578, 2007 U.S. Dist. LEXIS 23950 (E.D. Tenn. March 27, 2007) ....... 5, 10, 11, 12

*Federal Deposit Ins. Corp. v. Amundson*,
    682 F. Supp. 981 (D. Minn. 1988) ........................................................................................ 7

*Harker v. Commissioner*,
    82 F.3d 806 (8th Cir. 1996) .................................................................................................. 6

*Humphrey on Behalf of State v. McLaren*,
    402 N.W.2d 535 (Minn. 1987)............................................................................................... 4

*In re Application for Discipline of Dillon*,
    371 N.W.2d 548 (Minn. 1985).......................................................................................... 8, 9

*In re Yarn Processing Patent Validity Litigation*,
    530 F.2d 83 (5th Cir. 1976) .................................................................................................. 6

*Northbrook Digital LLC v. Vendio Services, Inc.*,
    625 F. Supp. 2d 728 (D. Minn. 2008)........................................................... 13, 14, 15, 16, 17

*O'Connor v. Jones*,
    946 F.2d 1395 (8th Cir. 1991) ............................................................................................. 6

*Olson v. Snap Prods., Inc.*,
    183 F.R.D. 539 (D. Minn. 1998)........................................................................................... 6

*Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*,
    760 F.2d 1045 (9th Cir. 1985) ........................................................................................... 6, 7

*Syscon Corp. v. United States*,
    No. 496-84C, 1986 U.S. Cl. Ct. 200 (Ct. Cl. 1986)................................................. 5, 10, 11, 12

**Rules**

D. MINN. L.R. 83.6(d)(2) ............................................................................................................ 6

Federal Rules of Civil Procedure 26 ............................................................................................. 9

Federal Rules of Civil Procedure 26(a)(1)(A)(i) ........................................................................... 3

Minnesota Rules of Professional Conduct 1.8 ............................................................................... 8

Minnesota Rules of Professional Conduct 1.8(i) ..................................... 1, 4, 5, 6, 8, 9, 10, 11, 12

Minnesota Rules of Professional Conduct 1.8(k) ......................................................... 1, 4, 5, 6, 12

Minnesota Rules of Professional Conduct 3.7 ..................................................................... 3, 4, 8

## I.    <u>INTRODUCTION</u>

Defendants' baseless Motion to Disqualify should be seen for what it is—a tactical maneuver to delay the process of discovery and harass Plaintiff Skky, Inc. ("Skky"). Defendants have cited no facts or legal authority to establish a conflict of interest under Minnesota Rules of Professional Conduct ("MRPC") 1.8(i) or (k).  Specifically, Andrew Parker does not have a "proprietary interest in the cause of action or substance of the litigation" that would form the basis of disqualification under MRPC 1.8(i).  Because there is no support for an allegation under MRPC 1.8(i) against Mr. Parker, Daniel Rosen should not be not precluded from representing Skky as counsel of record in this case under MRPC 1.8(k).

Moreover, Defendants did not meet and confer regarding a proposed modification of the Protective Order.  Nevertheless, Defendants cannot show good cause to modify the Protective Order in such an overly preclusive nature because its allegations regarding the attorneys of the Parker Rosen law firm are broad and conclusory, and not based in facts or evidence of actual harm.  The Motion is nothing more than a delay tactic by Defendants and an attempt to disparage Skky and the Parker Rosen law firm. Defendants' Motion should be denied.

## II.    <u>THE FACTS</u>

### A.    <u>Skky and the Parker Rosen Law Firm.</u>

Inventors Mr. John Mikkelsen and Dr. Robert Freidson conceived and developed inventions related to the transmission of content rich media, and have been recognized for this hard work through the issuance of several patents.  *See, e.g.,* Amended Complaint ¶¶

1

6-10.[1]  Working together and investing substantial time and energy, Mr. Mikkelsen and

Dr. Freidson created a working prototype system.  *Id*. at ¶ 9. Mr. Mikkelsen and

Dr. Freidson formed Skky to promote and protect their intellectual property that they had

created through ingenuity and creativity.  *Id*. Skky is properly enforcing its patent rights

against accused infringers, including Defendants.

