# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Skky, Inc.,

      Plaintiff,

v.

Manwin USA, Inc., and Manwin Holding, s.ar.l,

      Defendants.

Case No.:  13-2086 (PJS/JJG)

---

Skky, Inc.,

      Plaintiff,

v.

Vivid Entertainment, LLC,

      Defendant.

Case No.:  13-2087 (PJS/JJG)

---

Skky, Inc.,

      Plaintiff,

vs.

Playboy Enterprises, Inc.,

Defendant.

Case No.:  13-2089 (PJS/JJG)

---

**Skky's Memorandum in Support of Its Motion to Compel Defendants to Respond in Full to Document Request Nos. 1-28, Interrogatory Nos. 1, 3, 6, and 7, and Requests for Admission Nos. 1-4**

Defendants Playboy Enterprises, Inc. ("Playboy"), Manwin USA, Inc. and Manwin Holding, s.ar.1 ("Manwin"), and Vivid Entertainment, LLC ("Vivid")

1

have employed delay tactics for months and rebuffed Skky, Inc.'s ("Skky") good faith efforts to move the discovery process along, even though Skky's discovery inquiries bear directly on the extent to which Defendants infringe Skky's patent. Defendants have failed to produce any responsive documents to Skky's 28 document requests. Defendants have also failed to provide meaningful responses to several of Skky's interrogatories and requests for admission. Accordingly, Skky respectfully moves this Court pursuant to Federal Rule of Civil Procedure 37 and Local Rules 7.1 and 37.1 for an Order compelling Defendants to respond in full to Skky's document requests by a date certain.

## BACKGROUND

Skky owns United States Patent No. 7,548,875 (the "'875 patent"), titled *Media Delivery Platform*. (Dkt. No. 1–1) The claimed method in the '875 patent covers the transmission of content rich media to smart phones and other mobile, wireless devices. Specifically, what is claimed is: "A method of wirelessly delivering over the air one or more digital audio and/or visual files from one or more servers to one or more wireless device means comprising: compressing said one or more digital audio and/or visual files, . . . storing compressed audio and/or visual files in one or more storage mediums; and transmitting to said wireless device means said compressed audio and/or visual files wirelessly over the air, with or without an Internet network." (*Id.*)

Defendants operate several websites, and through these sites, compressed audio and visual files are stored and transmitted to wireless devices, including cell phones. Because Defendants' web sites practice the claimed invention of the '875 patent, Defendants infringe the '875 patent.

On October 31, 2013, Skky served on Defendants four requests for admission, seven interrogatories, and twenty eight requests for production. (*See* Declaration of Ryan M. Schultz ("Schultz Decl."), Exs. 1-9) With its First Set of Requests for Admission, Skky asked Defendants to admit that the video, image, and audio files it makes available are compressed and stored in a computer or server memory. (*Id.* Exs. 1, 4, 7)

With its First Set of Interrogatories, Skky sought information identifying and describing Defendants' websites and its relevant relationships with third parties. (*Id.* Exs. 2, 5, 8) In particular, Interrogatory No. 1 asked Defendants to identify the websites and mobile applications it has owned, developed, managed, or maintained since January 1, 2000. (*Id.*) Interrogatory No. 3 asked Defendants to identify and describe the relationships it has with third parties regarding specified websites, and any other websites or mobile applications that either party might later identify. (*Id.*) Interrogatory No. 6 asked Defendants to identify the types of devices that are capable of receiving data over a cellular network that have accessed or viewed Defendants' Services since June 16, 2009. (*Id.*) And Interrogatory No. 7 asked Defendants to identify and describe the storage mediums on which audio, visual, or graphical content is kept for each website identified in response to Interrogatory No. 1. (*Id.*)

Finally, with its First Set of Document Requests, Skky requested information pertaining to several relevant categories of discovery, including: Defendants' knowledge of the '875 patent, the identity of Defendants' websites, the servers supporting Defendants' websites, Defendants' relationships with third parties or other people regarding its services implicated by this lawsuit, business plans

relating to those services, revenues from and valuations of those services, patent license agreements relating to the subject matter of the '875 patent, the role of Defendants' personnel in designing and effectuating its services, Defendants' organizational structure, and the devices accessing Defendants' services. (*See, e.g.,* Schultz Decl. Ex. 3)

On December 5, 2013, Defendants responded to Skky's document requests, requests for admission, and interrogatories. (*See* Schultz Decl. Exs. 10-18) These responses were deficient across all categories and provided Skky with virtually no information.

