# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Skky, Inc., | Case No.: 13-2086 (PJS/JJG) |
|     Plaintiff, | |
| vs. | |
| Manwin USA, Inc., and Manwin Holding, s.a.r.l, | |
|     Defendants. | |
| | |
| Skky, Inc., | Case No.: 13-2089 (PJS/JJG) |
|     Plaintiff, | |
| vs. | |
| Playboy Enterprises, Inc., | |
|     Defendant. | |
| Skky, Inc., | Case No.: 13-2087 (PJS/JJG) |
|     Plaintiff, | |
| vs. | |
| Vivid Entertainment, LLC, | |
|     Defendant. | |

**DEFENDANTS MANWIN'S, PLAYBOY'S AND VIVID'S RESPONSE IN
OPPOSITION TO PLAINTIFF SKKY'S MOTION TO COMPEL**

Defendants Playboy Enterprises, Inc. ("Playboy"), Manwin USA, Inc. and Manwin Holdings, s.a.r.l ("Manwin"), and Vivid Entertainment, LLC ("Vivid"), (collectively "Defendants"), hereby submit this response in opposition to Plaintiff Skky Inc.'s ("Skky" or "Plaintiff") motion to compel certain written discovery responses.

## INTRODUCTION

Skky's motion to compel is premature and unnecessary. The motion appears to be posturing by Plaintiff prior to a hearing on Defendants' motion to disqualify Skky's counsel – an inefficient use of the Court's and the parties' time.[1] A few days before this motion was filed, Defendants represented to Plaintiff that supplemental interrogatories were drafted, being reviewed by Defendants, and would be produced in the near future. Vivid, indeed, served supplemental interrogatories in accord with their representations. Manwin and Playboy have also agreed to further supplement their responses to interrogatories following the Court's decision on Defendants' motion to disqualify. Incredibly, Plaintiff filed this motion before the Court even had an opportunity to hear Defendants' motion to disqualify.

Plaintiff is well aware that Defendants' concerns with Plaintiff's requests are not simply based on the relevancy of the information. Rather, a significant number of Plaintiff's requests cannot be answered by Defendants. Indeed, Plaintiff's requests for admission are abstract and compound – and cannot be answered with either an admission

---

[1] Plaintiff's motion was filed less than 24 hours before the March 5, 2014 hearing on Defendants' motion to disqualify.

or denial. Defendants also cannot respond to all of Plaintiff's requests for production or interrogatories because responsive information is not within Defendants' possession or control and, in Manwin and Playboy's cases, there is a Judgment from the Court of Quebec ("Judgment") restricting what Manwin and Playboy can disclose in discovery.[2]

As described in further detail in Defendants' pending motion to disqualify the Parker Rosen firm (Dkt. No. 39), Defendants are also concerned with disclosing confidential information to Skky's counsel because the Parker Rosen Law Firm is intricately involved in Skky. For example, Mr. Parker is Skky's COO, Skky and Parker Rosen share the same office (and likely the same electronic systems, networks, filing systems and support staff – allegations that have not been disputed by Skky) and Parker Rosen has a proprietary interest in Skky and the subject matter of these litigations. *Id.*

Despite these hurdles to discovery, Defendants continue to make significant efforts to provide information to Skky when such information is within their possession or control and producing it does not run afoul of the Judgment or underlying Act. For example, Defendants served initial disclosures pursuant to Fed. R. Civ. P. 26 on November 22, 2013, and have since supplemented their initial disclosures on three separate occasions.

---

[2] On December 20, 2013, the Honorable Armando Aznar, J.C.Q of the Court of Quebec, issued a Judgment in Case No. 500-22-208549-132 ("Judgment") prohibiting the removal from Quebec of any "any document, resume, or digest of document" including source code, accounts, reports and inventories "irrespective of whether it is kept or stored in physical format, electronic format or other format" relating to "Quebec Inc. or any other business concern in Quebec." The Manwin and Playboy defendants will further address the parties' discovery dispute involving the Judgment in their motion for protective order to be filed later this week.

