## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Skky, Inc.,

      Plaintiff,

vs.

Manwin USA, Inc., and Manwin Holding, s.a.r.l,

      Defendants.

Case No.:  13-2086 (PJS/JJG)

---

Skky, Inc.,

      Plaintiff,

vs.

Playboy Enterprises, Inc.,

      Defendant.

Case No.:  13-2089 (PJS/JJG)

---

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Defendants Manwin USA, Inc., Manwin Holding, s.a.r.l. ("Manwin") and Playboy Enterprises, Inc. (collectively "Defendants") hereby move pursuant to Fed. R. Civ. P. 26(c) for a Protective Order prohibiting Plaintiff Skky Inc. ("Skky") from engaging in discovery in any manner that will force Defendants to violate the December 20, 2013 Judgment of the Court of Quebec as entered by the Honorable Armando Aznar, J.C.Q in Case No. 500-22-208549-132 ("Judgment").

## INTRODUCTION

Skky has embarked on a fishing expedition by propounding a series of overly broad document requests, interrogatories and requests for admission.  Skky continues to press such requests without regard to the Judgment or Defendants' obligations thereunder.  In fact, Skky has now moved to compel responses to its vast requests in the face of the Judgment and despite <u>Defendants' efforts to work around the prohibitions</u> of the Judgment.  Because several requests call for the production of documents that if produced would violate the Judgment and subject Defendants to penal sanctions and other penalties, and because Skky refuses to limit or narrow its requests, Defendants have no choice but to seek a Protective Order under Fed. R. Civ. P. 26(c).

Upon motion by 9219-1568 Quebec Inc. ("Quebec Inc."), the Court of Quebec entered a Judgment prohibiting the removal from Quebec of "any document, resume, or digest of document" including source code, accounts, reports and inventories "irrespective of whether it is kept or stored in physical format, electronic format or other format" relating to "Quebec Inc. or any other business concern in Quebec." *See* Declaration of Todd Nosher dated March 13, 2014 ("Nosher Decl.") Ex. 1; Judgment.[1]   <u>Tellingly, Skky has not appealed, sought the revocation of, or otherwise challenged the Judgment despite having nearly three months to do so.</u>  The Judgment and the prohibitions set forth therein are

---

[1] Defendants submit the accompanying declarations of Todd Nosher dated March 13, 2014 ("Nosher Decl.") and Patrick Ferland, dated March 13, 2014 ("Ferland Decl.") in conjunction with and in support of this motion.  The Nosher Declaration includes Exhibits 1-16 and the Ferland Declaration includes Exhibits A-C.

grounded in statue, namely the Quebec Business Concerns Records Act, R.S.Q. c D-12 ("QBCRA" or "Act") which prohibits the removal from Quebec of "any document or resume or digest of any document relating to any concern." Nosher Decl. Ex. 2; QBCRA.

By way of background, Quebec Inc. is a <u>non-party</u> corporate entity related to the Manwin defendants that is in sole possession of certain documents and information residing in Quebec that are subject to the Judgment and that appear to be responsive to certain Skky discovery requests. Because Manwin operates numerous websites accused of infringement in the Manwin and Playboy litigations, the Judgment is relevant to discovery in both actions. Playboy, a California corporation, is only affected by the Judgment with respect to the accused websites operated by Manwin – documents stored in California are not implicated.

Although discovery is still in its early stages in both litigations,[2] it appears that the Judgment will have some impact on discovery. Indeed 1) technical documents, 2) third party agreements and 3) source code[3]  are in the possession of Quebec Inc., and therefore implicated by the Judgment.  However, the information sought by Skky from these

---

[2] Despite suggestions to the contrary in its motion to compel, Skky agrees with this premise. *See* Nosher Decl. Ex. 3; Skky February 12, 2014 letter to Defendants and accompanying proposed stipulation ("discovery in these cases are in the early stages").

