# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Skky, Inc.,

      Plaintiff,

v.

Manwin USA, Inc., and Manwin Holding, s.ar.l,

      Defendants.

Case No.: 13–2086 (PJS/JJG)

---

Skky, Inc.,

      Plaintiff,

vs.

Playboy Enterprises, Inc.,

Defendant.

Case No.: 13–2089 (PJS/JJG)

**SKKY'S RESPONSE OPPOSING DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

---

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND ............................................................................. 1

LEGAL STANDARDS ...................................................................................... 4

ARGUMENT ...................................................................................................... 4

I.    Defendants' QBCRA-Based Objection Does Not Justify Their Refusal
to Produce Documents. ........................................................................... 4

    A.    The United States Supreme Court Has Held That Foreign
Blocking Statutes Do Not Limit the Power of American Courts to
Compel Discovery. ...................................................................... 4

    B.    American Courts Have Rejected the Claim That The QBCRA
Provides A Legitimate Excuse for Avoiding Discovery
Obligations. ................................................................................. 7

    C.    The Cases Defendants' Cite Have No Bearing on This Issue and
Do Not Support Their Request for a Protective Order. ........... 12

    D.    The Supreme Court of Canada Has Found the QBCRA To Be A
Fundamentally Flawed Statute That Provides No Basis For
Avoiding Inter-Provincial Discovery Obligations. ................. 14

II.    Defendants' Proposal of Depositions and Third Party Subpoenas Is
Not an Adequate Substitute for Document Discovery. ...................... 18

    A.    Defendants' Proposal of Fact Witnesses .................................. 19

    B.    Defendants' Proposal for Technical Agreements ..................... 21

CONCLUSION ................................................................................................ 23

TABLE OF AUTHORITIES

**Page**

## Cases

*Am. Indus. Contracting, Inc. v. Johns-Manville Corp.*,
 326 F. Supp. 879 (W.D. Pa. 1971) ....................................................................7, 9

*Arthur Anderson & Co. v. Finesilver*,
 546 F.2d 338 (10th Cir. 1976) ................................................................................ 8

*Ball v. Deere & Co.*,
 684 F. Supp. 1455 (C.D. Ill. 1988) ....................................................................... 13

*Benesh, Friedlander, Coplan & Aronoff v. Nesmith*,
 [1983] C.S. 790) ...................................................................................................... 16

*Brown v. Carr*,
 236 F.R.D. 311 (S.D. Tex. 2006) ......................................................................... 20

*Buttitta v. Allied Signal, Inc.*,
 Nos. A-5263–07T1, A-5268–07T1,
 2010 N.J. Super. Unpub. LEXIS 703
 (N.J. Super. Ct. App. Apr. 5, 2010) ....................................................................... 9

*Canadian Imperial Bank of Commerce v. Saxony Carpet Co.*,
 899 F. Supp. 1248 (S.D.N.Y. 1995) ..................................................................... 13

*Central Wesleyan College v. W.R. Grace & Co.*,
 143 F.R.D. 628 (D.S.C. 1992) .................................................................8, 9, 10, 11

*ExitExchange v. Friendfinder Networks, Inc*,
 2:13-cv-00396-JRG ................................................................................................ 12

*Fuller v. Robitaille*,
 1997 U.S. Dist. LEXIS 24058 (D. Minn. Jan. 3, 1997) ....................................... 13

*General Dynamics Corp. v. Selb Mfg. Co.*,
 481 F.2d 1204 (8th Cir. 1973) ............................................................................... 4

*Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*,
    491 F.3d 355 (8th Cir. 2007) ............................................................................ 14

*Hansen v. Am. Nat'l Bank*,
    396 N.W.2d 642 (Minn. Ct. App. 1986) ........................................................ 13

*Hickman v. Taylor*,
    329 U.S. 495 (1947) .......................................................................................... 6

*Hunt v. T&N, PLC*,
    [1993] S.C.R. 4 (S.C.C. 1993) ................................................................. passim

*In re Dana Corp.*,
    574 F.3d 129 (2d Cir. 2009) .......................................................................... 19

*In re Vitamins Antitrust Litig.*,
    216 F.R.D. 168 (D.D.C. 2003) ....................................................................... 20

*Johnson v. United States Bancorp*,
    NO. C11–02010 RAJ, 2012 U.S. Dist. LEXIS 182435
    (W.D. Wash. Dec. 26, 2012) .......................................................................... 19

*Lyons v. Bell Asbestos Mines, Ltd.*,
    119 F.R.D. 384 (D.S.C. 1988) ................................................................. passim

*Massi v. Holden*,
    No. 09-1821 (MJD/JJG), 2011 U.S. Dist. LEXIS 143211
    (D. Minn. Dec. 13, 2011) ............................................................................... 13

*Prokosch v. Catalina Lighting, Inc.*,
    193 F.R.D. 633 (D. Minn. 2000) ................................................................... 21

*Renault v. Bell Asbestos Mines Ltd.*,
    [1976] C.P. 284 ............................................................................................... 16

*Resolution Trust Corp. v. S. Union Co.*,
    985 F.2d 196 (5th Cir. 1993) ......................................................................... 21

