# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Skky, Inc., | Civil No. 13-2072 (PJS/JJG) |
|     Plaintiff, | |
| v. | **O R D E R** |
| Thumbplay Ringtones, LLC, | |
|     Defendant. | |
| Skky, Inc., | Civil No. 13-2083 (PJS/JJG) |
|     Plaintiff, | |
| v. | |
| Dada Entertainment, Inc., | |
|     Defendant. | |
| Skky, Inc., | Civil No. 13-2086 (PJS/JJG) |
|     Plaintiff, | |
| v. | |
| Manwin USA, Inc., and Manwin Holding, s.ar.l, | |
|     Defendants. | |
| Skky, Inc., | Civil No. 13-2087 (PJS/JJG) |
|     Plaintiff, | |
| v. | |
| Vivid Entertainment, LLC, | |
|     Defendant. | |

| | |
|---|---|
| Skky, Inc., | Civil No. 13-2089 (PJS/JJG) |
| Plaintiff, | |
| v. | |
| Playboy Enterprises, Inc., | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

The present actions are before the undersigned on Plaintiff Skky Inc.'s Motions to Compel Production of Documents and Defendants Manwin USA, Inc., Manwin Holding, s.ar.l, and Playboy Enterprises Inc.'s Motions for Protective Order. The present litigation relates to United States Patent No. 7,548,875, which covers the transmission of content-rich media to mobile wireless devices.

## I.     Motions to Compel

Skky, Inc. ("Skky") brings motions to compel against Defendants Thumbplay Ringtones, LLC ("Thumbplay"), Dada Entertainment, Inc. ("Dada"), Manwin USA, Inc., and Manwin Holding, s.ar.l (collectively, "Manwin"), Vivid Entertainment, LLC ("Vivid"), and Playboy Enterprises, Inc. ("Playboy"). A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Id.* The standard is widely recognized as necessarily broad in scope so as to allow the parties essentially equal access to the operative facts. *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 589 (D. Minn. 1999).

Before discussing the particular requests, the Court finds it necessary to address the present motions' relation to the recent disqualification motions. Much has been made by Defendants of the then-pending disqualification motions and the need for Defendants to protect their confidentiality. By Order of March 28, 2014, the Court noted Defendants' confidentiality concerns and amended the protective order to protect Defendants' information as the litigation progresses. As a result, Defendants' arguments that confidentiality concerns are preventing their production were rendered moot and may no longer serve as reason to delay discovery. As for Skky's contentions that the litigation has been needlessly delayed by the disqualification motions, had Skky entered the straightforward stipulations proposed by Defendants, the delay would have been lessened or eliminated. The Court is confident that the parties will work more diligently on stipulating to future matters.

The relief Skky seeks through its present motions to compel varies by party. Regarding Manwin, Vivid, and Playboy, Skky seeks an order compelling a full response to Document Requests 1-28, Interrogatory Nos. 1, 3, 6, and 7, and Requests for Admission Nos. 1-4. Skky argues Manwin, Vivid, and Playboy would commit to providing responsive documents to only five of the twenty-eight document requests, have produced no responsive documents, avoided each of the requests for admission, and provided virtually no information in response to four of the seven interrogatories. Manwin, Vivid, and Playboy respond that the motion is premature and mere posturing, being filed less than 24 hours before the hearing on the disqualification motions.

With respect to Thumbplay and Dada, Skky seeks an order compelling a full response to Document Requests 1-28. Skky argues that Thumbplay and Dada indicated in their responses and in subsequent meet and confers that they would produce responsive documents for each

request, but have yet to produce any responsive documents. Thumbplay and Dada resist the motions.

### A. Interrogatories

The following interrogatories are at issue with regard to the responses of Manwin, Vivid, and Playboy:

- Interrogatory No. 1: Identify by name all Web Sites and mobile applications that you have developed, owned, operated, managed, or maintained, in whole or in part, since January 1, 2000[1] including those you no longer develop, own, operate, manage, or maintain.

- Interrogatory No. 3: Identify and describe your relationship with any third parties with which you have relationships or agreements—formal or informal—regarding the design, development, testing, deployment, maintenance, or management [of] any financial or technical aspect of the Services.