Skky's corporate headquarters have moved since the filing of the Amended

Complaint.  At the time of the Amended Complaint, Skky was located in Wayzata,

Minnesota.  *Id*. at ¶ 1.In November 2013, Skky moved to a separate office that it rents

from the Parker Rosen law firm. *See* Def. Aff., Ex. 7 at 2.[2]

Mr. Parker, a named partner at Parker Rosen, has been practicing law in

Minnesota since 1988 in both state and federal courts.  *See* Exhibit A, Declaration of

Andrew D. Parker, dated February 3, 2014, at ¶ 2.  He began his career at Popham Haik,

Schnobrich & Kaufman, Ltd.  *Id*. at ¶ 3. He then formed the Smith Parker law firm,

which he operated for over a decade. *Id*. at ¶ 4.  In 2005, Mr. Parker and Mr. Daniel

Rosen founded the Parker Rosen law firm. *Id*. He has represented clients in federal and

state courts across the nation. *Id*. at ¶ 5.

Mr. Parker became Chief Operating Officer for Skky effective July 1, 2013.  *Id*. at

¶ 6. As COO, Mr. Parker assists in the day-to-day operations of Skky.  *Id*. at ¶ 7. His

compensation for being COO is stock in Skky, which is about 2.5% of the total stock in

---

[1] Reference to "Amended Complaint" refers to the Amended Complaint submitted in
each respective case.
[2] Reference to "Def. Aff." refers to the Affidavit of Todd Nosher or the Declaration of
Emily Wood submitted in support of the Motions filed in each respective case.

Skky, and the Parker Rosen law firm receives a small monthly stipend.  *Id*. at ¶ 8. The

stock is owned by a company that is controlled by Mr. Parker and Mr. Rosen.  *Id*.

Neither Mr. Parker nor Mr. Rosen are employees of Skky.  *Id*. Mr. Parker is not on the

Board of Directors of Skky.  *Id.* at ¶ 10.

### B. Procedural Background to the Motion.

The facts related to the Motion demonstrate that Defendants' Motion is tactical.[3]

Indeed, Defendants' Motion followed numerous attempts to avoid discovery.  On

January 16, 2014, and in response to Skky' repeated requests for deposition dates and

locations, Defendants asserted that Mr. Parker's representation was a violation of MRPC

3.7 because he was a "necessary fact witness" in light of being an officer of Skky.  Def.

Aff., Ex. 5 at 1-2.

Skky responded, on January 20, 2014, to explain that Mr. Parker was not a

necessary witness and there was no violation of MRPC 3.7.  Def. Aff., Ex. 7. Skky

informed Defendants that it did not disclose Mr. Parker in its initial disclosure because

Skky did not intend to call Mr. Parker as a witness in support of its claim of patent

infringement against Defendants.  *See* FED. R. CIV. P. 26(a)(1)(A)(i).  Skky also

explained that testimony by Mr. Parker would be cumulative of other Skky witness's

testimony, the subject matter could be obtained by other fact witnesses of Skky, and any

testimony from Mr. Parker would be peripheral and likely be contained in documentary

---

[3] For purposes of this Opposition, Skky will refer to "Defendants" as the entity identified
in the caption.  It should be noted that all Defendants in the five litigations, excluding
Myxer, Inc., before this Court participated in all aspects described in the Factual
Background section.

evidence.  Def. Aff., Ex. 7 at 1-2; *see also Humphrey on Behalf of State v. McLaren,* 402

N.W. 2d 535, 541 (Minn. 1987).  Skky reiterated that Defendants' assertion appeared a

delay tactic for Defendants' failure to comply with its discovery obligations.

Skky sought to resolve any alleged concern of Defendants by substituting

Mr. Parker as counsel of record for Skky with Mr. Parker's law partner, Mr. Rosen.

Skky's counsel informed Defendants' counsel that Skky's substitution was not an

acquiescence or agreement that Defendants' assertion had any merit.  Rather, it was being

done to eliminate any controversy and allow for discovery that Defendants sought to

delay. Def. Aff., Ex. 7 at 2; Ex. 9 at 1.

After abandoning its unfounded allegation under MRPC 3.7, Defendants advanced

an equally unsupportable assertion based on MRPC 1.8(i) and (k).  Def. Aff., Ex. 8 at 1.