Defendants avoided every one of Skky's requests for admission, claiming that Skky's use of the undefined terms "image files," "video files," and "audio files" "render[ed] a meaningful response impossible." (Schultz Decl. Exs. 10, 13, 16) Defendants further protested that they could not admit or deny any request for admission until Skky served its infringement contentions.

Defendants also provided virtually no information in response to Skky's Interrogatories 1, 3, 6, and 7. Defendants *refused to list any* of their websites for Interrogatory No. 1, claiming the undefined terms "mobile applications" and "maintained" "render a meaningful response impossible." (Schultz Decl. Exs. 11, 14, 17). And for Interrogatories 3, 6, and 7, Defendants claimed that they could not respond until Skky served its infringement contentions, stating "[u]ntil that time, [Defendants are] unable to determine the Web Sites about which Plaintiff seeks information." (*Id.*) Defendants made this claim despite acknowledging that Skky's interrogatories did request information regarding several specified websites. Defendants also claimed their inability to understand certain terms

4

similarly rendered a meaningful response impossible for Interrogatories No. 1, 3, 6, and 7. (*Id.*)

Finally, Defendants committed to producing responsive documents to only five of Skky's 28 requests. To date, Defendants have produced zero responsive documents for these requests. For Skky's 23 other requests, Defendants' most common excuse for not responding was that they related to Defendants' websites. Defendants claimed that they could not produce any information about their own websites until Skky identified Defendants' own websites to Defendants. Defendants lodged this excuse even though Skky specifically identified several of Defendants' sites in its requests. To date, Skky has received no responsive documents, no admissions, and virtually no information in connection with its interrogatories.

To address Defendants' deficient production, Skky met and conferred on December 19, 2013. (Schultz Decl. ¶ 26) Defendants' counsel declined to produce, citing the fact that the parties had not yet agreed to production parameters regarding electronically stored information ("ESI"). (*Id.*) Counsel for Skky responded by explaining that the ESI issue did not prevent Defendants from producing paper documents and responding to Skky's requests for admission and Interrogatories No. 1, 3, and 7. (*Id.*)

On December 17, 2013, Defendants produced 61 prior art documents that were not responsive to any of Skky's discovery requests. (Schultz Decl. ¶ 27) Counsel for Skky promptly contacted Defendants' counsel to discuss how to remedy these deficiencies. (Schultz Decl. Ex. 19) During the meet and confer, Defendants' counsel provided no explanation of the purpose of the

nonresponsive prior art documents. (*Id*.) However, Defendants indicated that they would begin production on a rolling basis once an ESI agreement was finalized between the parties. (*Id*.)  Defendants did not provide any response to the assertion that they had responsive hard copy documents that were not covered by an ESI order.

Skky provided Defendants with a draft ESI agreement on January 19, 2014. (Schultz Decl. Ex 20) On January 29, the parties filed a joint stipulation and proposed order regarding ESI, which was granted by this Court on January 30, 2014. (Vivid Dkt. No. 42, Playboy and Manwin Dkt. No. 44) Although Defendants represented that their production would begin once an ESI agreement was in place, Defendants have failed to produce a single document, electronic or otherwise, that is responsive to any of Skky's discovery requests to date. (Schultz Decl. Ex. 19)

Meanwhile, Playboy and Manwin took additional measures to preclude complying with their discovery obligations. Despite assurances that responsive production would begin once the parties entered into an ESI agreement, (*see* Schultz Decl. Ex. 19), counsel for Playboy and Manwin simultaneously petitioned[1] the Court of Quebec to issue an order pursuant to the Quebec Business Concerns Records Act (the "QBCRA"), intending to prevent the removal of any documents from Quebec, including documents were directly responsive to Skky's requests and vital to this litigation. (Playboy and Manwin Dkt. No. 34-1 Ex. 2)   The Court of Quebec granted the QBRCA motion the next