Conversely, Skky has yet to supplement its sparse initial disclosures. Defendants have also produced over 7,000 pages of documents – almost double Skky's current production.[3] And all three Defendants have agreed to make supplemental productions once the Court resolves the pending motion to disqualify. Simply put, Defendants continue to make significant efforts to provide discovery without violating the Judgment or disclosing its unprotected confidential information. Skky for its part has been uncompromising and at times unreasonable.[4] Defendants thus ask the Court to deny Skky's motion to compel.

## **BACKGROUND**

Relatively early in these cases, the parties recognized that the litigations would involve the exchange of confidential and sensitive information during discovery. To this end, the parties negotiated and agreed to a protective order that would protect the parties'

---

[3] Defendants have each produced 7176 pages of discovery in response to Skky's requests for production. Skky has produced only 3440 pages of documents – almost all of which are public prosecution file histories of the patent-in-suit and related applications. Indeed, the file wrapper of the patent-in-suit itself is over 2000 pages in length, due in large part to the fact that it took applicants seven years to receive their Notice of Allowance.

[4] Skky's unreasonableness is demonstrated throughout its motion to compel including footnote 2 which states in pertinent part "Defendants recently alleged that Skky's production was deficient – <u>two and half months after Skky produced the documents</u>." Motion to compel at 8 (emphasis added). In contrast, Skky began alleging Defendants' productions were deficient <u>almost two months before the parties even reached an agreement regarding the parameters and protocol of ESI production</u>. *Compare* Declaration of Tamany Vinson Bentz, dated March 11, 2014 ("Bentz Decl.") Ex. 1 (Skky December 18, 2013 email) *with* Dkt. No. 44 (January 29, 2013 ESI Agreement). Defendants were more pragmatic and waited until the ESI Agreement was entered – and afforded Skky a reasonable amount of time to produce responsive ESI – before making premature allegations that its production was deficient.

sensitive information. Dkt. Nos. 30-2 and 32[5]. Despite knowing that Defendants would produce confidential information, Skky failed to disclose several material facts; including that its outside counsel, Andrew Parker, was Skky's Chief Operating Officer ("COO") and that Skky recently moved its corporate headquarters into the Parker Rosen firm.[6] *See* Dkt. No. 39 at 4-6. Simply put, Defendants' confidential and highly confidential information would be disclosed to officers of Skky and made available to Skky irrespective of the protections in the parties' Stipulated Protective Order. Fortunately in early January 2014, Defendants discovered these material facts. *Id*. Defendants were understandably concerned about this discovery and Skky's misrepresentations during negotiations over the Stipulated Protective Order. Defendants' concerns over their sensitive technical and business information are legitimate. Skky is actively prosecuting patents, has pending patent applications, and will likely engage Defendants with future litigation if these patents issue. Defendants rightfully do not want to disclose information to Skky that can be used by Skky while prosecuting its patents in order to get claims covering Defendants' business.

Based on these concerns, Defendants promptly filed a motion to disqualify Parker Rosen as Skky's counsel, and sought a stipulation from Skky that Andrew Parker, Daniel Rosen and their law firm would be walled off from Defendants' confidential and highly

---

[5] The docket numbers in this brief reference ECF documents filed in the Skky v. Manwin, et al. matter, 13-cv-2086. The documents referenced are also filed in the other Defendants' matters, however the docket numbers differ.

[6] To date, Skky has not disputed that Parker Rosen and Skky share the same electronic systems and network, nor has Skky disputed that its shares the same filing systems and support staff. Indeed, Skky's counsel remained silent on this issue at the March 5, 2014 hearing on Defendants' Motion to Disqualify.

confidential information until the Court issued a final decision on Defendants' motion to disqualify. Bentz Decl. Ex. 2; Defendants' Jan. 31, 2014 letter and proposed stipulation.