[3] Counsel for Skky, Mr. Schultz, stated during the parties' January 16, 2014 meet and confer that Skky is not interested in Defendants' source code and that Skky would not be seeking the same. Indeed, Skky has yet to initiate a source code request under the provisions of the Protective Order <u>in any of the current litigations</u>.  *See* Manwin Dkt. No. 32; Protective Order ("Prior to the first inspection of any requested piece of Source Code, the requesting party shall provide 28 calendar days' notice of the Source Code that it wishes to inspect.").

materials may <u>be obtained through other forms of discovery including depositions.</u> Depositions can proceed under the Judgment as long as a deponent testifies based on his or her personal knowledge without reliance on any implicated documents. *See* Declaration of Patrick Ferland dated March 13, 2014 ("Ferland Decl.") at ¶ 11; *see also Walsh v. Gaitan & Cusack*, [1993] R.D.J. 621 (Qc C.A.); *Pelnar v. Insurance Co. of North America*, [1985] R.D.J. 354 (Qc C.A.).  Moreover, technical agreements are also discoverable from third parties located outside of Quebec through subpoenas for documents and deposition testimony.  *See* Fed. R. Civ. P. 45.  Rather than work with Defendants to first pursue these permissible forms of discovery, Skky chose to file a premature motion to compel.

Accordingly, there should be no issues balancing Skky's interests in discovery in these actions with Manwin and Playboy's obligations under the Judgment because much of the information that seems to be of interest to Skky is generally available through at least one form of discovery permitted by the Judgment. Accordingly, Defendants respectfully request that the Court grant their motion for a Protective Order.

## **RELEVANT FACTS**

Manwin and Playboy provided prompt notice of the Judgment to Skky and the Court in early January 2013, and raised the possibility that Defendants would seek relief under Federal Rule of Civil Procedure 26(c) if deemed necessary by the Court.[4]  Nosher Decl.

---

[4] As explained *infra*, Defendants made significant efforts to avoid seeking a Protective Order– and exercised restraint by not filing this motion during the parties' recent discussions involving the issue.  However, based on the filing of Skky's motion to compel (Manwin Dkt. No. 47), Defendants had no choice but to file this motion.

Ex. 4; Defendants' January 6, 2014 Letter to the Court; *see also* Manwin Dkt. No. 34.[5]   The

Court scheduled a January 13, 2014 teleconference at which the parties discussed the

Judgment and its potential impact on discovery.   Defendants explained that Skky's

boundless discovery requests made it difficult to determine what effect, if any, the

Judgment would have on these actions.   The Court ultimately instructed the parties to meet

and confer in an attempt to narrow Skky's requests and to determine the Judgment's impact

on the same.

    The parties met on January 16, 2014 and discussed Skky's pending document

requests, interrogatories and requests for admission in view of the Judgment.[6]   Defendants

made clear that technical documents, agreements and source code are generally in the

possession of non-party Quebec Inc. and thus implicated by the Judgment.   Defendants

also asked Skky once again to narrow its requests by time and scope so that Defendants

could determine what <u>specific</u> materials and information Skky is actually seeking.

Following the meet and confer, Skky sent Defendants a "list of technical documents" that

---

[5] All references to docket entries herein refer to Civil Action No. 13-2086, *Skky Inc. v Manwin USA, Inc., and Manwin Holding, s.a.r.l.* ("the Manwin Dkt."). The documents referenced are also filed in the *Skky v. Playboy* matter, however the docket numbers differ.

[6] Two days earlier, Defendants discovered that Skky's then-litigation counsel, Andrew Parker, is Skky's Chief Operating Officer ("COO"). *See generally* Defendants' Motion to Disqualify (Manwin Dkt. No. 39). Defendants also discovered that Skky recently moved its "corporate headquarters" into the Parker Rosen law firm. These material facts completely eviscerated key safeguards to Defendants' confidentiality in the Protective Order, and the parties have not exchanged confidential information since Defendants' discovery of these material facts.

it continued to seek with an accompanying disclaimer that Skky is "<u>not waiving or agreeing</u> <u>to narrow the discovery requests</u>." Nosher Decl. Ex. 5; Schultz January 16, 2014 email to Nosher (emphasis added).