*Richards v. Convergys Corp.*,
    No. 2:05–CV-00790–DAK, Consolidated with 2:05–CV-00812 DAK,
    2006 U.S. Dist. LEXIS 63567 (D. Utah Sept. 5, 2006) ............................. 22

*Smith v. The Toronto-Dominion Bank*,
    No. 98-4008, 1999 U.S. App. LEXIS 1184
    (10th Cir. Jan. 29, 1999).................................................................................13

*Societe Nationale Industrielle Aerospatiale et al. v. U.S. District Court for the*
    *Southern District of Iowa*,
    482 U.S. 522 (1987) ...............................................................................4, 5, 6, 7

*Staffer v. Predovich (In re Staffer)*,
    No. CV 08-4820 ABC, 2009 U.S. Dist. LEXIS 48953
    (C.D. Cal. May 20, 2009) .......................................................................13

*United Cooperatives of Ontario v. M/V Good Trader*,
    622 F. Supp. 335 (E.D. La. 1985) ........................................................13

*United States v. Kordel*,
    397 U.S. 1 (1970) .....................................................................................4

**Statutes**

Quebec Business Concerns Records Act ............................................passim

**Other Authorities**

Wright & Miller, Federal Practice and Procedure: Civil § 2035................................4

**Rules**

Fed. R. Civ. P. 1 .......................................................................................18

Fed. R. Civ. P. 26(c)..................................................................................4

Fed. R. Civ. P. 34 .....................................................................................21

## INTRODUCTION

Defendants' motion for a protective order is a baseless attempt to use the Quebec Business Concerns Records Act ("QBCRA") to delay this case and deprive Skky of discovery. American (and Canadian) courts have rejected the proposition that the QBCRA statutory scheme excuses parties from complying with their discovery obligations. Courts have also emphasized that litigants' rights to obtain full discovery are paramount to any QBCRA-based objections raised by defendants. Defendants fail to cite even one case where an American court granted a protective order in an analogous situation and none of the authority relied on by Defendants even addresses protective orders, discovery, foreign blocking statutes, or the QBCRA. This Court should deny the motion and order Defendants to comply with their discovery obligations.

## FACTUAL BACKGROUND

Skky filed its first Requests for Production, Interrogatories, and Requests for Admissions on October 31, 2013. Dkt. No. 51, Exhibits 1-6. Defendants replied on December 5, 2013 with a series of objections to Skky's Requests. *Id.* Exhibits 7-12. Notably, Defendants did not make a single objection to any Request on the basis that any responsive documents were located in Quebec and thus could not be produced without violating the QBRCA.[1] *Id.* Although Defendants did not, and to date have yet to, provide responsive production,[2] Skky was willing to work

---

[1] The QBCRA is a provincial "blocking" statute, "a law passed by foreign government imposing penalty upon a national for complying with a foreign court's discovery request." *Lyons v. Bell Asbestos Mines, Ltd.*, 119 F.R.D. 384, 388 (D.S.C. 1988).

[2] Defendants' memorandum in support touts their "over 7,000 pages of documents not implicated by the [Quebec Order]." Dkt. No. 59 at 8.  However, Defendants' production consists entirely of prior art documents, none of which

with Defendants and their schedule to keep the case moving forward. In late December, Defendants reassured Skky that discovery would proceed following a short break for the holidays. Dkt. No. 51, Exhibit 19.

In actuality, on the same day Defendants provided Skky with assurances that discovery would continue, Defendants petitioned the Court of Quebec for an order prohibiting the removal of any document from Quebec to the United States, even if those documents were directly responsive to Skky's discovery requests. Dkt. No. 34–1. Defendants did not raise this issue with Skky prior to seeking the order.[3] Schultz Decl. ¶ 6. In fact, Skky first learned about the Quebec Order in a letter Defendants sent to this Court dated January 6, 2014.[4] Dkt. No. 34.

In response to Defendants' letter, the parties met with the Court to discuss the issue. Dkt. No. 35. There, the Court did not determine if the Quebec Order even applied to this case, let alone the extent of documents it covered. *Id.* The Court advised both parties to attempt to narrow the document requests, without

are responsive to *any* of Skky's discovery requests. Schultz Decl. ¶ 7. Skky, on the other hand, has produced documents, including confidential documents, responsive to Defendants' requests. *Id.* Additionally, Skky will produce an additional batch of responsive documents to Defendants by March 28, 2014. Schultz Decl. Exhibit 1. Defendants have been unwilling to provide a similar clear date to provide any responsive production of their own. Schultz Decl. ¶ 8.

[3] To be clear, Skky was not a party to the action that resulted in the QBRCA Order relied upon by Defendants. Nor has Skky sued Quebec, Inc. Contrary to Defendants' assertions that Skky has acquiesced to the Quebec Order, Skky has maintained that the order does not trump its rights to discovery under the Federal Rules of Civil Procedure in this case.

[4] Although in their January 2014 letter to the Court, Defendants noted that they could file a motion to obtain a protective order relating to documents allegedly encompassed by the Quebec Order, Defendants did not do so until filing this motion, more than two months later. *Id.*

waiving their ability to seek additional production at a later date, allowing discovery to proceed. *Id.*

The parties met numerous times to discuss Defendants' production and Skky's discovery requests. During those meetings, Defendants did not say which of Skky's requests implicated the Quebec Order. Schultz Decl. ¶ 9. Further, Defendants did not provide Skky with any specific indication of what responsive documents are located in Quebec. *Id.* Instead, Defendants continued refusing to produce, claiming that "technical" documents were located in Quebec. Defendants still have not identified those documents or stated how many responsive documents exist. *See, e.g.*, Dkt. No. 59 at 3.