- Interrogatory No. 6: Identify the types of devices that are capable of receiving data over a cellular network that have accessed or viewed the Services since June 16, 2009.

- Interrogatory No. 7: For each of the Web Sites and mobile applications identified in response to Interrogatory 1, identify and describe the storage mediums on which any audio, visual, or graphical content is kept, including, without limitation, location and entity/entities that owns, manages, or controls the storage medium.

"Web Site" is defined as "any top level domain name" and "Services" is defined as

---

[1] Skky indicates that it has agreed to limit the interrogatories and document requests, for now, to the timeframe of June 16, 2009, to the present.

at least [websites specific to a particular Defendant], and any other Web Sites identified in Skky's infringement contentions or that are later identified by [the particular Defendant] as discovery continues, as well as any mobile applications identified in Skky's infringement contentions or that are later identified by [the particular Defendant] as discovery continues.

(*See, e.g.*, Pl.'s Interrogs., ECF No. 51-1 in Civ. No. 13-2086.)

Vivid recently supplemented its responses, and asserts that it provided all the information it has, but agrees to produce documents in response to certain interrogatories following the resolution of the disqualification motion. At the hearing, but not in its memorandum, Skky contended Vivid's responses inappropriately withheld information by directing Skky to WebQuest, Inc., a vendor of Vivid's. Skky pointed the Court to *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633 (D. Minn. 2000). Vivid argued in response that the Vivid/WebQuest, Inc. relationship is contractual only, and explained that whether Vivid has control over WebQuest, Inc. could be a contested issue in this litigation and an issue of liability. The Court has reviewed Vivid's responses and deems them sufficient at this time, with the exception of the confidential documents it agreed to produce in response to certain interrogatories. Concerning Playboy and Manwin, those parties agreed to supplement their responses following the resolution of the motion to disqualify. Because the motion to disqualify has been resolved, Vivid, Manwin, and Playboy are to continue with the production and supplementation, as they noted they would.

Although the parties are ordered to continue production, the Court finds the definitions of Services and Web Site warrant discussion, with both definitions creating problematic scope issues. Defendants are involved with numerous websites, and the definitions are needlessly complicated and intrusive for responding Defendants. As such, the Court orders the definitions of Web Site and Services be narrowed so that each is tied to the current patent infringement

contentions, rather than serving as a carte blanche inquiry into every aspect of Defendants' businesses.

### B. Requests for Admission

Again regarding Manwin, Vivid, and Playboy, the following requests for admission are at issue:

- Request for Admission No. 1: Admit that all image files available through your Services are compressed files (e.g., JPEG, GIF, or PNG).

- Request for Admission No. 2: Admit that all video files available through your Services are compressed files (e.g., MPEG, MOV, M4P, WMV).

- Request for Admission No. 3: Admit that all audio files available through your Services are compressed files (e.g., AAC, MP3, or WMA).

- Request for Admission No. 4: Admit that all audio, image, and video files available through your Services are stored in a computer or server memory.

(*See, e.g.*, Pl.'s Reqs. Admis., ECF No. 51-1 in Civ. No. 13-2086.)

In response to Skky's motion, Manwin, Vivid, and Playboy assert the requests for admission cannot be answered for three reasons: the requests seek information that has yet to be identified by asking about future infringement contentions; the requests are compound and ask about "all" of Defendants' respective websites and applications, which contain countless image, video, and audio files and significant involvement of third parties; and the requests rely on hypotheticals and use "e.g" to refer to file types.

At the hearing, the parties declined to address their arguments regarding the requests for admission. As with the interrogatories, once the definitions of Services and Web Site are

narrowed so as to tie the requests to the present infringement contentions, Manwin, Vivid, and Playboy are directed to respond to the requests in the manner required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 36(a)(4) (providing that a party responding to requests for admissions must admit, deny, respond with qualifications, or express its incapacity to respond).

 **C. Document Requests**

 Finally, Skky moves to compel all Defendants to produce documents responsive to all of Skky's document requests. Manwin and Playboy assert that information they disclose is not protected under the (previously non-amended) protective order due to confidentiality concerns and that the technical information sought by Skky violates an order issued by the Court of Québec. Vivid, Thumbplay, and Dada all agree to continue production, but not until safeguards are in place to protect their confidential information.