Without support, Defendants alleged that Mr. Parker had a "proprietary interest in the

cause of action or substance of the litigation" in violation of MRPC 1.8(i).  *Id.*  Yet,

Defendants failed to identify any interest that Mr. Parker has in Skky, much less how

such interest is in "the cause of action or substance of the litigation."  Defendants also

claimed that Mr. Rosen was precluded from representing Skky based on MRPC 1.8(k).

Defendants reiterated that they would not participate in discovery.  *Id.*

Skky responded to Defendants' second groundless allegation by explaining that

owning stock in a client or Mr. Parker's role as COO were not "proprietary interest[s] in

the cause of action or substance of the litigation," and that Mr. Rosen's representation of

Skky was also proper.  Def. Aff., Ex. 9 at 1-3. Skky cited two cases supporting Skky's

position.  *See Syscon Corp. v. United States*, No. 496-84C, 1986 U.S. Cl. Ct. 200 (Ct. Cl.

4

June 27, 1986); *Eon Streams, Inc. v. Clear Channel Communs., Inc.*, No. 05-cv-578, 2007 U.S. Dist. LEXIS 23950 (E.D. Tenn. March 27, 2007).  As to the depositions, Skky noted that it "extended significant professional courtesy to Defendants regarding possible dates and locations for [the noticed] depositions, starting at our December 19, 2013 meet and confer where we asked for dates and locations.  However, Defendants have refused to provide this information at every turn."  Def. Aff., Ex. 9 at 1-3.  At no time during these exchanges did Defendants propose a modification to the Protective Order.

## III.   **ARGUMENT**

Defendants' Motion to Disqualify should be denied because there is no breach or potential breach of ethical conduct by Mr. Parker, of the Parker Rosen firm, to bring to the Court's attention.  Defendants' Motion is based on MRPC 1.8(i) and 1.8(k).

Rule 1.8(i) of the Minnesota Rules of Professional Conduct states:

> (i)   A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:
> (1)   acquire a lien authorized by law to secure the lawyer's fee or expenses; and
> (2)   contract with a client for a reasonable contingent fee in a civil case.

Rule 1.8(k) of the Minnesota Rules of Professional Conduct imputes a conflict under MRPC 1.8(i) to the entire firm:

> (k)   While lawyers are associated in a firm, a prohibition in the foregoing paragraphs (a) through (i) that applies to any one of them shall apply to all of them.

Because there is no breach or potential breach of MRPC 1.8(i), MRPC 1.8(k) does

not apply and Defendants' motion for disqualification should be denied.[4]

### A. Defendants' Motion to Disqualify is A Baseless Tactical Maneuver.

This Court "has the inherent authority and responsibility to regulate and supervise

the bar practicing before it. *Olson v. Snap Prods., Inc.*, 183 F.R.D. 539, 541 (D. Minn.

1998). The Minnesota Rules of Professional Conduct govern the standards applicable to

the professional conduct of attorneys practicing in Minnesota. *See* D. MINN. L.R.

83.6(d)(2). "Ultimately, the party seeking the disqualification of opposing counsel bears

the burden of showing that disqualification is warranted." *Olson*, 183 F.R.D. at 542. "A

party must meet its burden by supporting a motion to disqualify with facts, rather than

speculation or conclusory allegations. *See, e.g., Duncan v. Merrill Lynch, Pierce, Fenner

& Smith, Inc.*, 646 F.2d 1020, 1029 (5th Cir. 1981). Because of the potential for abuse by

opposing counsel, 'disqualification motions should be subjected to particularly strict

judicial scrutiny.'" *Harker v. Commissioner,* 82 F.3d 806, 808 (8th Cir. 1996) (citing

*Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985)).

---

[4] As noted by Defendants' own legal authority, Defendants does not have standing to bring this motion because it does not and has not alleged an "injury in fact" arising from any alleged conflict of interest between Mr. Parker and Skky. *See O'Connor v. Jones*, 946 F.2d 1395, 1400 (8th Cir. 1991); *see also Colyer v. Smith*, 50 F. Supp. 2d 966, 971 (C.D. Cal. 1999). Standing is relevant in disqualification motions because "[t]o allow an unauthorized surrogate to champion the rights of the former client would allow that surrogate to use the conflict rules for his own purposes *where a genuine conflict might not really exist*. It would place in the hands of the unauthorized surrogate powerful presumptions which are inappropriate in his hands." *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 90 (5th Cir. 1976) (emphasis added).