---

[1] In fact, counsel for Playboy and Manwin petitioned the Court of Quebec requesting the order *on the same day* he sent an email to Skky stating production would begin pending an ESI agreement. (Dk. No. 34-1 Ex. 2, Schultz Decl. Ex. 19)

day. (*Id*. Ex. 1)  On January 6, 2013, Playboy and Manwin informed this Court of the Canadian judgment. (Playboy and Manwin Dkt. No. 34)  A teleconference was held on January 13th, 2014. (Playboy and Manwin Dkt. No. 35) There, this Court was unable to determine what effect, if any, the Canadian judgment had on discovery in this case. (*Id*.) Unsurprisingly, Playboy and Manwin represented that most, if not all, responsive documents relating to technical information were only located in Quebec and contended that the documents could not be provided to Skky per the QBRCA order. (Schultz Decl. ¶ 28) Playboy and Manwin admitted that responsive financial documents are available outside of Quebec, but have yet to produce a single document that falls into this category. (*Id*.) Playboy and Manwin have not moved for a Protective Order limiting in any way the availability of the Quebec documents.

All three defendants (including Vivid) have filed a baseless motion to disqualify Mr. Andrew Parker and Parker Rosen LLC from representing Skky in this case, and have unreasonably taken the position that they will produce no discovery until the motion is decided. (Vivid Dkt. No. 34, Playboy and Manwin Dkt. No. 37). Defendants' concerns are frivolous and only serve to prevent this case from moving forward. (*See* Vivid Dkt. No. 43, Playboy and Manwin Dkt. No. 45) Although Skky strongly disagrees with Defendants' allegations, in the interest of obtaining responsive production in a timely manner, Skky sought to eliminate this sideshow by substituting Mr. Parker with his partner, Daniel Rosen, screening Mr. Parker from any highly confidential technical documents produced, and storing all produced documents at the offices of Robins, Kaplan, Miller & Ciresi. (Schultz Decl. Ex. 21) Defendants refused all of these reasonable

solutions. (Schultz Decl. Ex 22) Despite their apparent concerns, Defendants have not moved for a Protective Order relating to this issue.

Without any responsive discovery, Skky completed and served its infringement contentions upon Defendants. (Schultz Decl. ¶ 29) Skky also provided responsive production to Defendants, including Skky's confidential and highly information.[2] (Schultz Decl. ¶ 30)  Defendants, on the other hand, have delayed at every opportunity, refused all attempts to progress this litigation, and have not provided Skky with a single responsive document.

As such, Skky has been left with no choice but to file the instant motion. Skky respectfully seeks an Order from this Court compelling Defendants to respond fully to Skky's First Set of Requests for Admission, First Set of Interrogatories, and First Set of Document Requests by a date certain.

## ARGUMENT

The Federal Rules of Civil Procedure allow a party "to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). And while discovery requests must be reasonably calculated to the discovery of admissible information, "[r]elevance is construed broadly at the discovery stage." *Heilman v. Waldron*, 287 F.R.D. 467, 473 (D. Minn. 2012). In fact, information is relevant if it "bears on, or [] reasonably could lead to another matter that could bear on, any issue that is or may be in the case.'" *Chesemore v. Alliance Holdings, Inc.*, 270 F.R.D. 633, 634 (D. Minn. 2010); *see*

---

[2] Defendants recently alleged that Skky's production was deficient – two and a half months after Skky produced the documents.  (Schultz Decl. Ex. 23) Notably, Defendants do not deny that Skky produced documents that were responsive to Defendants' requests.  (*Id.*)

*also Mead Corp. v. Riverwood Natural Res. Corp.*, 145 F.R.D. 512, 522 (D. Minn. 1992) (noting "[r]elevancy, in the discovery context, is extremely broad"). Importantly, "[t]he party resisting production bears the burden of establishing lack of relevancy or undue burden." *Scheffler v. Molin*, No. 11–3279, 2012 U.S. Dist. LEXIS 117492, at *19 (D. Minn. Aug. 10, 2012). Against these principles, Defendants' categorical refusal to respond substantively to virtually all of Skky's discovery inquiries is completely unjustified.