Without basis, Skky inconceivably claims that Defendants refused such a stipulation. But again, <u>it was Defendants, not Skky, that drafted a stipulation to screen Parker Rosen</u>. *Id*.; *Compare* Skky Motion at 10 ("Defendants have refused all such proposals") *with* Bentz Decl. Ex. 2 ("we enclose a proposed Stipulation and Order ('Stipulation') reflecting Skky's recent proposal to screen Parker Rosen…."). Skky refused to carry through with its verbal offer, and instead responded with a seven-page stipulation placing several conditions on any proposed screen, including some that would require Manwin to violate a Judgment from a court in Quebec, its principal place of business. Bentz Decl. Ex. 3; Skky's February 5, 2014 email from counsel for Skky, Ryan Schultz, to counsel for Defendants, Todd Nosher.

Skky's unfitting relationship with Parker Rosen and its ongoing refusal to stipulate to screen Parker Rosen has caused a delay in discovery – not the actions of Defendants. Notwithstanding, Defendants have done what they can to provide information to Plaintiff, including offering numerous deposition dates and recently supplementing their interrogatory responses.

## **LEGAL ARGUMENT**

**A. Skky's Requests For Admission Are Inappropriate And Impossible To Admit Or Deny.**

Defendants objected to Skky's requests for admission because they are vague and abstract and, therefore, could not be admitted or denied. It is well settled that requests for admission must be simple and direct. *See Edeh v. Equifax Info. Servs., LLC*, 2013 WL 1749912, at *7 (D. Minn. Apr. 23, 2013) *aff'd*, 291 F.R.D. 330 (D. Minn. 2013) ("A request for admission must set forth its requests in a simple and direct manner which can be admitted or denied without explanation." ); 7 Moore's Federal Practice § 36.10 (Matthew Bender 3d ed.). "Requests for Admissions are not a discovery device" but rather a method of expediting trial "by eliminating the necessity of proving undisputed and peripheral issues." *Lakehead Pipe Line Co. v. Am. Home Assurance Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997). Accordingly, it is the requesting party's burden to draft requests for admission that are clear and specific so a responding party can easily agree or disagree. *See* 7 Moore's Federal Practice § 36.10 (Matthew Bender 3d ed.). Indeed, parties are not required to admit or deny requests that are not clear or specific. *See, e.g.*, *Sommerfield v. City of Chicago*, 251 F.R.D. 353, 356 (N.D. Ill. 2008) (refusing to compel responses to requests for admission that were "hypothetical in nature and thus are not easily answered"); *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 448 (C.D. Cal. 1998) (refusing to compel responses to requests for admissions that were really phrased as interrogatories); *Lakehead Pipe Line Co.*, 177 F.R.D. at 457 (the court "decline[d] to direct a supplementation of the challenged responses" when the responding party appropriately "either admitted, denied,

responded with qualifications, or expressed their incapacity to substantively respond."). Likewise, each matter of which an admission is requested must be separately stated. *See* 7 Moore's Federal Practice § 36.10 (Matthew Bender 3d ed.).

> Here, Skky served the following four requests for admission on all Defendants:
>
> Request No. 1: Admit that all image files available through your Services are compressed files (e.g., JPEG, GIF, or PNG).
>
> Request No. 2: Admit that all video files available through your Services are compressed files (e.g., MPEG, MOV, M4P, or WMV).
>
> Request No. 3: Admit that all audio files available through your Services are compressed files (e.g., AAC, MP3, WMA).
>
> Request No. 4: Admit that all audio, image, and video files available through your Services are stored in a computer or server memory.

These requests are vague and abstract and cannot be admitted or denied for at least the following three reasons:

First, all of the requests seek information about websites that had yet to be identified. All the requests use the term "Services" which is defined to include "any other Web Sites identified in Skky's infringement contentions or that are later identified by [Defendant] as discovery continues, as well as any mobile applications identified in Skky's infringement contentions or that are later identified by [Defendant] as discovery continues." Dkt. No. 49, Declaration of Ryan Schultz at ¶¶ 6, 9, and 12. The requests for admission were served on October 31, 2013. Skky's infringement contentions were not served <u>until more than three months later</u> on February 24, 2014. Even if Defendants could accurately predict what would be in Skky's infringement contentions, the definition of "Services" is broader than

8

Skky's infringement contentions and includes websites and mobile applications that are identified by Defendants in the future. Defendants can neither admit nor deny information about a website that has yet to be identified by either Skky or Defendants. It is akin to asking Defendants to admit or deny facts before they get the chance to read the request for admission.