This list of technical documents failed to clarify Skky's original requests; it was neither limited in time nor scope – and again it relied on undefined and vague terms from Skky's original requests. To date, Skky has refused to narrow its discovery requests despite the Court's suggestion and Defendants' repeated requests for Skky to do so.

Skky has similarly pressed for Rule 30(b)(6) depositions.[7]  Skky served notices of depositions pursuant to Fed. R. Civ. P. 30(b)(6) on Manwin and Playboy two (2) days before Christmas.  Nosher Decl. Ex. 6; Skky December 23, 2013 First Notice(s) of Deposition Pursuant to Rule 30(b)(6).  Skky scheduled those depositions within one (1) week of New Year's Day.  *Id.*  Defendants explained that the proposed deposition dates would not work given the holiday schedule and corresponding vacation plans of the likely deponents.  Nosher Decl. Ex. 7; Nosher January 4, 2014 email to Schultz.

Skky served amended Rule 30(b)(6) deposition notices on Manwin and Playboy on January 16, 2014 – two days after Defendants discovered that Skky's COO was serving as its litigation counsel.  Manwin and Playboy offered numerous deposition dates in February. Nosher Decl. Ex. 8; Nosher January 30, 2014 email to Schultz; *see also* Nosher Decl. Ex.

---

[7] Skky does not raise the issue of depositions in its motion to compel, and ostensibly no longer seeks such depositions in the near term.

9; Nosher February 5, 2014 letter to Schultz.  But Defendants made those offers contingent upon Skky's agreement to wall off the Parker Rosen firm from Defendants' confidential information pending the outcome of Defendants' Motion to Disqualify.  Nosher Decl. Ex. 10; Nosher January 31, 2014 letter to Schultz and enclosed proposed stipulation. Skky refused to sign Defendants' proposed stipulation – a stipulation that mirrored Skky's own verbal offer to keep Defendants' confidential information away from Messrs. Parker, Rosen and the Parker Rosen firm until the resolution of Defendants' Motion to Disqualify. *See* Nosher Decl. Ex. 11; Skky's February 5, 2014 proposed stipulation.  Instead, Skky attempted to use its verbal offer as leverage in the parties' ongoing discovery disputes. *Id*; *see also* Nosher Decl. Ex. 12; Schultz February 12, 2014 letter to Nosher and accompanying proposed stipulation. To date, Skky has yet to sign Defendants' proposed stipulation to screen the Parker Rosen firm.[8]  Skky has also failed to provide any alternate

---

[8] In response to Defendants' proposed stipulation, Skky circulated a counter-proposal and stipulation of over eight pages in length comprised of countless one-sided discovery demands.  Nosher Decl. Ex. 11.  Skky has since modified its proposal, incorporating by reference specific demands in its February 12, 2014 letter (*see* Nosher Decl. Ex. 12) and adding the peculiar condition that the stipulation not be filed on the date it is signed – but rather on a later date – seemingly in the hopes of shielding the Parker Rosen firm from any negative attention from the publically filed stipulation.  But Parker Rosen made its own choice to "rent" out its law office to a current client in the midst of an ongoing litigation in which it is counsel of record. Defendants should not have to affirmatively delay the filing of any stipulation to further shield this fact.  On the eve of filing this motion, Skky circulated its proposal once again, but the self-serving language in its proposed stipulation remains.  Defendants' offer for Skky to sign a plain, neutrally drafted stipulation to screen the Parker Rosen firm remains open.

dates for any of the depositions offered last month.  As such, no depositions have taken place to date, nor are any scheduled.