Defendants proposed that Skky could obtain answers to its discovery requests through depositions.[5] *Id.* at 3–4. However, Defendants attached the important caveat that those depositions must be based only on the personal knowledge of the deponent and that the deponent cannot refer to any document located in Quebec in preparation for the deposition. *Id.* at 4.

Because the parties were unable to reach a resolution on the issue, Skky filed its motion to compel discovery on March 4, 2014.  Dkt. No. 47.  Defendants filed their response to that motion on March 11, 2014.  Dkt. No. 55.  Two days later, Defendants moved for a protective order.  Dkt. No. 57.

---

[5] In a footnote in their memorandum in support, Defendants state that "Skky does not raise the issue of depositions in its motion to compel, and ostensibly no longer seeks such depositions in the near term." Dkt. No. 59 at 6 n. 7.  Not only is this statement irrelevant to this motion, but it is also inaccurate.  Skky fully intends to seek depositions relevant to this case as soon as practicable.  However, Skky does not seek unverifiable depositions based purely on the personal knowledge of Defendants' employees.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 26(c) requires that "good cause" be shown for a protective order to be issued. Moreover, the moving party bears the burden of showing that a protective order is necessary and warranted. *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973). This burden contemplates "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements . . . ." *Id.* (*citing* Wright & Miller, Federal Practice and Procedure: Civil § 2035 at 264–65). And any assessment of good cause "must also include a consideration of the relative hardship to the non-moving party should the protective order be granted." *Id.* (*citing United States v. Kordel*, 397 U.S. 1, 4–5 (1970)).

## ARGUMENT

### I.    Defendants' QBCRA-Based Objection Does Not Justify Their Refusal to Produce Documents.

#### A.    The United States Supreme Court Has Held That Foreign Blocking Statutes Do Not Limit the Power of American Courts to Compel Discovery.

Defendants claim that the QBCRA and related order entitle them to a protective order. But contrary to Defendants' argument, foreign blocking statutes with penal provisions do not limit United States district courts from ordering foreign companies to uphold their discovery obligations. These fundamental principles were made clear by the United States Supreme Court in *Societe Nationale Industrielle Aerospatiale et al. v. U.S. District Court for the Southern District of Iowa*, 482 U.S. 522 (1987). Skky has raised this case previously in its motion to compel brief. Dkt. No. 50. Yet, Defendants do not address the case in their brief,

even though it involves the denial of a protective order on largely analogous facts.

The case grew out of a plane crash in Iowa. Passengers and a pilot brought suits in the United States District Court for the Southern District of Iowa, alleging that the petitioners (defendants) had manufactured and sold a defective plane. *Id.* at 525. Petitioners were both corporations owned by the Republic of France. *Id.* at 524. In response to plaintiffs' second request for the production of documents, petitioners filed a motion for a protective order. Petitioners' argued that under a French blocking statute with penal provisions, petitioners could not respond to discovery requests. *Id.* at 526.

The United States magistrate judge denied the motion insofar as it related to producing documents, rejecting petitioners' argument that the French blocking statute excused them from complying with discovery requests. *Id.* at 527. Petitioners then sought a writ of mandamus from the Court of Appeals for the Eighth Circuit. The Eighth Circuit considered the petition, but concluded that the magistrate's denial of the protective order motion was proper even though petitioners might have to violate French law to comply with discovery obligations. *Id.* at 528. The United States Supreme Court granted certiorari and held that "the Magistrate and the Court of Appeals correctly refused to grant the broad protective order that petitioners requested." *Id.* at 547.

The Court based its holding on a number of fundamental legal principles. It stated that "It is well settled that [blocking statutes] do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Id.* at 544, n. 29. The

Court also explained that an opposite ruling would allow foreign parties to obtain discovery under the Federal Rules of Civil Procedure, while the domestic party would be limited by foreign prohibitions. "This imbalance," the Court said, "would run counter to the fundamental maxim of discovery that 'mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.'" *Id.* at 540, n. 25 (*quoting Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

Nevertheless, the Supreme Court's opinion in *Societe Nationale Industrielle Aerospatiale* demonstrates that Defendants' motion for a protective order is baseless and should be denied. Defendants' argument is that because they solicited and obtained an order from a Quebec court based on a foreign blocking statute, they should be excused from their discovery obligations. But in *Societe Nationale Industrielle Aerospatiale,* the Court squarely rejected a similar argument. That defendants might be subject to foreign penal laws did not affect the Court's conclusion and should not change the outcome here.

As in *Societe Nationale Industrielle Aerospatiale,* Defendants are simply trying to use a foreign blocking statute to stall this case and deprive Skky of its ability to access all relevant facts that bear directly on the merits of this case. In other words, Defendants are attempting to undermine the maxim that mutual knowledge of all relevant facts is essential to proper litigation. Defendants fail to cite any authority to the contrary or distinguish from this controlling authority. Instead, Defendants premise their entire argument on a string cite of inapposite cases that do not relate to the specific issues raised by their motion.[6]Thus, the motion   runs afoul of precedent, is unjustified, and should be denied.