 The motions to disqualify were previously resolved and the motions seeking a protective order regarding the Québec court are resolved as of this Order. Accordingly, the document request aspect of the motions is denied as moot, although the parties are ordered to continue production. As to any arguments not dealing with the disqualification motion or the Québec order, the Court agrees that the motion is premature. Finally, the Court reminds the parties of their obligations when propounding requests. *See* Fed. R. Civ. P. 34(b) (stating requests shall be set forth with "reasonable particularity"); *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 514 (N.D. Iowa 2000) (describing the test for reasonable particularity as whether the request places the party upon reasonable notice of what is called for and what is not). Now that the various motions have been decided, the parties are to make all efforts to comply with discovery in order to advance the litigation.

## II.     Motion for Protective Order

In addition to Skky's motions, Manwin and Playboy move for a protective order based on a recent order issued by the Court of Québec pursuant to the Québec Business Concerns Records Act (QBCRA). In Skky's motions to compel, it noted Manwin and Playboy's QBCRA assertions as a reason proffered to avoid production, but stressed that Manwin and Playboy had not moved for a protective order limiting the availability of the Québec documents. Soon thereafter, Manwin and Playboy filed their motions.

For good cause shown, a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). As part of the order, the court may specify the terms of discovery, including the time and place. *Id.* 26(c)(1)(B). A court has "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Misc. Docket Matter #1 v. Misc. Docket Matter #2*, 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

The court order at issue came about through the efforts of Québec, Inc., a non-party corporate entity related to Manwin. Québec, Inc. is in possession of certain documents and information held in Québec that are responsive to some of Skky's discovery requests. In December 2013, Québec, Inc. moved the Court of Québec for an order limiting the production of documents pursuant to the QBCRA. The motion specifically discussed the present litigation and the production of documents related to Manwin and Playboy. The Court of Québec then issued a "judgment"[2] (the "Judgment") granting the motion and ordering that Québec, Inc. shall not

---

[2] The Court notes that, although the document is entitled "Judgment," it is more akin to what this Court considers an order.

remove, send, or cause to be sent outside of Québec several types of documents that relate to Québec, Inc. or any other business concern in Québec, regardless of whether the document is stored in physical or electric format.

Now Playboy and Manwin allege that, because Manwin operates numerous websites accused of infringement in the Manwin and Playboy actions, the Judgment is relevant to discovery in both actions.[3] They disclose that technical documents, third-party agreements, and source code are affected, and highlight that Skky did not appeal, seek revocation of, or otherwise challenge the Judgment.

The QBCRA is a "blocking statute"; that is, "a law passed by the foreign government imposing a penalty upon a national for complying with a foreign court's discovery request." *Lyons v. Bell Asbestos Mines, Ltd.*, 119 F.R.D. 384, 388 (D.S.C. 1988) (quotation omitted). The QBCRA is provincial, not Canadian federal law. On its face, the QBCRA provides

> [N]o person shall, pursuant to or under any requirement issued by any legislative, judicial or administrative authority outside Québec, remove or cause to be removed, or send or cause to be sent, from any place in Québec to a place outside Québec, any document[4] or résumé or digest of any document relating to any [business concern in Québec].

R.S.Q., c. 278, s. 1(b), 2.

A review of case law reveals that courts have not looked favorably on blocking statutes or the QBCRA. *See Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct.*, 482 U.S. 522, 544 n.29 (1987) (noting that foreign blocking statute barring disclosure of certain

---

[3] Manwin and Playboy concede that Playboy, a California corporation, is affected by the Judgment only in relation to the websites operated by Manwin. All materials in California are not implicated.