The use of disqualification motions for tactical purposes is improper and courts have not hesitated from imposing sanctions for their misuse.  *See Optyl Eyewear*, 760 F.2d at 1050-51 (affirming award of fees under § 1927 where Defendants "had absolutely no basis for filing a disqualification motion at the time he filed it" and Defendants' motive for bringing a counterclaim and motion to disqualify was to manufacture exclusion of evidence); *see also Federal Deposit Ins. Corp. v. Amundson*, 682 F. Supp. 981, 988 (D. Minn. 1988) ("We are now in a time when ethics has ceased to be a common guide to virtuous behavior. It is now a sword in hand, to be used to slay a colleague.") Defendants' Motion is aimed to stall discovery while making insinuations of impropriety and unethical behavior about an experienced and long-standing member of this Court's bar.

Defendants has thus far resisted discovery. Only in the last few days has Defendants finally taken affirmative steps to schedule days for 30(b)(6) witnesses critical to Skky's initial infringement contentions, which Skky originally provided notice for on December 23, 2013. Document discovery has been equally unavailing, with Defendants producing unrequested patents and other prior art in December 2013.  Indeed, the furtherance of Defendants' aims to delay discovery is evident from the memorandum itself. Def. Brief[5] at 6-7 (purporting to unilaterally "postpone" discovery until the matter is resolved—presumably until at least the March 5th hearing).

---

[5] Reference to "Def. Brief" refers to the Motion submitted in each respective case.

Skky sought to avoid any unnecessary litigation by substituting Mr. Rosen for Mr. Parker.  As described in the correspondence, Skky did not believe that Defendants' assertion, either under MRPC 3.7 or 1.8(i), had any basis in law or fact.  Skky's decision to substitute counsel was not based on any acquiescence that Defendants' claim had merit.  It was simply done to remove this issue from Defendants' latest excuse to not comply with its discovery obligations.  Defendants' legally and factually unsupported Motion should be taken for what it is—a delay tactic—and should be denied.

**B.      Mr. Parker Does Not have a "proprietary interest in the cause of action or substance of the litigation."**

Mr. Parker's concurrent representation of Skky in this litigation while acting as COO of Skky is not a violation of Rule 1.8(i). Rule 1.8(i) of the Minnesota Rules of Professional Conduct prohibits a lawyer's acquisition of "a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client." The rationale behind the rule is two-fold: to avoid giving the lawyer too great an interest in the representation thereby limiting his ability to render independent advice *on the client's behalf*; and protecting the client's ability to discharge the lawyer without jeopardizing the client's interest in the cause of action. *See In re Application for Discipline of Dillon*, 371 N.W.2d 548, 551 (Minn. 1985); *see also* MRPC 1.8, cmt 16.  Neither of these reasons are present here.

1.      Mr. Parker's position as COO of Skky would not violate Rule 1.8(i) if he continued to act as litigation counsel for Skky.

MRPC 1.8(i) requires the improper interest to be "in the cause of action." For example, in *Dillon*, the Minnesota Supreme Court, applying a predecessor provision to

1.8(i), found that using a previously agreed upon contingent fee as security for $65,000 in loans from the client improperly gave the lawyer a proprietary interest in the action. 371 N.W.2d at 551. The security in effect meant the lawyer acquired a greater proprietary interest than was allowed under the rules and made it difficult for the client to discharge the lawyer without jeopardizing the security. *Id*. No such conflict of interest exists in this case.

There is no basis to assert that Mr. Parker's position as COO in Skky is a proprietary interest in the cause of action.  The proper inquiry is whether an attorney takes an improper proprietary interest "in the cause of action," not in his client. Defendants, however, ignores this standard. Instead, it alleges that because Mr. Parker "has a proprietary interest in Plaintiff Skky," he must have a proprietary interest in the "outcome of [the] actions." Def. Brief at 8-9. Mr. Parker's position, if anything, is aligned with the client, and not in conflict with Skky. In sum, Defendants' bare allegations do not have a nexus with the "cause of action" because they are speculative and conclusory, and do not support a conflict under Rule 1.8(i). *See Duncan*, 646 F.2d at 1029 (5th Cir. 1981) ("[W]hen dealing with ethical principles, we cannot paint with broad strokes.").