## I.   Defendants' Delay Tactics Are Improper And Provide No Basis For Refusing To Respond To Discovery.

In addition to the objections raised by Defendants in their discovery responses (discussed in sections II, III, and IV below), Defendants have asserted new, baseless "objections" via email correspondence and phone conferences with Skky's counsel. These additional objections have no legal basis and do not justify further delaying discovery.

### A.   Defendants' Motion to Disqualify Andrew Parker

Defendants have asserted that they will not provide responsive production until their pending motion to disqualify Andrew Parker and Parker Rosen LLC is resolved. Defendants' motion is unjustified, as are their confidentiality concerns.[3] Although Skky disagrees with Defendants' contention that Mr. Parker should be disqualified, Skky has proposed numerous solutions to resolve the issue and

---

[3] The parties have already briefed this issue extensively. (*See* Vivid Dkt. Nos. 34 and 43, Playboy and Manwin Dkt. nos. 37 and 45)  As it is unnecessary to re-litigate the issue in this motion, Skky respectfully refers the Court to its memorandum of law regarding Mr. Parker and Parker Rosen's disqualification. (Vivid Dkt. No. 43, Playboy and Manwin Dkt. No. 45)

prevent this litigation from stalling.  Indeed, Skky agreed to enter a stipulation that any confidential or highly confidential information would not be shared with Parker Rosen until the Motion to Disqualify was resolved.  Defendants have refused all such proposals.

Even if Defendants' concerns about Mr. Parker have merit, which Skky denies, there is no reason Skky's lead counsel at Robins, Kaplan, Miller & Ciresi cannot proceed with discovery until the issue is resolved. Defendants have not expressed any confidentiality concerns relating to Robins Kaplan, and did not move to disqualify any of its attorneys from this litigation. Defendants cannot unilaterally disregard the deadlines as set forth in the Federal Rules of Civil Procedure without a proper legal basis. Discovery can and should continue while this Court considers Defendants' motion.

Skky served its discovery requests on Defendants over four months ago. To date, Defendants have failed to produce a single document responsive to any of Skky's requests. To comply with the scheduling order, Skky was required to complete its infringement contentions without as much as a list of the websites operated by Defendants. At every turn, Skky has been met by one delay tactic after the other. The time has come for Defendants to provide substantive responses to Skky's requests so that discovery can proceed and this litigation can continue towards a resolution.

## B.   Quebec Business Concerns Records Act

The refusal by Playboy and Manwin to produce responsive information

based on the QBCRA is baseless and nothing more than a delay tactic.[4] The United States Supreme Court has stated "[i]t is well settled that" a "blocking statute" will "not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 544 n.29 (1987). Moreover, American courts that have specifically considered QBCRA "objections" have consistently rejected them.

For example, in *Lyons v. Bell Asbestos Mines, Ltd.*, 119 F.R.D. 384 (D.S.C. 1988), the defendant claimed the QBCRA excused it from responding to discovery requests. The court rejected this argument, holding that the defendant failed to show that the QBCRA applied to Plaintiff's requests. *Id.* at 389-90. Moreover, the court also held that, even if the QBCRA was fully applicable to Plaintiff's requests, the statute did not diminish Defendant's obligations to respond or limit the court's power to compel responses. The court gave two reasons for this. First, "legislative enactments of a provincial government such as Quebec are not entitled to comity under the principles of international law." *Id.* at 388. And second, "even if provincial statutes were accorded the deference normally paid to the laws of foreign sovereigns, the requirements of comity do not impel this court's acquiescence to the QBCRA's blanket proscription of

---

[4] Playboy and Manwin's petition to the Court of Quebec requests that the Court's Order encompass two additional lawsuits, currently ongoing. Notably, Playboy and Manwin have not raised the issue in either of these cases. It appears that Playboy and Manwin are unconcerned with the consequences of producing Canadian documents and instead are using the Court of Quebec's Order to harass Skky and stall this litigation.

discovery otherwise permitted by the Federal Rules of Civil Procedure."*Id.* at 388.