Second, the requests are hopelessly compound. A single request seeks admissions as to all Defendants' websites and mobile applications. Defendants own or participate in the operation of numerous websites and/or mobile applications with <u>countless "image, video or audio files"</u> and significant involvement of third parties. Defendants cannot reasonably admit or deny anything about <u>all</u> the websites – a single request requires them to analyze thousands of file types used on every one of the accused websites. In *Safeco*, a court considered similar requests for admissions that concerned plaintiff's underwriting of homeowners' policies. 181 F.R.D. 441, 448 (C.D. Cal. 1998). The specific requests referred to whether plaintiff underwrote certain coverages in an "insurance contract" separately from each other. *Id*. The term "insurance contract" was not defined and, therefore, did not refer to a specific contract but rather all of plaintiff's contracts. *Id*. A response to the request, thus, required plaintiff to consider:

> every document contained in the files of any of plaintiff's other insureds that would tend to support plaintiff's implicit assertion that it does not determine limits of coverage for the listed coverages separately [and] . . . [s]imilarly, each of plaintiff's employees who participated in or possesses some information about the underwriting of any homeowner's policy in which the limit of coverage for the listed coverages was not determined separately, would have to be identified.

*Id*. The court in *Safeco* denied defendant's motion to compel because the broadly worded requests for admission were an attempt to end-run around the numerical limits on interrogatories. *Id*.

Third, all of Plaintiff's requests rely on a hypothetical and use the "e.g." to refer to file types. Defendants cannot admit or deny hypotheticals. *See Sommerfield*, 251 F.R.D. at 356 ("A number of the requests are hypothetical in nature and thus are not easily answered.").

It is Skky's burden to put forward proper requests for admission. Skky's requests for admission fail to do so because the requests for admission are not simple or direct. Defendants have no objection to answering straight-forward requests for admission, but should not be compelled to admit or deny the requests as currently set forth by Skky. To this end, Defendants have repeatedly asked Skky to rephrase the requests, but Skky refuses to do so.

### B. Skky's Motion With Respect To Requests For Production Was Unnecessary As To Vivid's Responses.

As Skky is aware, Vivid has agreed to produce documents in its possession that are responsive to any of Skky's requests once the motion to disqualify Parker Rosen is resolved. Skky's counsel and Vivid's counsel discussed Vivid's responses to discovery less than a week before Skky filed its motion to compel. Bentz Decl. at ¶ 10. During that telephone conference, Vivid's counsel explained that Vivid uses third parties to operate its websites. *Id*. Those third parties have almost all of the documents Skky is requesting.

Bentz Decl. at ¶ 10. Vivid's counsel accordingly offered to walk through the requests for production and tell Skky's counsel specifically what documents Vivid had and discuss what Vivid expected to be possession of third parties. *Id*. Skky's counsel refused that offer, which at the time was not surprising given Vivid's overall objection to producing confidential information prior to the resolution of the motion to disqualify. It is surprising, however, that Skky filed a motion to compel responses to request for production after denying Vivid's offer to provide additional information and without ever mentioning this conversation to the Court.

Vivid will produce information that it has which includes, for instance, contracts with third-party vendors, and Google Analytic reports once the motion to disqualify is resolved and safeguards to Defendants' confidentiality are restored. Skky's motion is, therefore, unnecessary. Furthermore, Vivid, like all of the Defendants, offered to produce information prior to the motion to disqualify if Skky would agree to temporarily screen Parker Rosen from any confidential or highly confidential information. To date, Skky has refused to stipulate to any screen.

### C. Skky's Motion With Respect To Requests For Production Was Also Unnecessary As To Manwin And Playboy.

Manwin and Playboy are in a similar position with respect to discovery because Manwin operates websites accused of infringement in the Playboy litigation. Accordingly,

certain information and documents responsive to Skky's requests to Playboy are in the possession of 9219-1568 Quebec Inc. (a related Manwin entity) in Quebec.[7]

Manwin and Playboy's ability to respond to Skky's requests are complicated by two issues, but Manwin and Playboy have sought to resolve these issues to allow Manwin and Playboy to produce information. Skky, however, has refused all offers.