Although Skky refuses to meaningfully limit the scope of its requests and continues to pursue specific requests that directly violate the Judgment, and despite the current gaps in the Protective Order caused by Mr. Parker's role as Skky's COO, Defendants have still produced far more discovery than Skky in these litigations.  For example, Manwin and Playboy have supplemented their November 22, 2013 initial disclosures on three separate occasions.[9]  Skky has yet to supplement its sparse disclosures.  Additionally, Defendants have already produced over 7,000 pages of documents that are not implicated by the Judgment – almost double Skky' current production.[10]  Defendants have also provided all substantive, non-confidential answers to Skky's interrogatories including Defendants' supplemental responses served this week.  Defendants will further supplement those answers following the Court's decision on Defendants' Motion to Disqualify.  Simply put, Defendants have made and will continue to make every effort to provide discovery without violating the Judgment or disclosing their currently unprotected confidential information.

---

[9] Defendants provided significantly more information in its Initial Disclosures than did Skky.  Manwin and Playboy's list of potential witnesses, for example, is seven times greater than Skky's.   Nosher Decl. Exs. 13-15; Manwin's Third Amended Initial Disclosures, Playboy's Third Amended Initial Disclosures and Skky's Initial Disclosures.

[10] Manwin and Playboy have each produced 7,176 pages of discovery in response to Skky's requests for production.  Conversely, Skky has produced only 3,440 pages of documents – almost all of which are public prosecution file histories of the patent-in-suit and related applications.  The file wrapper of the patent-in-suit itself is over 2,000 pages, due in large part to the fact that it took nearly seven years for the patent-in-suit to issue.

## <u>LEGAL AUTHORITY</u>

Under Federal Rule of Civil Procedure 26(c), upon a showing of good cause, the court may issue an order that prohibits the discovery sought, limits the scope of disclosure, and/ or specifies the terms, including the time and timing, for the challenged discovery. Fed. R. Civ. P. 26 (c)(1).  Specifically, Rule 26(c)(1) provides, in pertinent part, that:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A)    forbidding the disclosure or discovery;
>
> (B)    specifying terms, including time and place, for the disclosure or discovery;
>
> (C)    prescribing a discovery method other than the one selected by the party seeking discovery; [and]
>
> (D)    forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; . . . .

A party demonstrates good cause by showing that specific prejudice or harm will result if no protective order issues. *Buehrle v. City of O'Fallon, Mo*., 4:10CV00509 AGF, 2011 WL 529922, at *2 (E.D. Mo. Feb. 8, 2011) (citing *Frideres v. Schiltz*, 150 F.R.D. 153, 156 (S.D. Iowa 1993)). The prejudice or harm protected by Rule 26(c) includes "annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(c); *Crawford–El v. Britton*, 523 U.S. 574, 599 (1998).

District courts have broad discretion to issue protective orders that limit the scope of discovery. *Pavlik v. Cargill, Inc.*, 9 F.3d 710, 714 (8th Cir. 1993).  Indeed, the Eighth Circuit has made clear that "district courts should not neglect their power to restrict

discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Miscellaneous Docket Matter # 1 v. Miscellaneous Docket Matter # 2*, 197 F.3d 922, 926 (8th Cir. 1999) (quoting *Herbert v. Lando*, 441 U.S. 153, 177 (1979)).

## ARGUMENT

Good cause exits for the relief sought here.  First, Manwin and Playboy are bound by the Judgment and could face potential penal sanctions and other sanctions if they were to violate the Judgment and underlying statute. Second, given the "long history of other [U.S.] courts recognizing Canadian Judgments under [the] principles of comity," the Judgment should be respected by the parties and the Court in these litigations.  *See e.g.*, *Smith v. Toronto-Dominion Bank*, 1999 WL 38160, at *2 (10th Cir. Jan. 29, 1999).  Third, the Judgment only prohibits a limited and discrete range of discovery and Skky may obtain the information it ostensibly seeks through other forms of permissible discovery.  Simply put, the Judgment will have little impact on Skky's ability to obtain discovery – but Defendants face grave repercussions if they violate the Judgment.