---

[6] None of the cases cited by Defendants address motions for protective orders, foreign blocking statutes, the QBCRA, or discovery rights of litigants.

**B.    American Courts Have Rejected the Claim That The QBCRA**
**Provides A Legitimate Excuse for Avoiding Discovery Obligations.**

In line with the Supreme Court's decision in *Societe National Industrielle Aerospatiale*, American courts have rejected Defendants' argument that the QBCRA (and provincial judgments rooted therein) excuse defendants from complying with their discovery obligations.

QBCRA "objections" were first comprehensively addressed in *Lyons v. Bell Asbestos Mines, Ltd.*, 119 F.R.D. 384 (D.S.C. 1988). There, defendant Asten-Hill Inc. argued that the QBCRA forbid it from responding to plaintiffs' discovery requests. *Id.* at 385. The court phrased the relevant question broadly, stating "the issue before this court is whether the QBCRA relieves a foreign defendant over which *in personam* jurisdiction has been established of its duty to comply with the *Federal Rules of Civil Procedure.*" *Id.* at 386 (italics in original). The court then resolved that question squarely against the defendant, holding that the QBCRA "does not diminish defendant's obligation to respond to plaintiffs' discovery requests or limit this court's power to compel such responses." *Id.* at 387–88.

Drawing on principles of international law, the court presented two justifications for its holding. First, the court unambiguously held that "legislative enactments of a provincial government such as Quebec *are not entitled to comity* under the principles of international law." *Id.* at 388 (emphasis added). The court explained that "the province of Quebec is not a State within the meanings of the doctrines of international law. These doctrines only apply to nations in the international sense such as the United States and Canada." *Id.* (*quoting American Industrial Contracting, Inc. v. Johns-Manville Corp.*, 326 F. Supp. 879, 880 (W.D. Pa. 1971). Second, the court explained that "even if provincial statutes were accorded

7

the deference normally paid to the laws of foreign sovereigns, the requirements of comity do not impel this court's acquiescence to the QBCRA's blanket proscription of discovery otherwise permitted by the Federal Rules of Civil Procedure." *Id.* at 388.

The court emphasized that "It is not *ipso facto* a defense to a discovery request that the law of the foreign country may prohibit production or disclosure." *Id.* at 389 (internal quotations omitted). And the court observed that:

> An anomalous situation with great potential effect would result from recognition of the right of a litigant to avoid discovery permitted by local law through the assertion of violation of foreign law. *Foreign law may not control local law. It cannot invalidate an order which local law authorizes.*

*Id.*, quoting *Arthur Anderson & Co. v. Finesilver,* 546 F.2d 338, 342 (10th Cir. 1976) (emphasis in original). Based on these principles, the court rejected Asten-Hill's QBCRA argument and ordered it to respond fully and completely to plaintiffs' discovery requests. *Id.* at 389–90.

A later case, *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 644–646 (D.S.C. 1992) also rejected the argument that the QBCRA provides foreign defendants with an excuse for not fulfilling their discovery obligations. There, Canadian defendants asserted the QBCRA as their basis for claiming that they did not need to respond to Plaintiff's jurisdiction-related discovery requests. *Id.* at 644. The court rejected this argument and granted Plaintiff's motion to compel. In so doing, the court fully endorsed the comprehensive rationale laid out in *Lyons, supra. See id.* at 645–646. The court held that "the QBCRA is not entitled to deferential consideration under the principles of international law"

and "[does] not diminish Defendant's obligations to respond to Plaintiff's discovery requests or limit the court's power to compel such responses." *Id.* at 645.

Importantly, the *Central Wesleyan College* court also rejected the argument that the existence of an actual QBCRA order excused defendants from providing information to American plaintiffs. In *Central Wesleyan College*, unlike *Lyons*, the defendants had obtained and "submitted orders from the Canadian courts prohibiting the defendants from violating the QBCRA." *Id.* at 644, n. 24. The defendants had argued that the orders and the QBCRA meant that they "cannot provide the information or documents requested by Plaintiff without violating the QBCRA, and without subjecting themselves to criminal penalties." *Id.* at 644. But the court still rejected the defendants' arguments, stating "[t]his court has considered these orders in analyzing this case, but finds that the existence of these orders does not affect the reasoning applied, as well as the conclusions reached, herein." *Id.* at 644, n. 24. Despite the existence of Canadian Orders under the QBCRA, the court granted Plaintiff's motion to compel. *Id.*

Other cases have similarly rejected defendants' QBCRA-based arguments, and compelled discovery. In *Am. Indus. Contracting, Inc. v. Johns-Manville Corp.*, 326 F. Supp. 879, 881 (W.D. Pa. 1971), the court compelled a Quebec company to provide discovery notwithstanding the QBCRA. And in *Buttitta v. Allied Signal, Inc.*, Nos. A-5263–07T1, A-5268–07T1, 2010 N.J. Super. Unpub. LEXIS 703, at *66–78 (N.J. Super. Ct. App. Apr. 5, 2010), the court affirmed a trial judge's decision to compel discovery and impose sanctions despite Defendant's QBCRA objections. Skky is not aware of any case where a judge granted a protective

9

order (or denied a motion to compel) because of the QBCRA or a QBCRA order, and Defendants cite none in their brief.