[4] The QBCRA defines "document" as "any account, balance sheet, statement of receipts and expenditure, profit and loss statement, statement of assets and liabilities, inventory, report and any other writing or material forming part of the records or archives of a business concern." R.S.Q., c. 278, s. 1.

information "do[es] not deprive an American court of the power to order a party subject to its jurisdiction to produce [the information]"); *Young Women's Christian Ass'n of Nat. Capital Area, Inc. v. Allstate Ins. Co. of Canada*, Civ. No. A.94-741, 1994 WL 661523, at *2 (D.D.C. Nov. 22, 1994) (commenting that the blocking statutes of Québec and Ontario are "not entitled to any deferential consideration under the comity principles of international law," because they are "local laws and not national laws"); *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 644-46 & n.24 (D.S.C. 1992) (ordering discovery despite certain defendants submitting orders from Canadian courts prohibiting the defendants from violating the QBCRA); *Lyons*, 119 F.R.D. at 387-89 (holding that defendants failed to make an adequate showing that the QBCRA was applicable to their discovery requests and that a federal court could issue such an order even if the QBCRA applied); *Am. Indus. Contracting, Inc. v. Johns-Manville Corp.*, 326 F. Supp. 879, 881 (W.D. Pa. 1971) (concluding the province of Québec is not a state within the meaning of the doctrines of international law and ordering defendants to answer interrogatories despite the QBCRA); *Buttitta v. Allied Signal, Inc.*, A-5263-07T1, 2010 WL 1427273, at *27 (N.J. Super. Ct. App. Div. Apr. 5, 2010) (upholding the order of discovery disclosure, over a defendant's QBCRA objections).

Notably, the Supreme Court of Canada held that the QBCRA was "constitutionally inapplicable to other [Canadian] provinces" because blocking discovery would effectively immunize businesses in Québec from producing discovery in other provinces. *See Hunt v. Lac d'Amiante du Québec Ltée*, 4 S.C.R. 289, 327, 329, 331 (1993) (explaining that the purpose of "blocking statutes is not to keep documents in the province, but rather to prevent compliance, and so the success of litigation outside the province that [the] province finds objectionable. . . . it certainly runs counter to comity").

10

Even so, in light of Playboy and Manwin's reliance on their Judgment and the QBCRA to resist production, the Court continues its analysis by turning to *Aerospatiale*, a United States Supreme Court case that examined France's blocking statute and concluded the Hague Convention did not deprive the district court of the jurisdiction to order a foreign national to produce evidence located within a foreign signatory nation. 482 U.S. at 539-40. *Aerospatiale* identified these factors as relevant to any comity analysis regarding foreign discovery:

> (1) The importance to the . . . litigation of the documents or other information requested;
> (2) the degree of specificity of the request;
> (3) whether the information originated in the United States;
> (4) the availability of alternative means of securing the information; and
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id.* at 544 n.28 (quotation omitted).

Regarding the first, second, and third factors, the documents described (technical documents, third-party agreements, and source code) are certainly important to patent litigation, and the requests have been made with at least enough specificity that Playboy and Manwin are able to claim that the QBCRA would be implicated by the documents' disclosure. It is unclear whether the information originated in the United States, though it is nearly certain that at least some documents as to Playboy, a California corporation, originated in the United States. These factors favor Skky's position.

Regarding alternative means of obtaining the information, Manwin and Playboy contend that the information sought is available through other forms of discovery, including depositions, but also assert that the depositions must be based on personal knowledge and the answers may not divulge the content of the Québec documents. A declaration offered in support of their

11

motion explains that a document's date, where it was drafted, its author, and the subject it concerns are all prohibited topics. When pressed by the Court regarding the inspection of the Québec documents, Playboy and Manwin responded that the Playboy documents held in Québec by Manwin could be inspected because they do not relate to a Québec business concern, but maintained that inspection of Manwin documents is not permitted. Playboy and Manwin also claim some of the subject documents are available through third parties located outside Québec, which raises questions as to how Playboy and Manwin can claim those documents are shielded by the QBCRA. This is especially so because the memorandum in support of this motion describes Québec, Inc. as being in "*sole possession* of certain documents and information residing in Québec that are subject to the Judgment and appear to be responsive to certain Skky discovery requests." (Mem. Supp. Protective Ord. 3, ECF No. 59 in Civ. No. 13-2089 (emphasis added).) Moreover, the fact documents may be available elsewhere does not absolve a party of its discovery obligations. The fourth factor favors Skky.