Defendants' insinuation that Skky's decision to not identify Mr. Parker on its Initial Disclosure statement supports this Motion is incorrect.  Federal Rule of Civil Procedure 26(a)(1)(A)(i) only requires a party to identify witnesses it intends to call at trial in support of its claims or defenses. Skky's initial disclosure included only those witnesses it intends to call at trial. Skky has not withheld discovery responses, as Defendants did not have serve interrogatories on Skky requesting identification of the

officers of Skky.  As Defendants concede, the information they complain about was publicly available. Skky was not trying to hide Mr. Parker's role in Skky.

> 2.     Mr. Parker's interest in Skky did not and does not violate Rule 1.8(i) if he continued to act as litigation counsel.

Mr. Parker's less than ten percent stake in Skky through a company he has an interest in is not a "proprietary interest" in the cause of action. *See Syscon Corp. v. United States*, 1986 U.S. Cl. Ct. at 204; *Eon Streams, Inc. v. Clear Channel Communs., Inc.*, 2007 U.S. Dist. LEXIS 23950 at *23. This follows from the general rule that the proprietary interest must again be in "the cause of action," in this case patent litigation, not the client. As such, the mere fact that Mr. Parker has an interest in a company which owns a 2.5% stake in Skky is not improper under Rule 1.8(i).

Indeed, courts considering counsel with even closer ties to the client have refused to find a conflict under Rule 1.8. In *Syscon Corp. v. United States*,[6] the Government's motion to disqualify Syscon's counsel because he owned a portion of Syscon stock was rejected. 1986 U.S. Cl. Ct. at 203-04. The firm representing Syscon included among its partners the founder of Syscon who also acted as general counsel and member of its board of directors, and owned a portion of Syscon's stock. *Id*. at 201. The court found that the partner's stock ownership[7] would not constitute a 'proprietary interest' in the

---

[6] Defendants' attempt to distinguish *Syscon* is meritless. First, the court assumed the conflict would inure to the rest of the firm. *Id.* at 203.  Second, regardless of this analysis, stock ownership was not a "proprietary interest." *Id*. at 203-04.

[7] Neither the court nor the Government took issue with counsel's position as founder, general counsel, and member of the board of the directors of the plaintiff Syscon. Likewise, Mr. Parker's position as COO of Skky is irrelevant to MRPC 1.8(i) because this role is unconnected with the subject matter of the action: patent infringement.

litigation because first, he would not receive any money directly from the government, only an increase in value of his stock which would theoretically increase as a result of a judgment. *Id*. at 204. Second, the court presumed that because "lawyers who work as corporate counsel often choose to own shares in their employer companies" and reasoned that were this considered a proprietary interest, "then stock ownership would preclude house counsel from ever serving their employers as litigation counsel." *Id*. In the court's view, "such a restriction seem[ed] overly stringent, and inconsistent with present reality." *Id*.

Similarly, in *Eon Streams, Inc. v. Clear Channel Communs., Inc.*, the Eastern District of Tennessee considered whether stock ownership[8] by members of a firm in the plaintiff Eon Streams wherein the law firm was representing Eon Streams in a breach of contract suit constituted a "proprietary interest" in the litigation in violation of Rule 1.8(i). 2007 U.S. Dist. LEXIS 23950, at *23. The court found that even though the firm members only held minority stakes in the corporation, their investments would not constitute a proprietary interest "[r]egardless of the percentages and potential corresponding fractions of any potential judgment award." *Id*. at *24.

---

[8] Again, Mr. Parker's position as COO is irrelevant to MRPC 1.8(i). As an example, in *Eon Streams*, one partner at the firm advised the corporate plaintiff on legal matters throughout its existence, and at various times had served as a director on its board, corporate secretary, and assistant secretary. Much like *Syscon* these facts were of no consequence to the movants or the court in deciding that no conflict existed. *See generally Eon Streams*, 2007 U.S. Dist. LEXIS 23950.