A later case, *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 644–646 (D.S.C. 1992) took the same approach. There, Canadian defendants raised the QBCRA as their basis for claiming that they did not need to respond to Plaintiff's jurisdiction-related discovery requests. *Id.* at 644. The court rejected this argument and granted Plaintiff's motion to compel, explaining that "[t]he QBCRA does not detract from the authority of this court to issue an order under Fed. R. Civ. Pro. 37(a) compelling Defendants to respond to Plaintiff's jurisdictionally-related requests; otherwise, an anomalous situation with great potential effect would result from recognition of the right of a litigant to avoid discovery permitted by local law through the assertion of violation of foreign law. Foreign law may not control local law." *Id.* at 45 (internal citations omitted).[5]

Here, the efforts of Playboy and Manwin to use the QBCRA to avoid their discovery obligations are equally baseless. Playboy and Manwin have not made any showing of how the QBCRA applies to Skky's discovery requests. And even if they did make such a showing, the aforementioned authority clearly shows that the statute would not limit this Court's power to issue an order compelling them to respond to Skky's discovery requests. The Court should recognize the

---

[5] *See also Am. Indus. Contracting, Inc. v. Johns-Manville Corp.*, 326 F. Supp. 879, 881 (W.D. Pa. 1971) (compelling Quebec company to provide discovery notwithstanding the QBCRA); *Buttitta v. Allied Signal, Inc.*, Nos. A-5263-07T1, A-5268-07T1, 2010 N.J. Super. Unpub. LEXIS 703, at *66-78 (N.J. Super. Ct. App. Apr. 5, 2010) (affirming trial judge's decision to compel discovery and impose sanctions despite Defendant's QBCRA objections).

QBCRA objection as the delay tactic that it is, and order Playboy and Manwin to respond to Skky's discovery requests.

## II.   The Court Should Compel Defendants to Answer Skky's Requests for Admission.

Skky has served Defendants with four straightforward requests for admission directed at the form and mode of storage of Defendants' video, image, and audio files. Specifically, Skky's requests read as follows:

> **Request No. 1:** Admit that all image files available through your Services are compressed files (e.g., JPEG, GIF, or PNG).
>
> **Request No. 2:** Admit that all video files available through your Services are compressed files (e.g., MPEG, MOV, M4P, or WMV).
>
> **Request No. 3:** Admit that all audio files available through your Services are compressed files (e.g., AAC, MP3, or WMA).
>
> **Request No. 4:** Admit that all audio, image, and video files available through your Services are stored in a computer or server memory.

Defendants served largely identical written objections to each request and refused to answer all of them. The crux of Defendants' objections, however, related to the fact that the requests use the term "Services," which Skky defined as a number of Defendants' specific websites "and any other Web Sites identified in Skky's infringement contentions or that are later identified [by] Defendants as discovery continues, as well as any mobile applications identified in Skky's infringement contentions or that are later identified by Defendants as discovery continues." (*See, e.g.* Schultz Decl. Ex. 1) Defendants claimed that the reference to Skky's infringement contentions in the definition of "Services" prevented

Defendants from responding until those contentions were served. (*See, e.g.*, Schultz Decl. Ex. 10) Defendants further lodged objections claiming it did not understand several terms, including "image files," "video files," and "audio files," and stating that the information sought was either overbroad, unduly burdensome, irrelevant, or in the possession of a third party. (*Id.*)

Skky's requests for admission are squarely relevant and should receive full answers. The claims of Skky's '875 patent cover "compressing . . . digital audio and/or visual files" and "storing compressed audio and/or visual files in one or more storage mediums . . . ." Thus, whether the image, video, and audio files available through Defendants' websites are (a) compressed and (b) stored somewhere bears directly on the issue of whether Defendants infringe the '875 patent.