First, Skky is seeking confidential information from Manwin and Playboy that will not be protected from disclosure to Skky under the current version of the Protective Order. Rather, the information will be disclosed to Parker Rosen, the principals of which have a proprietary interest in Skky and these causes of action and who share the same office with Skky. Nonetheless, Defendants offered to produce documents before the decision on Defendants' motion to disqualify if Skky would agree to screen Parker Rosen. Bentz Decl. Ex. 2. Skky would not agree to such stipulation without Defendants agreeing to certain one-sided conditions including the production of information in violation of the Judgment from Quebec. *See e.g.*, Bentz Decl. Ex. 3; Skky's February 5, 2014 email and proposed stipulation and Ex. 4; Skky's February 12, 2014 letter and proposed stipulation. Defendants cannot agree to such conditions.

---

[7] Because Manwin operates numerous websites accused of infringement in the Manwin and Playboy litigations, the Judgment is relevant to discovery in both actions. Playboy, a California corporation, is only affected by the Judgment in relation to the websites operated by Manwin – all materials in California including financials are not implicated and will be produced.

Second, Skky is seeking technical information from Manwin and Playboy in direct violation of the Judgment of the Court of Quebec which restricts the disclosure of certain documents. Although Manwin is prohibited from producing documents on its behalf or on Playboy's behalf that are responsive to select requests for technical information, the same information is otherwise available through depositions. In fact, Manwin and Playboy have already offered numerous deposition dates on which Skky could obtain the information it is seeking. Bentz Decl. Exs. 5-6; Defendants January 30, 2014 email and February 5, 2014 letter to Skky. But Skky has refused all deposition dates, and has yet to propose any alternate dates. Bentz Decl. Ex. 7; Skky February 7, 2014 email to Defendants. As of the time Skky filed its motion to compel, neither of these issues had been addressed.

### D. Skky's Motion With Respect To Interrogatories Was Premature And Is Now Moot.

Defendants either supplemented their responses to interrogatories (as to non-confidential information) or agreed to do so (as to confidential information) in the near future after the motion for disqualification is decided.

Vivid supplemented all of its interrogatory responses on March 6, 2014. Bentz Decl. at ¶ 11. Vivid's supplements include all of the information Vivid has in its possession and an indication of which requests relate to third-party vendors that operate Vivid's websites. Vivid also agreed to produce documents in response to certain interrogatories once the motion to disqualify was resolved. Vivid is, thus, not withholding any information

in response to the interrogatories for any reason other than the pendency of the motion to disqualify.

Playboy and Manwin will further supplement its interrogatory responses, once the motion to disqualify is decided and within the constraints of the motion to disqualify Parker Rosen.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Skky's motion to compel.

Dated: March 11, 2014               s/Justi Rae Miller
               Barbara Podlucky Berens (#209788)
               Justi Rae Miller (#387330)
               **Berens & Miller, P.A.**
               3720 IDS Center 80 South Eighth Street
               Minneapolis, MN 55402
               Telephone: (612) 349-6171
               Facsimile: (612) 349-6416
               Bberens@berensmiller.com
               Jmiller@berensmiller.com

               Frank M. Gasparo (Admitted *Pro Hac Vice*)
               Todd M. Nosher (Admitted *Pro Hac Vice*)
               **Venable LLP**
               1270 Avenue of the Americas
               Twenty-Fourth Floor
               New York, New York 10020
               Telephone: (212) 307-5500
               Facsimile: (212) 307-5598
               fmgasparo@venable.com
               tmnosher@venable.com

               Tamany Vinson Bentz (Admitted *Pro Hac Vice*)
               **Venable LLP**
               2049 Century Park E,
               Los Angeles, CA 90067
               Telephone: (310) 229-9900
               Facsimile: (310) 229-9901
               tvbentz@venable.com

               *ATTORNEYS FOR DEFENDANTS Manwin USA, Inc.,*
               *Manwin Holding, s.a.r.l. and Playboy Enterprises, Inc.*