### A. Manwin and Playboy Are Bound By the Judgment

The Judgment expressly prohibits Manwin and Playboy from producing documents to Skky from Quebec "that relate to [any] business concern in Quebec."  Nosher Decl. Ex. 1. The Judgment is grounded in statutory authority, namely the Quebec Business Concerns Records Act that prohibits the removal from Quebec of "any document or resume or digest of any document relating to any concern."  Nosher Decl. Ex. 2.  But as Defendants have

repeatedly made clear to Skky, only a limited range of documents are kept solely in Quebec

and thus implicated by the Judgment.  The implicated documents are technical documents,

agreements and source code.  All other responsive documents can be found in locations

outside of Quebec and are not relevant to this motion.  Accordingly, the Judgment will

have only the following limited impact on discovery in these actions:

1)   <u>Document Discovery</u> - Manwin and Playboy are prohibited
from producing a select range of documents (*i.e.*, technical
documents, agreements and source code) residing in
Quebec.[11]  Nosher Decl. Exs. 1-2; *see also Renault c. Bell
Asbestos Ltd.*, 1980 CarswellQue 692, para. 17 (Can.
Q.C.A.) (WL) (stating QBCRA is a remedial law originally
designed to protect Quebec businesses from abuses. It
should be interpreted in broad and liberal manner to ensure
its objective is met); *Pelnar v. Insurance Co. of North
America*, 1985 CarswellQue 707 (Can. Q.C.A.) (WL);
*Walsh v. Gaitan & Cusack*, [1993] R.D.J. 621 (Quebec
C.A.) (Motion for leave to appeal to Supreme Court of
Canada denied (SCC 23846): The QBCRA prohibits not
only the communication of the documents themselves, but
also the communication of copies, as well as the mere
inspection of the documents. QBCRA prohibits asking
witness questions if would reveal information gathered
from protected documents, but does not prohibit providing
answers of which the witness has independent knowledge.).

2)   <u>Depositions</u> – All depositions of individuals located in
Quebec may proceed but a deponent must testify based on
his or her personal knowledge without reliance on any
implicated documents.   *Walsh c. Gaitan & Cusack*,

---

[11] Interrogatories and Requests for Admissions may not be used to circumvent the
Judgment by seeking implicated documents.  Like depositions, the Judgment and Act
require responses to interrogatories and requests for admission to be based on one's
personal knowledge without reliance on implicated documents.  Ferland Decl. at ¶ 11; *see
also*, *Walsh*, CarswellQue 309 (Can. Q.C.A.); *Pelnar v. Insurance Co. of North America*,
1985 CarswellQue 707 (citing the general principles of QBCRA).

> CarswellQue 309 (Can. Q.C.A.); *Pelnar v. Insurance Co. of*
> *North America*, 1985 CarswellQue 707.

*See* Ferland Decl. at ¶ 11.

Because Defendants are bound by the Judgment, Defendants' violation of the Judgment and underlying Act may result in penal sanctions.  Indeed, the repercussions of such violations are significant:

> Every person who, having received notice of a petition to a judge of the Court of Québec under section 4, infringes the provisions of section 2 <u>shall be guilty of contempt of court</u>.
>
> Every person who has furnished, or has received from the judge an order to furnish, an undertaking or security and who infringes the provisions of section 2 shall be guilty of contempt of court in addition to any obligation provided by the undertaking or security furnished or ordered by the judge.

*See* Nosher Decl. Ex. 2; QBCRA at s. 5 (emphasis added).

## B. The Technical Information Sought Is Available Through Other Forms Of Discovery

Notwithstanding these prohibitions, the technical information sought by Skky is readily available through other forms of discovery permitted by the Judgment.  Skky's is generally seeking the following technical information:

- Technical documents related to the creation of content made available on web sites/mobile applications operated by/for either defendant;

- Technical documents related to the storage of content made available on web sites/mobile applications operated by/for either defendant;

- Technical documents related to the accessibility of content by devices on web sites/mobile applications operated by/for either defendant;

- Technical documents related to the types of devices that access the web sites/mobile applications operated by/for either defendant; and

- Technical documents related to the format of each file that is made available on the web sites/mobile applications operated by/for either defendant.