This case law is squarely on point and illustrates that Defendants' motion is meritless. By rejecting a variety of QBCRA-based arguments, the cases unquestionably establish that the Quebec blocking statute does not excuse defendants from meeting their discovery obligations. Moreover, by expressly holding that the QBCRA does not receive comity, the cases directly refute Defendants' argument that comity principles justify granting a protective order in this case. See Dkt. No. 59 at 13–15 (implying that "the principles of comity" support granting its motion). There is nothing unique or different about the Defendants or the issues raised by them here as compared to the parties in *Central Wesleyan College* or *Lyons*. Finally, by unambiguously holding that the existence of QBCRA-based orders does not dictate a different outcome, the case law undermines Defendants' claim that they deserve special exceptions because their subsidiary, who is a non-party, obtained a QBCRA order.

Defendants' attempts to distinguish these cases by portraying the discovery restrictions they are seeking as "limited," rather than categorical, are unavailing. (See Dkt. 59 at 16) Defendants acknowledge that Skky is specifically seeking "technical documents" containing specific information. Dkt. 59 at 12-13. But in an effort to portray their restrictions as "limited," they claim that witnesses could simply "testify regarding the same information that would otherwise be available in the documents . . . ." Dkt. 59 at 16. This matches their earlier assertion that Skky will still be able to obtain the technical information contained

in their documents "through other forms of discovery . . . ." Dkt. 59 at 12. But these assertions are false.

Defendants concede that they are seeking to categorically prohibit Skky from accessing or obtaining the information contained in "technical documents, agreements, and source code," and that, if granted, their motion would "prohibit[] asking witness questions if [*sic*] would reveal information gathered from protected documents" and would limit deponent testimony to only "personal knowledge without reliance on any implicated documents." *Id.* at 11. In other words, Defendants' are seeking to categorically seal off all access to the information contained in their technical documents, agreements, and source code. Defendants' efforts to categorically prohibit access to this information fall squarely within the ambit of the aforementioned cases.

Finally, Defendants erroneously suggest that there is no precedent for compelling discovery over the type of provincial order they have obtained. *Id.* at 15. But this is just an effort to distract from Defendants' failure to cite any case where a court granted a protective order because of the QBCRA, a QBCRA order, or any other foreign blocking statute. Moreover, *Central Wesleyan College* makes clear that the existence of a QBCRA order does not affect the reasoning that supports compelling discovery. 143 F.R.D. at 628. Finally, it is notable that Defendants' make no effort to distinguish the holding in *Lyons* that the QBCRA is not entitled to comity under the principles of international law. 119 F.R.D. at 388. Defendants' motion is legally unsupported and should be denied.

11

Every reason asserted by Defendants in support of their motion has been properly rejected by other courts, and Defendants have provided no reason as to why a different result is warranted here.

It is also worth noting that Defendants failed to establish that they face any real risk of actual harm.  Rather, Defendants provide hypothetical conjecture that a punishment "may" be levied. Dkt. No. 59 at 12.  Moreover, Defendants provide no evidence that the QBRCA has ever been enforced in a similar situation.

Likewise, Defendants' actions in other United States cases demonstrate that this fear of punishment is nothing more than conjecture.  In *ExitExchange v. Friendfinder Networks, Inc*, 2:13-cv-00396-JRG, Manwin has agreed to produce its source code at its local counsel's office in Texas.  Schultz Decl. Exhibit 2.  But here, Manwin asserts that source code is protected by the QBCRA and that noncompliance with the Act exposes them to criminal penalties.  Dkt. No. 59 at 11. These inconsistencies further undermine the basis for Defendants' motion.

Thus, the motion should be denied.

**C.    The Cases Defendants' Cite Have No Bearing on This Issue and Do Not Support Their Request for a Protective Order.**

Defendants' failure to cite any case law supporting their position confirms the infirmity of their motion. Indeed, Defendants do not cite a single case wherein a court granted a protective order because of a foreign blocking statute or related order. Moreover, none of Defendants' cases even address protective orders, motions to compel discovery, or foreign blocking statutes. And none of Defendants' cases make any mention of the QBCRA or QBCRA orders. This alone shows that Defendants', as the moving party, cannot meet their burden.

Instead, Defendants base their argument on a string cite of cases that have no factual or legal bearing on the precise issues raised by Defendants' motion. Most of Defendants' cases stand for the specific principle that parties cannot re-litigate issues of fact and liability in United States courts that were resolved (usually against them) on the merits in a foreign court.[7] Other cases address whether parties can bring largely identical suits simultaneously in United States and Canadian courts.[8] The final case is specifically related to anti-suit