The final factor relates to how noncompliance or compliance would undermine the important interests of the United States or the foreign state. Here, Québec and Canada undoubtedly have important interests in ensuring compliance with their laws and court orders. Likewise, the United States has important interests in ensuring compliance with the Federal Rules of Civil Procedure and patent litigation involving a U.S. patent. This factor does not clearly tip in favor of either side. In sum, most factors favor denial of this motion.

In *Affordable Healthcare, LLC v. Protus IP Solutions, Inc.*, 4:08CV502 RWS, 2009 WL 975150 (E.D. Mo. Apr. 9, 2009), a case not cited by the parties, a federal court encountered a case with similarities to the present situation, but reached a different result. *Affordable* discussed a party's discovery obligations in light of two Canadian statutes, the Ontario Business Records

Protection Act[5] and the Canadian Personal Information Protection and Electronic Documents Act, which regulate the production of information and documents from companies located in Ontario. *Id.* at *1. The *Affordable* defendant, a Canadian corporation located in Ontario, moved for a protective order directing the plaintiffs to comply with the Canadian statutes in the discovery process. *Id.* The defendant requested the Court require the plaintiffs to apply for a letter of request from the Court and use the letter of request to make a motion to the Ontario Supreme Court of Justice requesting authorization for the production of documents. *Id.* at *2. The *Affordable* court identified the *Aerospatiale* factors and concluded the defendant's request would be minimally burdensome for the plaintiffs, particularly in light of the defendant's representation that leave to proceed with discovery was "likely to be freely granted." *Id.* at *2.

As discussed, the holdings of the majority of apposite cases differ from that of *Affordable*. A key difference is also that Manwin and Playboy offer no feasible discovery solution. They emphasize their efforts to work around the Judgment and comply with their discovery obligations, but their proposed solutions fall short. Moreover, a party may not persuasively argue that it is doing all it can to comply with a foreign order when an entity related to that party petitioned for the order, in an attempt to complicate discovery in the present litigation, and pursuant to a statute consistently disfavored by federal courts. In sum, although "keenly sensitive to the promotion of international comity," the Court cannot ignore the fact that parties properly within the jurisdiction of this Court, are "'subject to the same legal constraints, including the burdens associated with American judicial procedures, as their American

---

[5] The QBCRA was modeled after the Ontario Business Records Protection Act. *Hunt*, 4 S.C.R. at 304. The statutes are believed to have been enacted as a defense to the extraterritorial reach of United States antitrust legislation. *Id.*

competitors.'" *Minnesota Mining & Mfg. Co., Inc. v. Nippon Carbide Indus. Co., Inc.*, 171 F.R.D. 246, 249 (D. Minn. 1997) (quoting *Aerospatiale*, 482 U.S. at 540 n.25). The Court denies the motions for a protective order.[6]

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Skky, Inc.'s Motions to Compel Production of Documents (ECF No. 52 in Civ. No. 13-2072, ECF No. 54 in Civ. No. 13-2083, ECF No. 47 in Civ. No. 13-2086, ECF No. 45 in Civ. No. 13-2087, and ECF No. 47 in Civ. No. 13-2089) are **GRANTED IN PART**, **DENIED IN PART**, and **DENIED AS MOOT IN PART**, as set forth fully herein; and

2. Defendants Manwin USA, Inc., Manwin Holding, s.ar.l, and Playboy Enterprises, Inc.'s Motions for Protective Order (ECF No. 57 in Civ. No. 13-2086 and ECF No. 57 in Civ. No. 13-2089) are **DENIED**.

Dated: April 3, 2014

                                                 s/ *Jeanne J. Graham*
                                                 JEANNE J. GRAHAM
                                                 United States Magistrate Judge

---

[6] At the hearing, Manwin and Playboy provided the Court with a recently issued opinion they believed supported their motion, *Gilmore v. Palestinian Interim Self-Gov't Auth.*, Civ. No. 1-853 (GK), 2014 WL 1193728 (D.D.C. Mar. 24, 2014). The Court agrees with Skky that *Gilmore* involved a different foreign interest and fundamentally different facts.