As in both *Syscon* and *Eon Streams*, Mr. Parker's position as COO and an officer of Skky is irrelevant to MRPC1.8(i).[9] Moreover, Mr. Parker's interest in a company that holds a 2.5% share of stock in Skky will not result in him "receiv[ing] any money from [the Defendants]." Likewise, the monthly stipends that the Parker Rosen law firm receives from Skky are not direct proceeds from Defendants.  Any judgments or settlements may increase the value of the Skky stock and perhaps yield dividends to a company Mr. Parker has an interest in, but this is a result of the plaintiff Skky's proprietary interest in the litigation, not Mr. Parker's. Consequently, even considering Mr. Parker's 2.5% stake in Skky through his corporation, there is no basis for Defendants' accusations.[10]

In sum, neither Mr. Parker's position as COO of Skky nor his interest in another company with a very small share in Skky would violate MRPC 1.8(i) if he were to continue to represent Skky in this litigation. Because Mr. Parker's representation of Skky would not violate MRPC 1.8(i), then there are no grounds to disqualify Parker Rosen LLC's continued representation of Skky in this litigation under MRPC 1.8(k), and Defendants' Motion should be denied.

---

[9] Skky recognizes that these cases were applying the Tennessee Rules of Professional Conduct, a predecessor to the current Model Rules of Professional Conduct offered by the American Bar Association.   The language of these rules is substantially similar to MRPC 1.8(i).

[10] The same would hold true for Mr. Rosen who, as described above, along with Mr. Parker, has an interest in a corporation that has a 2.5% interest in the total outstanding stock of Skky.

**C.**      **Defendants did not Meet and Confer Regarding a Proposed Modification of the Protective Order, and There is No Good Cause to Support Defendants' Overly Preclusive Modification.**

Defendants did not meet and confer with Skky on a proposal to modify the Protective Order.  If Defendants had a concern about the Protective Order, it should have met and conferred with Skky regarding the issue instead of  making groundless allegations of professional misconduct against Mr. Parker and the Parker Rosen law firm. The proper vehicle to address Defendants' alleged concern would have been to move for modification of the Protective Order.  *Northbrook Digital LLC v. Vendio Services, Inc.*, 625 F. Supp. 2d 728, 735 (D. Minn. 2008).  Defendants bear the burden to show good cause in order to modify Protective Order, which must not be based on broad or conclusory allegations of harm.  *Id.*

Here, Defendants have not articulated any actual, concrete evidence of harm. Indeed, Defendants have not even produced a single document that is confidential or even highly confidential.  Rather, Defendants frame a hypothetical harm by making broad allegations and sweeping assertions against the attorneys of the Parker Rosen law firm. However, there is no evidence or reasonable reason to believe that any such harm would occur.  The Protective Order provides sufficient protection to Defendants.  Thus, Defendants have failed to establish good cause for its proposed modification.

Had Defendants complied with their obligation to meet and confer instead of manufacturing ethical violations, Skky could have made the following proposal described below to alleviate any potential concern for Defendants while not unduly restricting Skky's ability to litigate its case:

13

- Modify Section 3 the Protective Order to allow for two types of designation under AEO, one for technical information and one for all other highly confidential information;

- Modify Section 8 to include a provision that Mr. Parker will not access information designated as highly confidential technical information (including source code), but will be able to access all other highly confidential information.  In addition, the prosecution bar in Section 5 to be limited to only review of  information designated as technical highly confidential information; and

- Modify Section 8 to state that all highly confidential information, technical or otherwise, be stored at Robins, Kaplan, Miller & Ciresi LLP for as long as Skky's offices remain at the same address as the Parker Rosen law firm.

This proposal balances the need for protection of confidential information, while providing decision-makers with access to the necessary information.  Indeed, Skky's proposal is very similar to the one the Court entered in *Northbrook*. 652 F.2d at 744-45. For the reasons articulated in *Northbrook,* Skky's proposal would resolve any potential concern.

First, this case involves similar litigants and issues as those considered in *Northbrook*.  Second, Skky and Defendants are not currently direct competitors as to outputs, Skky's current output is the licensing of its intellectual property related to the transmission of content rich media while Defendants' output is adult entertainment.  *Id.* at 738-39 (Northbrook licensed its patents and Vendio marketed internet advertising and

marketing services).  Third, the parties may be direct competitors regarding inputs,

namely Skky and Defendants create intellectual property regarding the transmission of

content rich media.  *Id.* at 740 (Northbrook and Vendio created intellectual property

related to internet advertising and marketing).

> 1.  Mr. Parker should have access to Defendants' non-technical highly
> confidential information.