Defendants' refusal to provide meaningful answers is improper. First, it is inconceivable that Defendants do not understand the terms "image files," "video files," and "audio files." Second, Defendants' complaint that Skky defines "Services" to include websites that either party may identify as discovery progresses does not excuse Defendants from answering for the websites Skky has identified in the requests. Second, Defendants' "overbroad" objections are baseless. Defendants know whether the image, video, and audio files from its websites exist in compressed form and are stored on a computer or server. Finally, the fact that Skky has since identified additional websites in its infringement contentions renders moot Defendants' claim that it "is unable to admit or deny this Request" until infringement contentions are served.

Skky's requests for admission are simple, uncomplicated, and touch on issues fundamental to Defendants' business. The Court should order Defendants to answer Skky's First Set of Requests for Admission in full.

### III. The Court Should Compel Defendants to Respond Fully to Skky's Interrogatory Nos. 1, 3, 6, and 7.

Skky has also served Defendants with a series of similarly straightforward interrogatories.[6] The interrogatories relevant to this memorandum read as follows:

**Interrogatory No. 1:** Identify by name all Web Sites and mobile applications that you have developed, owned, operated, managed, or maintained, in whole or in part, since January 1, 2000, including those that you no longer develop, own, operate, manage, or maintain.

**Interrogatory No. 3:** Identify and describe your relationship with any third parties with which you have relationships or agreements—formal or informal— regarding the design, development, testing, deployment, maintenance, or management any financial or technical aspect of the Services.

**Interrogatory No. 6:** Identify the types of devices that are capable of receiving data over a cellular network that have accessed or viewed the Services since June 16, 2009.

**Interrogatory No. 7:** For each of the Web Sites and mobile applications identified in response to Interrogatory 1, identify and describe the storage mediums on which any audio, visual, or graphical content is kept, including, without

---

[6] At this time, Skky has agreed to limit the interrogatories to the time frame of June 16, 2009.  Skky reserves the right to seek information prior to this date if it becomes relevant or likely to lead to admissible evidence.

limitation, location and entity/entities that owns, manages, or controls the storage medium.

For reasons similar to those stated above, these interrogatories are squarely relevant and should receive full responses. The '875 patent covers a method of transmitting content rich media to smart phones and other mobile wireless devices wirelessly over the air, with or without an internet network. Skky has sued Defendants for patent infringement alleging that Defendants' websites practice the claimed invention. Interrogatories No. 1, 6, and 7 therefore seek information that is central and foundational to this lawsuit. For Skky to know the full scope and extent of Defendants' infringement, it needs to know which web sites and mobile applications Defendants have developed, owned, operated, managed, or maintained since at least June 16, 2009, and the types of devices capable of accessing those sites.

Interrogatory No. 3 also seeks relevant information, as it addresses the role third parties play with regard to Defendants' websites and mobile applications. In its First Amended Complaint, Skky specifically alleges that "Third parties, collectively with Defendants, have infringed, and continue to infringe one or more claims of the '875 patent." Skky further alleges that Defendants direct and control third parties related to the compression, storing, and/or transmission of compressed audio and/or visual files to cellular phones" and also that Defendants have "induced infringement . . . by causing, urging, encouraging, aiding, or instructing third parties to perform one or more of the claimed methods of the '875 patent. . . ." (Vivid Dkt. 21, ¶¶ 16, 17, Playboy and Manwin Dkt. 22, ¶¶ 16, 17) Interrogatory No. 3 therefore seeks information bearing directly on Skky's joint infringement and inducement claims.

Defendants' refusal to provide substantive answers to these interrogatories is unjustified. For Interrogatory No. 1, Defendants' primary excuse is that the terms "mobile applications" and "maintained" "render a meaningful response impossible." (*E.g.*, Schultz Decl. Ex. 11) Defendants also claim the interrogatory is overbroad. But Skky's Interrogatory No. 1 is about as straightforward as a request can get. It simply asks Defendants to identify their websites and mobile applications. Defendants' claim that, by asking them to identify their own websites and applications, Skky has asked them to perform an impossible task belies common sense. Defendants' refusal to answer Interrogatory No. 1 allows them to also avoid responding to Interrogatory No. 7, which asks how audio and visual content associated with websites identified in response to Interrogatory No. 1 are stored. But this information, like the names of its own websites, should be well-known to Defendants or easily ascertainable.