Nosher Decl. Ex. 5.  Again, Defendants are prohibited from producing documents stored in Quebec that are responsive to these requests, but this information is otherwise available via deposition(s). Manwin and Playboy have already offered numerous deposition dates on which Skky could have obtained the information listed above.  But Skky refused all deposition dates, and has yet to propose any alternate dates.  Manwin and Playboy will continue to make deponents available to Skky so that Skky can seek discovery of the requested technical information.  Skky likewise seeks agreements stored in Quebec.  Once again, although Manwin and Playboy are prohibited from producing any implicated agreements located in Quebec, the same agreements should be readily available from relevant third parties outside of Quebec and discoverable pursuant to Fed. R. Civ. P. 45. To be clear, the discrete range of discovery impacted by the Judgment is available through alternate forms of permissible discovery.

## C. **The Judgment Should Be Respected**

There is a "long history of other [U.S.] courts recognizing Canadian Judgments under the principles of comity."  *Smith*, 1999 WL 38160, at *2 ; *see also Clarkson Co. v. Shaheen*, 544 F.2d 624, 630 (2d Cir. 1976) (Canadian judgment recognized as one from "a sister common law jurisdiction with procedures akin to our own . . ." and "Canadian judgments have been held entitled to credit"); *Staffer v. Predovich (In re Staffer)*,

WL1444758, at *4 (C.D. Cal. May 20, 2009) (holding that "the Canadian Judgment is valid and should be recognized"); Canadian Imperial *Bank of Commerce v. Saxony Carpet Co*., 899 F. Supp. 1248, 1252 (S.D.N.Y. 1995) (stating the Supreme Court held that "recognition of foreign judgments and proceedings are governed by principles of comity") (citing *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895)); *Ball v. Deere & Co.*, 684 F. Supp. 1455, 1458 (C.D. Ill. 1988) (noting "Canadian judgments have been recognized in the United States under the doctrine of comity[,]" which is a "sister common law jurisdiction."); *United Cooperatives of Ontario v. M/V Good Trader*, 622 F. Supp. 335, 337 (E.D. La. 1985) (concluding "the Canadian in rem judgment against M/V GOOD TRADER, now M/V TYHI, must be given full force and effect."); *Hansen v. Am. Nat'l Bank*, 396 N.W. 2d 642, 646 (Minn. Ct. App. 1986) (stating "[w]hen the determination is by a court of a foreign nation, that judgment is still recognized, not out of full faith and credit, but as a matter of comity.").[12]  *Accord Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 491 F.3d 355, 360 (8th Cir. 2007) (discussing the importance of comity in a globalized economy and adopting the conservative approach in "determining whether a foreign antisuit injunction should issue").

---

[12] These cases generally cite the long standing authority of the U.S. Supreme Court in *Ritchie v. McMullen*, 159 U.S. 235, 240-43 (1895) (affirming district court enforcing Canadian judgment enforced in federal diversity action filed in Illinois) and *Hilton*, 159 U.S. at 163-64 (1895), which "provides the guiding principles of comity." *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1011 (9th Cir. 2009).

Courts in this District have similarly recognized foreign judgments and/or the principles underlying such recognition. *Massi v. Holden*, WL 6181258, at *3 (D. Minn. Dec. 13, 2011) (D. Minn. Dec. 13, 2011) (stating "Minnesota has recognized the validity of foreign judgments and their res judicata effect"); *Fuller v. Robitaille*, 1997 U.S. Dist. LEXIS 24058, 4-5 (D. Minn. Jan. 3, 1997) (recognizing comity for the courts and processes of Canada and that such comity extends to the "discretionary recognition of foreign judgments").

The Judgment should likewise be recognized here.