---

[7] In *Smith v. The Toronto-Dominion Bank*, No. 98-4008, 1999 U.S. App. LEXIS 1184 (10th Cir. Jan. 29, 1999), the court held that the plaintiff could not re-litigate whether he owed Defendant for delinquent mortgage payments in Utah court after losing on the merits on summary judgment in Canadian court. In *Canadian Imperial Bank of Commerce v. Saxony Carpet Co.*, 899 F. Supp. 1248 (S.D.N.Y. 1995), the court granted Plaintiff's motion for summary judgment to enforce a money judgment obtained in Canadian courts. In *Hansen v. Am. Nat'l Bank*, 396 N.W.2d 642, 646 (Minn. Ct. App. 1986), the court held that a $1 million trial judgment issued by Minnesota court, which a Canadian bank later enforced in British Columbia court, could not be re-litigated again in Minnesota court. In *United Cooperatives of Ontario v. M/V Good Trader*, 622 F. Supp. 335 (E.D. La. 1985), the court held that a judgment on the merits obtained by a Canadian party in Canadian court for damage to a maritime vessel's cargo justified granting summary judgment enforcing the judgment in U.S. court. In *Staffer v. Predovich (In re Staffer)*, No. CV 08-4820 ABC, 2009 U.S. Dist. LEXIS 48953 (C.D. Cal. May 20, 2009), the court held that a bankruptcy court properly granted summary judgment enforcing a previous Canadian judgment that established liability for a debt. And in *Massi v. Holden*, No. 09-1821 (MJD/JJG), 2011 U.S. Dist. LEXIS 143211 (D. Minn. Dec. 13, 2011), the court held that counterclaimants could not re-litigate in United States courts findings of fact made by the Supreme Court of the Bahamas about receiverships.

[8] In *Ball v. Deere & Co.*, 684 F. Supp. 1455 (C.D. Ill. 1988), Canadian plaintiffs who sued combine manufacturer in Canada for personal injury accident that occurred in Canada could not maintain a simultaneous suit against defendants in United States federal court. And in *Fuller v. Robitaille*, 1997 U.S. Dist. LEXIS 24058 (D. Minn. Jan. 3, 1997), plaintiffs could not maintain parallel trade secret litigation against Canadian defendants in United States and Canadian courts because the

injunctions.[9] Because Defendants' motion is based on inapposite case law, they have failed to meet their burden and their motion should be denied.

**D.** **The Supreme Court of Canada Has Found the QBCRA To Be A Fundamentally Flawed Statute That Provides No Basis For Avoiding Inter-Provincial Discovery Obligations.**

Even in Canada, the QBCRA has received significant criticism. In *Hunt v. T&N, PLC*, [1993] S.C.R. 4 (S.C.C. 1993), Schultz Decl. Exhibit 3, the Supreme Court of Canada found the QBCRA unconstitutional for purposes of inter-provincial litigation. The court based its holding on findings that the statute failed to respect minimum standards of order and fairness and actually undermined inter-provincial comity.

The appellant in *Hunt* had worked as an electrician in British Columbia and had inhaled asbestos fibers on the job. *Id.* at 290. The fibers were allegedly contained in products manufactured and sold by respondents, Quebec companies involved in producing and distributing asbestos. *Id.* After the appellant was diagnosed with cancer, he sued the respondents in British Columbia for damages and requested production of documents relating to his cause of action. *Id.*

Certain respondents claimed that the QBCRA prevented their compliance and the Quebec Provincial Court granted orders preventing the respondent

---

United States court lacked personal jurisdiction, although patent infringement claims could proceed after the Canadian case terminated.

[9] *Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 491 F.3d 355 (8th Cir. 2007) (District court erroneously prohibited Japanese company from filing suit in Japan under Japanese clawback statute, after anti-dumping litigation in United States courts had terminated).

companies from sending documents out of the province. *Id.* at 290–91. After the British Columbia Supreme Court and Court of Appeals failed to issue an order compelling production, the Supreme Court of Canada took the appeal and considered whether the QBCRA was constitutional for inter-provincial purposes.

In its opinion, the court highlighted the statute's purpose of trying to impede litigation and frustrate the rights of litigants from other provinces and foreign countries. Noting its "considerable reservations" about the suggested justifications for the QBCRA, the court stated that the Act "is instead concerned with impeding legal process of courts outside the province . . . ." *Id.* at 320. The court explained that while "[a] province undoubtedly has an interest in protecting the property of its residents within the province, . . . it cannot do so by unconstitutional means." *Id.* at 327. "Here," the court said, "the means chosen are intended to unconditionally refuse recognition to orders and thereby impede litigation, not only in foreign countries but in other provinces." *Id.* The court went on to explain that:

> The whole purpose of a blocking statute is to impede successful litigation or prosecution in other jurisdictions by refusing recognition and compliance with orders issued there. Everybody realizes that the whole point of blocking statutes is not to keep documents in the province, but rather to prevent compliance, and so the success of litigation outside the province that the province finds objectionable.

*Id.* at 328. The court emphasized that this purpose "certainly runs counter to comity." *Id.*[10]

---

[10] The court also noted that efforts to ascribe a viable purpose to the QBCRA tend to focus on anti-trust concerns. *See, id.* at 304 (remarking that "The Act . . . was

The court also explained the importance of discovery, stating "[d]iscovery is a very important tool of civil litigation" emphasizing that "[t]he ultimate plaintiff must have a tool to access the otherwise internal documents, especially of large corporate monoliths." *Id.* at 329.[11] The court then listed the negative effects of the QBCRA, stating that the statute "discourages international commerce and efficient allocation and conduct of litigation" and creates other effects "that offend against the basic structure of the Canadian federation." *Id.* at 328. The court also emphasized that blocking statutes, like the QBCRA, "haphazardly end up harming individuals who were not in the jurisdiction and are not pursuing the actions against which the blocking statutes were allegedly originally aimed." *Id.* at 328.