Because Skky and Defendants do not currently compete as to outputs, adult

entertainment versus licensing of intellectual property, there is no reason to preclude

Mr. Parker from having access to Defendants' non-technical highly confidential

information.  Mr. Parker should have access to this information to assist Skky in making

valuations of this case, and he should not have to solely rely on outside counsel and

experts for such assessment.  *Id.* at 739.  Skky, through Mr. Parker, will not be able to use

the information in a competitive advantage over Defendants because they don't directly

compete against each other as to outputs, adult entertainment as compared to licensing of

intellectual property.  As the Court recognized in *Northbrook*, Skky will only be able to

use the information to assess the value of its case against Defendants.

Skky and Defendants may compete as to the creation of intellectual property

related to the transmission of content rich media, or referred to in *Northbrook* as inputs.

In light of this concern, Skky's proposal precludes Mr. Parker from accessing

Defendants' technical highly confidential information related to its transmission of

content rich media.  This protection would prevent Skky from unfairly competing against

Defendants by using the information to draft new patent claims more precisely based on

Defendants' technical information because Mr. Parker would not have access to such information.  Moreover, the prosecution bar in Section 5 of the Protective Order precludes anyone who reviews such information to be able to assist in the prosecution of patent applications for Skky.  *See* Protective Order at 13.  Skky's proposal provides additional protection for Defendants.  Thus, Defendants' concern about any alleged improper use of its technical highly confidential information would be alleviated by Skky's proposal.

> 2.   Mr. Rosen should have access to highly confidential information as he is counsel of record for Skky.

Defendants' proposed modification of the Protective Order as an alternative is overly preclusive.  There is no reason that Mr. Rosen may not have access to confidential or highly confidential information that Defendants may produce in the litigation. Mr. Rosen is an officer of the Court, and is identified as counsel of record Skky.  The Protective Order allows for counsel of record to a party to have access to highly confidential information.  *See* Protective Order at 15.  There is no reason to preclude Mr. Rosen, Skky's counsel of record, from having access to Defendants' confidential or highly confidential information.[11]  *Northbrook Digital*, 625 F. Supp. 2d at 735.

> 3.   There is no basis to allege that a small law firm cannot create and maintain an ethical wall or honor the obligations in a protective order.

Defendants' argument that the law firm of Parker Rosen could not properly create and maintain an ethical wall to preclude unauthorized access to confidential information

---

[11] To date, Defendants has not produced any confidential or highly confidential information so there has been no actual harm to Defendants.

simply because it is a small law firm is incredible.  As officers of the Court, the presumption should be that the attorneys of a "small" law firm, like Parker Rosen, will comply with their obligations, just like the attorneys at a "large" law firm.  There is no reason to treat the Parker Rosen law firm differently simply because it is a small law firm.  Defendants' overly preclusive proposed modification to the Protective Order is not support by good cause merely because Parker Rosen is a small law firm.  Thus, Defendants' proposal should be denied.

## IV.  CONCLUSION

There is no violation of MRPC by Mr. Parker or the Parker Rosen law firm. Courts have cautioned regarding the assertion of disqualification, and use extreme scrutiny when reviewing such allegations because it may be misused as harassment. Defendants' Motion should be denied because Defendants failed to provide any facts or authority in support of their assertion.  Skky informed Defendants of their lack of facts or authority prior to the filing of this Motion.  Defendants' continued assertion of this claim is harassing and interfering with the "just, speedy, and inexpensive determination" of this case.  FED. R. CIV. P. 1.

Moreover, the Protective Order does not need to be modified as proposed by Defendants because there is no good cause showing that the Parker Rosen law firm, including Mr. Rosen, will not comply with its obligations as officers of the Court.  To the extent a modification is needed, it should be as proposed by Skky and consistent with this Court's rational in *Northbrook.*

17

Dated:   February 3, 2014          **ROBINS, KAPLAN, MILLER & CIRESI, LLP**

By: *s/Ryan M. Schultz*
    Ronald J. Schutz (0130849)
    Becky R. Thorson (0254861)
    Ryan Schultz (0392648)
    Benjamen Linden (0393232)

    800 LaSalle Avenue, Suite 2800
    Minneapolis, MN 55402
    Phone:  (612) 349-8500

    **PARKER ROSEN, LLC**

    Daniel N. Rosen (0250909)
    300 First Avenue North, Suite 200
    Minneapolis, MN 55401

    *Attorneys for Plaintiff Skky, Inc.*