Defendants' objections to Interrogatory No. 3 are equally unavailing. After listing additional terms, such as "relationship," that it claims render a response "impossible," Defendants again claim that they cannot provide any meaningful response without knowing which websites Skky is referring to. As explained above, the fact that Skky listed specific websites in its requests shows that this objection was invalid when made. And the fact that Skky has since identified additional websites in its infringement contentions renders moot Defendants' claim that it "is unable to determine the Web Sites about which Plaintiff seeks information." (*Id.*) This also renders moot Defendants' objections to Interrogatory No. 6. To the extent any other of Defendants' website has not been identified, it is because Defendants have refused to identify their own websites in response to

Interrogatory No. 1. Skky therefore respectfully asks the Court to order Defendants to respond fully to Interrogatories No. 1, 3, 6, and 7.

## IV.   Defendants Should Respond Fully to Skky's 28 Document Requests.

Skky served Defendants with 28 document requests to which Defendants *have not produced even one responsive document.*[7] These requests relate directly and indirectly to the claims covered by the '875 patent, Skky's infringement theories, and damages information. Specifically, Skky's requests pertain to the following subject areas:

- Defendants' knowledge of and communications regarding the '875 patent (Request Nos. 1 and 2);

- The identity of the websites and mobile applications owned, developed, and operated, etc. by Defendants since 2000 (Request Nos. 3 and 4);

- The location of servers supporting Defendants' websites and mobile applications (Request Nos. 5 and 6);

- Defendants' relationships with third parties or other people/entities regarding the Services that comprise the subject of the lawsuit (Request Nos. 7, 8, 14, 15, and 16);

- Business, marketing, and strategic plans relating to the use of Defendants' Services by devices capable of receiving data via cellular networks (Request No. 9);

- Revenue amounts associated with Defendants' Services, including from advertising and subscriptions. (Request Nos. 10–13);

---

[7] Similar to the interrogatories, Skky has agreed to limit the documents requests, for now, to June 16, 2009 to the present.  Skky reserves the right to seek information from an earlier time frame if it is likely to lead to admissible evidence.

- Valuations of the accessibility or use of Defendants' Services by a device capable of receiving data over a cellular network (Request No. 17);

- Patent license agreements related to the subject of the '875 patent (Request No. 18);

- Revenue and profit figures, as well as direct and indirect expenses, associated with Defendants' services; (Requests Nos. 19–22);

- The role and identity of Defendants' entities and personnel engaged in designing, manufacturing, overseeing, managing, etc. the Services (Request Nos. 23 and 24);

- Defendants' organizational structure (Request No. 25);

- The types of devices capable of receiving data over a cellular network that have accessed or viewed the Services since June 16, 2009, and the frequency of such access. (Request Nos. 26–28).

(*See, e.g.,* Schultz Decl. Ex. 3) Each of these requests bears on, or reasonably could lead to another matter that could bear on, any issue that is or may be in the present case. Accordingly, the Court should compel Defendants to produce all non-privileged documents responsive to these requests.

In their responses, Defendants refused to produce documents for 23 of Skky's 28 document requests. Defendants' refusals can be separated into three groups.

The first group consists of Defendants' refusal to produce documents responsive to Request No. 2, 3, 4, 6, and 18, which read as follows:

> **Request No. 2:** All documents that relate to communications between you and any third party concerning this litigation or the Asserted Patent, including communications with licensees, contractors, manufacturers, or agents.

**Request No. 3:** Documents sufficient to identify Web Sites owned, operated, controlled, or maintained in whole or in part by Defendants from January 1, 2000 through the present.

**Request No. 4:** Documents sufficient to identify mobile applications developed, owned, operated, controlled, or maintained in whole or in part by Defendants from January 1, 2000 through the present.

**Request No. 6:** Documents sufficient to show the location of servers supporting mobile applications developed, owned, operated, controlled, or maintained in whole or in part by Defendants from June 16, 2009 through the present.