### D. <u>Arguments In Skky's Motion To Compel Are Unavailing</u>

Skky ignores the Judgment of the Court of Quebec in its motion to compel – just as it has done for over two months.  Recognizing the infirmity of its position, Skky devotes over two pages of its motion to the parties' Canadian document dispute without making a single mention of the Judgment.  Skky instead focuses entirely on the QBCRA and cites to several inapposite decisions from the District of South Carolina in support of its position. *See* Manwin Dkt. No. 50, 10-13.  Skky does not and cannot cite to a single case in which a district court compelled discovery over a Canadian Judgment that placed limited restrictions on document production.  The *Lyons* and *Central Wesleyan College* decisions cited in Skky's motion are easily distinguished because the parties in those cases sought to block discovery outright and seemingly made no efforts to work around the Quebec Statue, as Defendants have repeatedly done here.  *Lyons v. Bell Asbestos Mines, Ltd.*, 119 F.R.D.

384, 387 (D.S.C. 1988); *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 645 (D.S.C. 1992).   Indeed, the Lyons Court emphasized its concern of a "<u>blanket proscription</u> of discovery otherwise permitted by the Federal Rules of Civil Procedure." The concern of a blanket proscription is not present in the present litigations.   *Lyons*, 119 F.R.D. at 387 (emphasis added).   Here, the restrictions on document discovery are limited. And Defendants have offered to make witnesses available to testify regarding the same information that would otherwise be available in the documents implicated by the Judgment.

Lastly, Skky suggests without any support that "Playboy and Manwin have not made any showing of how the QBCRA applies to Skky's discovery requests."   *See* Skky Motion to Compel at 12.   That is simply false.   Defendants have repeatedly explained to Skky how the Judgment and underlying Act impact Defendants' ability to respond to Skky's discovery requests.   *See, e.g.,* Nosher Decl. Ex. 16; Nosher February 19, 2014 Letter to Schultz.   Similarly, Defendants have repeatedly suggested other forms of discovery that are readily available to Skky – forms of discovery that will not subject Defendants' to liability under the Judgment and Act.[13] Rather than pursue the routes of permissible discovery, Skky filed a motion to compel.

---

[13] Skky also states that "Playboy and Manwin's petition to the Court of Quebec requests that the Court's order encompass two additional lawsuits, currently ongoing….Notably, Playboy and Manwin have not raised the issue in either of these cases."   *See* Motion to Compel n. 4.   Skky is wrong on all accounts, and obviously performed no diligence prior to making this statement.   As a threshold matter, contrary to Skky's assertion, Playboy is not a party to these "additional lawsuits." Those litigations involve non-practicing entities,

## **CONCLUSION**

For the foregoing reasons and based on Defendants' showing of good cause, Defendants respectfully request that the Court grant its motion for a Protective Order.

---

like Skky, who filed infringement actions against Manwin. In the *ExitExchange* litigation, Manwin has yet to answer the Complaint and is awaiting the Court's decision on Manwin's motions to dismiss.  As for the *Joao* litigation, discovery has just commenced.  To be clear, Manwin will seek the same protections in those actions as it has in this case if the NPE plaintiffs disregard the Judgment just as Skky has in these litigations.

Dated: March 13, 2014

s/Justi Rae Miller
Barbara Podlucky Berens (#209788)
Justi Rae Miller (#387330)
**Berens Miller P.A.**
3720 IDS Center 80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 349-6171
Facsimile: (612) 349-6416
Bberens@berensmiller.com
Jmiller@berensmiller.com

Frank M. Gasparo (Admitted *Pro Hac Vice*)
Todd M. Nosher (Admitted *Pro Hac Vice*)
**Venable LLP**
1270 Avenue of the Americas
Twenty-Fourth Floor
New York, New York 10020
Telephone:  (212) 307-5500
Facsimile:  (212) 307-5598
fmgasparo@venable.com
tmnosher@venable.com

Tamany Vinson Bentz (Admitted *Pro Hac Vice*)
**Venable LLP**
2049 Century Park E,
Los Angeles, CA 90067
Telephone:  (310) 229-9900
Facsimile: (310) 229-9901
tvbentz@venable.com

*ATTORNEYS   FOR   DEFENDANTS   Manwin*
*USA, Inc., Manwin Holding, s.a.r.l. and Playboy*
*Enterprises, Inc.*