The court observed that, "If constitutionally permissible, this approach would effectively immunize the business concerns located in Quebec . . . from <u>ever</u> having to produce documents sought for the purposes of litigation in other provinces." *Id.* at 330 (emphasis in original). And the court noted that "the essential effect then, and indeed the barely shielded intent, is to impede the substantive rights of litigants elsewhere." *Id.*

---

enacted, we were told, as a [defense] to the extraterritorial reach of Unites States anti-trust legislation" and noted that "[t]he Quebec courts have on a number of occasions asserted that this was indeed the purpose of the legislation." (*citing Renault v. Bell Asbestos Mines Ltd.*, [1976] C.P. 284, 287; *Benesh, Friedlander, Coplan & Aronoff v. Nesmith,* [1983] C.S. 790, 793)). The fact that Skky has not sued Defendants for violations of long-arm antitrust statutes is further evidence that the QBCRA blocking order deserves no deference in this context.

[11] The court also stated that "the trend of the case law . . . is to emphasize the importance of the right to discovery, even at the cost of considerable loss of confidentiality." *Id.* at 329

Considering both the statute's purposes and undesirable effects, the court found that the QBCRA fails to respect "the principles of order and fairness which must . . . inform the procedures required for litigation having extraprovincial effects." *Id.* at 327. And on that basis, the court found "the *Quebec Business Concerns Records Act* is constitutionally inapplicable to other provinces . . . ." (italics in original). Because this holding resolved the appeal, the court decided it did not need to determine whether the statute was "wholly unconstitutional." *Id.*

The Supreme Court of Canada's *Hunt* opinion rebuts Defendants' argument that QBCRA-based orders are important judgments worth "respecting," for several reasons. First, it explains the improper purpose behind the QBCRA – a statute designed to frustrate crucial aspects of the discovery process and impede the substantive rights of litigants located outside of Quebec. Second, it exposes how Defendants – despite their frequent references to "comity" – are actually basing their motion on a blocking statute scheme that actually "runs counter to comity." *Id.* at 328. Third, it shows that Defendants are trying to get this court to enforce a statutory scheme that even Canadian courts have found fundamentally unfair and unconstitutional for inter-provincial purposes. In other words, the *Hunt* opinion not only rebuts Defendants' arguments, it reveals the problematic nature of their motion.

Finally, the *Hunt* court had the foresight to note that:

> [I]t may be that the only reason these blocking statutes have not caused more problems . . . is that most defendants assumed that they had no basis to claim that they barred the production of documents in situations like the present, and voluntarily produced the documents. But future defendants, once aware of this

17

> strategy for avoiding discovery, will only be too happy
> to avail themselves of the operation of the [QBCRA].

*Id.* at 329.[12]

A statute that has no application in inter-province litigation in Canada should not frustrate and hinder discovery in United States litigation. Allowing a blocking statute to preclude access to discoverable information runs counter to notions of fairness.  Given that the highest courts in Canada and the United States have rejected Defendants' argument that blocking statutes should trump a party's discovery obligations, the motion should be denied.

## II. Defendants' Proposal of Depositions and Third Party Subpoenas Is Not an Adequate Substitute for Document Discovery.

Apart from the Defendants' baseless position that the Quebec Order prohibits the discovery of certain technical information, the motion for a protective order improperly attempts to foreclose Skky's discovery of admittedly relevant information. Defendants' proposal, however, not a solution. Indeed, Defendants' proposal would not allow Skky to discover information relating to Defendants' infringement because Skky could not access the documents.  Moreover, the costs and time associated with taking depositions of every person who has personal knowledge of the relevant documents runs contrary to the "just, speedy, and inexpensive determination of every action" as proscribed by Federal Rule of Civil Procedure 1.

As an initial matter, Defendants do not contest that the categories of documents sought by Skky are discoverable. These include technical documents related to:

---

[12] *See also id.* at 330, calling this litigation tactic "bad practice."

- the creation of content made available on web sites/mobile applications operated by/for defendants
- the storage of content made available on web sites/mobile applications operated by/for defendants
- the accessibility of content by wireless devices on web sites/mobile applications operated by/for defendants
- the types of wireless devices that access the web sites/mobile applications operated by/for defendants
- the format of each file that is made available on the web sites/mobile applications operated by/for defendants

Dkt. No. 59 at 12–13.

These documents are important for Skky to assess damages and the scope of Defendant's infringement of the '875 patent. For example, the types of wireless devices are relevant to determining when the accused web sites and mobile applications are used in accordance with the claimed method in the '875 patent. Furthermore, the documents are needed to ascertain the importance of the claimed method to Defendants' businesses for damages, such as determining when and how often the web site content is transmitted to a wireless device. Defendants do not contest the importance of this information.

Defendants' attempts to dictate the form and manner of how this information is produced, without guarantees that the alternatives are adequate substitutes, are supported by neither the facts nor the law.