**Request No. 18:** All patent license agreements related to wireless delivery of content to a device that is capable of receiving data over a cellular network.

Defendants refused to produce documents responsive to Request No. 2 on the grounds that it is overbroad, seeks irrelevant information, and seeks privileged information. But communications between Defendants and third parties regarding this litigation or the '875 patent fall within the broad meaning of relevance during discovery and should be limited in number.

Defendants lodge nearly identical objections in refusing to produce documents responsive to Requests No. 3 and 4. But as explained above, the issue of which websites (and mobile applications) Defendants own, control, and maintain lies at the heart of this lawsuit. By refusing to identify their own websites, Defendants are able to avoid a number of other, related discovery inquiries and delay the discovery process. Defendants should be compelled to identify their websites and mobile applications.

In responding to Request No. 6, Defendants based their refusal to produce documents primarily on their claim that the request is vague and the location of

their servers supporting their mobile applications is irrelevant. But the documents sought are relevant because the '875 patent covers "[a] method of wirelessly delivering over the air one or more digital audio and/or visual files *from one or more servers* to one or more wireless device means . . . ." The location of Defendants' servers will shed light on the extent to which Defendants' websites, when used, practice the claimed methods and could lead to the discovery of other relevant evidence regarding how Defendants' services function.

Finally, Defendants refuse to produce documents responsive to Request No. 18 claiming it is vague, overbroad, irrelevant, and seeks information that is confidential or privileged. However, the license agreements sought by the request relate to the subject matter covered by the '875 patent. The request is relevant and deserves a substantive response.

The second group consists of Defendants' refusal to produce documents responsive to Requests No. 7–17, 19–23, and 25–28. Each of these requests contain the word "Services" – a term Skky has defined as specific websites owned by Defendants "and any other Web Sites identified in Skky's infringement contentions or that are later identified [by] [Defendants] as discovery continues, as well as any mobile applications identified in Skky's infringement contentions or that are later identified by [Defendants] as discovery continues." (*See, e.g.,* Schultz Decl. Ex. 3) Defendants claim that this definition prevents Defendants from knowing which websites Requests No. 7–17, 19–23, and 25–28 apply to.

This excuse for not producing documents was baseless when made, given that Skky identified specific Defendants' websites in its requests. This excuse is

also moot, given that Skky's infringement contentions identified many of Defendants' websites. Moreover, Defendants still have not responded to Interrogatory No. 1 and Request No. 3, which require Defendants to identify their own websites. This refusal to respond has prevented Skky from identifying other websites implicated by Requests No. 7–17, 19–23, and 25–28. In other words, Defendants have attempted to avoid responding to Skky's discovery requests by simply withholding information about the websites to which those Requests pertain

The final group of "refusals" consists of those requests for which Defendants has actually *agreed* to produce responsive documents but has *still failed* to actually produce anything. Defendants indicated their intent to produce documents responsive to Request Nos. 1, 5, 7, 8, and 24. But as of the date of this filing, Defendants have still not produced a single responsive document to Skky. There is no justification for Defendants' failure to produce even one responsive document in this case. The Court should compel Defendants to produce all documents responsive to Requests No. 1, 5, 7, 8, and 24.

## CONCLUSION

The Court should put an end to Defendants' delay tactics. Skky's aforementioned requests for admission, interrogatories, and document requests seek highly relevant information and deserve full and substantive responses by a date certain. Skky respectfully requests that this Court grant its motion and compel Defendants to respond fully to each of Skky's requests by a date certain.

Dated: <u>March 4, 2014</u>         ROBINS, KAPLAN, MILLER & CIRESI, LLP

By: <u>*s/Ryan Schultz*</u>
Ronald J. Schutz (0130849)
Becky R. Thorson (0254861)
Ryan Schultz (0392648)
Benjamen Linden (0393232)
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Phone: (612) 349–8500

PARKER ROSEN, LLC
Daniel N. Rosen (0250909)
888 Colwell Building, 123 Third Street North
Minneapolis, MN 55401

*Counsel for Skky, Inc.*