### A.   Defendants' Proposal of Fact Witnesses

The Federal Rules of Civil Procedure provide a number of different means for litigants to pursue discovery. "No one type of discovery is necessarily an adequate substitute for another." *In re Dana Corp.*, 574 F.3d 129, 150 (2d Cir. 2009). Depositions are not effective substitutes for documents. *Johnson v. United*

*States Bancorp*, NO. C11–02010 RAJ, 2012 U.S. Dist. LEXIS 182435, 13 (W.D. Wash. Dec. 26, 2012) ("The court is not persuaded that a deposition is an adequate substitute for the relevant phone records sought by Plaintiffs, nor that producing the phone records will be unduly burdensome on Defendants or on AT&T, the producing entity."). Likewise, documents are not necessarily a substitute for a deposition. *Brown v. Carr*, 236 F.R.D. 311, 313 (S.D. Tex. 2006) ("Indeed, one function of depositions is to ask questions about various documents and records.") Here, the types of technical documents sought are commonplace in patent litigation.[13] A deponent testifying from personal knowledge not only is an inadequate substitute for highly technical information, but a deposition without documents would impair Skky's discovery of the scope of Defendants' infringement of the '875 patent. Accordingly, depositions and documents are not interchangeable.

In addition, the Defendant's proposal would be unworkable for 30(b)(6) witnesses. Assuming all of the technical documentation that Skky seeks is in Quebec, Defendants have represented that 30(b)(6) witnesses on technical topics would be required to testify from personal knowledge only. Dkt. No. 59 at 4. In light of the unique role that a 30(b)(6) witness plays in binding a corporate litigant, the Defendants' proposal is unacceptable. *See In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 174 (D.D.C. 2003) (discussing importance of 30(b)(6) witnesses). Skky would likely require an ongoing series of additional depositions to fill the gaps in the 30(b)(6) deponent's knowledge on any particular topic. This

---

[13] If Defendants comply in full with their discovery obligations, Skky does not believe it will need source code. Nonetheless Skky reserves the right to seek such information which is again commonly exchanged in patent litigation.

would run counter to the requirement that the 30(b)(6) deponent be sufficiently educated on the topics and would impose unnecessary costs, expenses, and time. *E.g.*, *Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993) ("When a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent. If that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all."). Further, Skky would not have any guarantee that it obtained the corporate knowledge of Defendants on these critical areas.

**B.    Defendants' Proposal for Technical Agreements**

With respect to the third party technical agreements, it is unclear, as an initial matter, why these agreements would need to be sought by Skky by way of third party subpoenas.

Rule 34 of the Federal Rules of Civil Procedure requires litigants to produce all documents within their control. Control does not require that the party have legal ownership or actual physical possession of the documents at issue; "rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability, to obtain the documents from a non-party to the action." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D. Minn. 2000). Thus, Defendants are still required to produce the requested technical agreements governing storage, distribution, web design, or other services as requested by Skky by way of their relationships with the third parties.

Accordingly, Skky should not have to seek this information through third party subpoenas.

More to the point, there is no guarantee that the documents produced by way of the third parties would comprise all of the relevant information located in Quebec.[14] For instance, some of the third parties themselves could be located in Quebec. Another issue may be that the document retention policy of these alleged third parties is not the same as Defendants. As such, the third parties may no longer have documents that Defendants have in Quebec. Further, third parties likely never possessed all of Defendants' relevant technical documents. Defendants do not provide any solution for dealing documents located solely at Quebec, Inc. Without access to the technical documents maintained at Quebec, Inc, Skky will be unable to obtain relevant and responsive evidence. This is one reason courts have compelled discovery over QBCRA objections.

Defendants' proposal thus limits discovery Skky is entitled to and needlessly requires Skky to pursue third party discovery. Further, Defendants' motion for a protective order impermissibly limits Skky's ability to litigate its case. *See Richards v. Convergys Corp.*, No. 2:05–CV-00790–DAK, Consolidated with 2:05–CV-00812 DAK, 2006 U.S. Dist. LEXIS 63567, 2–3 (D. Utah Sept. 5, 2006) ("Convergys believes it can dictate the manner in which Plaintiff takes discovery and can defer disclosure of any substantial information until expensive depositions are convened, making them less effective by reason of Plaintiff's prior lack of access to information."). Thus, the Court should deny Defendants'

---

[14] The problem underscoring Defendants' entire proposal is that Skky and this Court simply do not know what documents Defendants are holding in Quebec.

motion for a protective order and find their proposal regarding deposition testimony entirely lacking.

## CONCLUSION

Defendants' motion for a protective order has no legal basis and is designed to further stall discovery in this case.  The QBCRA does not apply to this case.  Moreover, Defendants' proposals are wholly inadequate and would impermissibly prejudice Skky's ability to obtain the information it is entitled to under the Federal Rules of Civil Procedure.  For these reasons, and the reasons described in more detail above, the Court should deny Defendants' motion for a protective order so that discovery can proceed as scheduled.

Dated: <u>March 20, 2014</u>          **ROBINS, KAPLAN, MILLER & CIRESI, LLP**

By: <u>*s/Ryan Schultz*</u>
Ronald J. Schutz (0130849)
Becky R. Thorson (0254861)
Ryan Schultz (0392648)
Benjamen Linden (0393232)
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Phone: (612) 349–8500

**PARKER ROSEN, LLC**
Daniel N. Rosen (0250909)
888 Colwell Building, 123 Third Street North
Minneapolis, MN 55401

*Attorneys for Skky, Inc.*