**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Skky, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Manwin USA, Inc., and Manwin Holding, s.ar.l,<br><br>Defendants. | Case No.: 13-2086 (PJS/JJG) |
| Skky, Inc.,<br><br>Plaintiff,<br><br>vs.<br><br>Playboy Enterprises, Inc.,<br><br>Defendant. | Case No.: 13-2089 (PJS/JJG) |

**SKKY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO ENFORCE THIS COURT'S JULY 9TH, 2014 ORDER, REQUIRE PRODUCTION OF UNMODIFIED DOCUMENTS, AND AWARD SKKY COSTS AND FEES**

~~**FILED UNDER SEAL**~~

FILED REDACTED

~~HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY~~

# TABLE OF CONTENTS

I. Defendants Employed Delay Tactics to Avoid Producing Financial and Other Documents for Nearly Eight Months. ........ 2

II. This Court's July 9, 2014 Order Ordered Defendants to Produce Documents Responsive to Skky's Requests Numbered 10, 11, 12, 13, 19, 20, 21, and 22 by August 8, 2014. ........ 5

III. Defendants Violated This Court's July 9th Order by Failing to Produce Financial Information Called for by Skky's Requests. ........ 6

A. Defendants Decided to Not Produce Responsive Documents to Skky's Requests as Compelled by the Court. ........ 6

B. Defendants Have no Excuse for Failing to Produce Responsive Financial Documents. ........ 8

IV. Defendant Manwin Also Violated the Federal Rules by Improperly Modifying and Redacting the Four "Documents" It Did Produce ........ 11

V. The Court Should Award Skky Its Fees and Costs Associated with Having to Bring This Motion. ........ 13



~~HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY~~

# TABLE OF AUTHORITIES

**Cases**

*Bartholomew v. Avalon Capital Group, Inc.*,
278 F.R.D. 441 (D. Minn. 2011) ........ 12, 13
*Burris v. Versa Products, Inc.*,
Civ. No. 07-3938 (JRT/JJK), 2013 U.S. Dist. LEXIS 21851 (D. Minn. Feb. 19, 2013) ........ 12, 13
*Comiskey v. JFTJ Corp.*,
989 F.2d 1007 (8th Cir. 1993) ........ 14
*First Am. State Bank v. Continental Ins. Co.*,
897 F.2d 319 (8th Cir. 1990) ........ 14
*Hageman, et al. v. Accenture, LLP*,
Civil No. 10-1759 (RHK/TNL), 2011 U.S. Dist. LEXIS 61727 (D. Minn. June 7, 2011) ........ 13

**Rules**

Federal Rules of Civil Procedure 26(c)(2) ........ 5
Federal Rules of Civil Procedure 34 ........ 12, 13
Federal Rules of Civil Procedure 34(b)(2)(E)(i) ........ 12

## INTRODUCTION

On July 9, 2014, this Court denied the Motion for Protective Order filed by Playboy Enterprises, Inc. ("Playboy") and Manwin entities ("Manwin") (hereafter "Defendants") and ordered Defendants to produce their financial documents responsive to Skky, Inc.'s ("Skky") document requests numbered 10, 11, 12, 13, 19, 20, 21, and 22 by August 8, 2014. Defendants waited the full 30 days and then violated the Court's order by producing an inadequate handful of documents. Manwin produced only four document "excerpts," which it had also modified and redacted heavily. Playboy produced only three documents. Defendants' failure to provide full responses violates this Court's Order.

Skky requests that this Court take the following steps to remedy Defendants' non-compliance with the Court's July 9th Order: (1) command Defendants to immediately produce complete financial information sought by Skky's requests, (2) order Defendant Manwin to re-produce its four original documents (and all future documents) without redactions or modifications, and (3) award Skky the fees and costs it has incurred in having to bring this motion.

## BACKGROUND

### I. Defendants Employed Delay Tactics to Avoid Producing Financial and Other Documents for Nearly Eight Months.

Defendants' efforts to avoid producing their financial documents have persisted since December of 2013. Skky initiated lawsuits against Defendants in July of 2013, accusing their websites and mobile applications of infringing the asserted claims of the '875 Patent.[1] Skky then served written discovery requests on Defendants on October 31, 2013. These original requests sought technical, functional, and analytics-based information about the operation and performance of Defendants' websites. These requests also sought comprehensive financial information relating to the operation of Defendants' websites and mobile applications. The requests have thus been pending for almost a year.

By late December 2013, Defendants had not produced any responsive documents, including zero financial documents. Nevertheless, Defendants reassured Skky that discovery would proceed following a short break for the holidays. (Dkt. No. 51, Ex. 19).[2] The same day Defendants made that assurance,

---

[1] Skky is the holder of U.S. Patent No. 7,548,875 (the "'875 Patent"). Mr. Mikkelson and Dr. Friedson developed their invention in response to the need to deliver content rich media files to mobile devices. This work came to fruition around the years 2000 and 2001 – a time when the mobile internet was still rudimentary, and much of the available services in the United States and elsewhere remained text-based. They applied for and were awarded the '875 Patent, claiming a method of compressing, storing, and transmitting content rich media digital files to a wireless device means. The '875 Patent claims priority to June 2001.

[2] Unless otherwise indicated, references to ECF docket numbers are to documents filed in the matter of *Skky, Inc. v. Manwin USA, Inc., and Manwin Holding, s.ar.l.*, No. 13-cv-2086.

they petitioned the Court of Quebec for an order prohibiting the removal of any document from Quebec to the United States, including documents that were directly responsive to Skky's discovery requests. (Dkt. No. 34-1). In the weeks and months that followed, the parties conferred about Defendants' unwillingness to produce documents stored in Quebec. It became clear that Defendants were refusing to produce "technical" documents, *but not financial documents*, based on the Quebec order they had obtained.

By March 4, 2014, Skky had still not received any responsive documents, including financial documents, from Defendants. Accordingly, Skky filed a motion to compel and asked this Court to order Defendants to respond in full to each of Skky's document requests, including the requests for financial documents. (Dkt. No. 47; Dkt. No. 50).[3] Defendants then counter-moved for a protective order, asking the Court to exempt them from having to produce technical documents. (Dkt. No. 57). On April 3, 2014, the Court denied Defendants' motion. (Dkt. No. 73). With the protective order issue resolved, the Court also denied "the document request aspect" of Skky's motion to compel as "moot." (*Id.* at 7). Finally, the Court noted in its Order that by March 28, 2014, "Defendants' arguments that confidentiality concerns are preventing their production were rendered moot and may no longer serve as reason to delay discovery" and went on to order the parties to "continue production." (*Id.* at 3, 7).

[3] The parties continue to discuss Defendants' lack of complete responses to Skky's other discovery requests served on Defendants that are not discussed in this Motion. Skky hopes that the parties can resolve these discovery disputes without Court intervention. However, Skky may be forced to seek such relief if discovery responses are not produced.

Nonetheless, by June 2014, Defendants had still not produced a single financial document to Skky, even though at least eight of Skky's requests specifically asked for financial information. Skky requested another meet and confer, and on June 9th Defendants told Skky for the first time that they had decided not to produce financial documents responsive to Skky's document requests. (*See* Dkt. No. 100 at 2). Instead, Defendants decided to seek another protective order. (*See*, *id.*). On June 25, 2014, Defendants filed their second motion for a protective order, this time asking the court to excuse them from having to produce financial documents.

In claiming that they should not have to produce "the financial information sought by Skky," (Dkt. No. 92 at 5) Defendants specifically argued that they should not have to produce documents responsive to at least the following Skky requests:

> **Request No. 10:** Documents sufficient to show the amount of advertising revenue the Services generated, from January 1, 2000 to the present.
>
> **Request No. 11:** Documents sufficient to show the amount of advertising revenue the Services generated from use or access by a device that is capable of receiving data over a cellular network in the United States, from January 1, 2000 to present.
>
> **Request No. 12:** Documents sufficient to show the amount of subscription revenue the Services generated, from January 1, 2000 to the present.
>
> **Request No. 13:** Documents sufficient to show the amount of subscription revenue the Services generated from use or access by a device that is capable of receiving data over a cellular network in the United States, from January 1, 2000 to the present.

> **Request No. 19:** Documents sufficient to show (in U.S. dollars) revenue and profitability on a monthly, quarterly, and annual bases, including sales volume, gross sales and net sales, gross profit, incremental profit, operating profit, and net profit for the Services, from January 1, 2000 to the present.
>
> **Request No. 20:** Documents sufficient to show (in U.S. dollars) revenue and profitability on a monthly, quarterly, and annual basis, including sales volume, gross sales and net sales, gross profit, incremental profit, operating profit, and net profit for the use or access of the Services by a device that is capable of receiving data over a cellular network, from January 1, 2000 to the present.
>
> **Request No. 21:** Documents sufficient to show direct and indirect expenses associated with providing and maintaining the Services, from January 1, 2000 to the present.
>
> **Request No. 22:** Documents sufficient to show direct and indirect expenses associated with providing and maintaining the Services for use or access by a device that is capable of receiving data over a cellular network, from January 1, 2000 to the present.

(*Id.*).

Thus, Defendants put the question of whether they must produce documents responsive to at least Skky's requests numbered 10, 11, 12, 13, 19, 20, 21, and 22 squarely in front of the Court for resolution.

## II. This Court's July 9, 2014 Order Ordered Defendants to Produce Documents Responsive to Skky's Requests Numbered 10, 11, 12, 13, 19, 20, 21, and 22 by August 8, 2014.

In opposing Defendants' motion, Skky argued that the Court should not only deny Defendants' motion, but also that the Court should issue an order affirmatively commanding Defendants' to produce the financial information requested in each of the enumerated requests at issue. (Dkt. No. 100 at 13). Skky noted how Rule 26(c)(2) provides that "[i]f a motion for a protective order is

wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery." (*Id.*).

On July 9, 2014 – the day of the hearing – the Court issued a ruling from the bench, denying Defendants' motion and affirmatively ordering Defendants to produce documents responsive to the requests at issue. (Dkt. No. 102). The Court provided Defendants an additional 30 days – until August 8, 2014 – to complete their responsive production of financial documents.

But on August 8, 2014, Defendants produced only seven documents: four documents for Manwin and three for Playboy. Manwin's four documents were just four excerpts Manwin took from its combined or consolidated financial statements for the calendar years 2010, 2011, 2012, and 2013. (*See* Schultz Declaration ("Schultz Decl."), Exs. 1-4). The excerpts – being mere fragments of much larger documents – also contained additional redactions throughout. The excerpts reflected aggregated financial numbers as of December 31 of each year for Manwin's various operating "segments." Playboy's three documents were spreadsheets that similarly reflected aggregated figures for the calendar years 2009, 2010, and 2011. (*See* Schultz Decl., Exs. 5-7).

## ARGUMENT

### III. Defendants Violated This Court's July 9th Order by Failing to Produce Financial Information Called for by Skky's Requests.

#### A. Defendants Decided to Not Produce Responsive Documents to Skky's Requests as Compelled by the Court.

On August 8, 2014, Defendants' violated the Court's July 9th Order. Specifically, the handful of documents Defendants produced to Skky failed to

provide Skky with most of the substantive information Skky sought through its requests, and do not represent all responsive documents to the eight requests. Defendants' production is deficient in at least five ways.

First, Defendants failed to provide Skky with documents showing financial information for the years it has requested. Originally, each of Skky's eight requests seeks financial information for the period running from January 1, 2000 to the present. (*See* Skky Request Nos. 10, 11, 12, 13, 19, 20, 21, 22, *supra*). Counsel for Skky agreed to limit the responsive date range to 2009 to the present. Yet, neither Manwin's nor Playboy's documents cover even that date range. Manwin has inexplicably failed to produce documents for 2009 or 2014. Playboy has likewise failed to produce documents showing the same information for 2012, 2013, or 2014.

Second, Defendants failed to produce documents showing the amount of advertising or subscription revenue for Defendants' websites for the relevant time period. (*See* Skky Request Nos. 10, 11, 12, 13).[4] Third, Defendants failed to provide Skky with documents showing the monthly or quarterly revenue, profit, and sales numbers generated specifically by the accused websites. (*See* Skky Request Nos. 19, 20). Fourth, Defendants failed to produce documents showing the amount of revenue they have generated through mobile access to their websites. (*See* Skky Request Nos. 11, 13, and 20).[5] Fifth, Defendants failed to

---

[4] Skky's requests reference Defendants' "Services." Recall that Skky has defined "Services" to mean at least Defendants' web sites identified in Skky's infringement contentions.

[5] Manwin's documents contain no information about the amount of revenue (advertising, subscription, or other) Defendants have generated through mobile access to their Services. (Request Nos. 11, 13, 20). Playboy's documents contain

produce documents showing the expenses associated with their mobile services. (*See* Skky Request No. 22).

In addition to their failure to produce responsive documents to the requests, Defendants' decided to produce only a small fraction of the responsive, relevant financial information, despite this Court's order requiring production. Manwin's four documents and Playboy's three documents fail to show Skky the revenues and expenses that each of Defendants' infringing websites have incurred over the relevant time period. Defendants' deliberate decision to continue withholding highly relevant, responsive financial documents constitutes non-compliance with the Court's July 9th Order.

**B. Defendants Have no Excuse for Failing to Produce Responsive Financial Documents.**

After receiving and reviewing the seven documents Defendants' collectively produced, Skky promptly notified Defendants that their respective productions violated the Court's July 9th Order, for the reasons explained above, and requested a meet and confer. (*See* Schultz Decl., Ex. 8). During the parties' conference call on August 15, 2014, counsel for Defendants maintained that Playboy and Manwin would not be agreeing to produce additional financial documents in response to Skky's aforementioned requests. Defendants provided no explanation as to how productions of four and three documents respectively could possibly constitute comprehensive responses to Skky's eight requests. Moreover, Defendants maintained a number of confounding excuses for why

---

one generic "mobile" line which may not relate to all mobile sites and, at the very least, does not reflect mobile financials for the Services, as Skky has requested.

their productions had so many glaring holes.

For example, when asked why Manwin had not produced any financial data from the year 2014, counsel for Manwin stated that it did not possess any 2014 documents that had been audited. (Schultz Decl. ¶ 4). Skky's counsel pointed out that its requests were never limited to those documents, and that the notion that Manwin had not been tracking its revenues, profits, expenses, and sales, in detail, throughout 2014 was implausible. (*Id.*). Counsel for Manwin did not deny that Manwin possessed such information, but nevertheless did not affirmatively agree to produce it. (*Id.*).

When asked why they had failed to produce any information showing financial metrics by month or quarter, counsel for Defendants suggested that *neither* Manwin *nor* Playboy possessed *any* documents containing that information. (*Id.* ¶ 5). This suggestion is implausible on its face. Both Manwin and Playboy are highly sophisticated companies that [REDACTED]

When asked why they had not provided any financial metrics for the specific websites Skky has identified in its infringement contentions, counsel for Defendants again suggested that neither Manwin nor Playboy possessed that data. (Schultz Decl., ¶ 6). They also suggested they had no documents showing revenues associated with mobile-devices accessing their sites. (*Id.* ¶ 7). This position is also implausible, given that both companies are sophisticated distributors of online content (much of which they have optimized for capturing the mobile market) and that many of their website revenues are subscription-

based.



Because Skky has accused specific websites owned by Defendants of patent infringement, Defendants' website-specific financial records are relevant to these cases. The notion that neither Playboy nor Manwin possesses even one single record showing any website-specific revenue confounds logic.

In sum, Defendants have decided to not produce significant amounts of responsive financial information, despite possessing it. The three and four

documents they have respectively produced to not respond fully to *any* of Skky's eight document requests. This constitutes non-compliance with the Court's July 9th Order.[6]

## IV. Defendant Manwin Also Violated the Federal Rules by Improperly Modifying and Redacting the Four "Documents" It Did Produce.

The four documents produced by defendant Manwin also suffer from two additional flaws.

First, each "document" is actually an incomplete series of excerpts from a much larger document. [redacted]

The Federal Rules of Civil Procedure do not allow parties to create their

---

[6] If Defendants maintain that additional responsive documents do not exist, Skky respectfully requests the Court allow Skky to conduct a deposition to ascertain whether such responsive documents exists of each defendant that does not count against the 40 hours permitted under the Amended Pretrial Scheduling Order.

own documents by pulling, merging, and then producing non-sequential pages from larger complete documents. Instead, Rule 34 mandates that "[a] party must produce documents as they are kept in the usual course of business . . . ." Fed. R. Civ. P. 34(b)(2)(E)(i). Courts in this district have further explained that "*Fed. R. Civ. P. 34* concerns the discovery of "documents"; it does not concern the discovery of individual pictures, graphics, paragraphs, sentences, or words within those documents. Thus, courts view "documents" as relevant or irrelevant; . . . if one part of a document is relevant then the entire document is relevant for the purposes of *Fed. R. Civ. P. 34.*" *Bartholomew v. Avalon Capital Group, Inc.*, 278 F.R.D. 441, 451-52 (D. Minn. 2011).

Manwin's decision to create its own, smaller documents in response to the Court's July 9th Order violates Rule 34. Manwin's "Combined Financial Statements" are kept in the ordinary course of business as larger sequentially paginated documents. Manwin should be ordered to immediately produce its "Combined Financial Statements" in their entirety, as they are kept.

Manwin's four "documents" also suffer from an additional flaw – they have been improperly redacted. Indeed, each of Manwin's four documents contains several redactions throughout. Based on the nature of the documents and the surrounding text, these redactions do not appear to be based on attorney-client privilege or work product. In fact, at the aforementioned meet and confer, counsel for Skky confirmed with counsel for Manwin that the content had been redacted for "irrelevance" reasons. (Schultz Decl., ¶ 8).

Courts in the District of Minnesota have consistently rejected this practice. For example, in *Burris v. Versa Products, Inc.*, Civ. No. 07-3938 (JRT/JJK), 2013

U.S. Dist. LEXIS 21851 at *9 (D. Minn. Feb. 19, 2013), the court stated, "The practice of redacting for nonresponsiveness or irrelevance finds no explicit support in the Federal Rules of Civil Procedure, and the only bases for prohibiting a party from seeing a portion of a document in the Rules are claims of privilege or work-product protection." The court in *Burris* went on to order Defendants to remove their improper redactions. *Id.* at *11. In *Hageman, et al. v. Accenture, LLP,* the court similarly stated, "*Rule 34* does not permit the redaction of irrelevant portions of . . . 'documents,'" and ordered the Defendant to produce clean versions of documents it had previously redacted on the basis of irrelevance. Civil No. 10-1759 (RHK/TNL), 2011 U.S. Dist. LEXIS 61727 at *11-13 (D. Minn. June 7, 2011). And in *Bartholomew v. Avalon Capital Group, Inc.*, the court again ordered a defendant who had "unilaterally redacted documents on the basis that the redacted information was irrelevant" to produce unredacted versions of the documents. 278 F.R.D. at 451-52. Much like the opinion in *Hageman*, supra, the court supported its decision with a thoughtful and helpful discussion of how document production pursuant to the Federal Rules is supposed to work. *Id.*

In light of this authority, Manwin's redactions are improper. In addition to ordering Manwin to produce the complete versions of its document fragments, this Court should order Manwin to produce those documents (and any future documents) without unauthorized redactions.

## V. The Court Should Award Skky Its Fees and Costs Associated with Having to Bring This Motion.

For the past eight months, Defendants have consistently employed a

variety of delay tactics to avoid having to produce responsive documents in discovery, including financial documents, records, and information. Now, with no more protective order motions to file, Defendants have resorted to disobeying an order from this Court. Defendants' actions have forced Skky and its counsel to spend time and resources dealing with Defendants' non-compliance and bringing this motion. Defendants' conduct is also precisely the type that Rule 37(b) was designed to combat. Accordingly, Skky requests an award of its costs and fees associated with having to bring this motion.

The Eighth Circuit has affirmed the ability of district courts to impose monetary sanctions to combat, deter, and remedy unjustified non-compliance with discovery orders. *See, e.g., Comiskey v. JFTJ Corp.,* 989 F.2d 1007, 1011-12 (8th Cir. 1993) (upholding magistrate judge's orders awarding $5,407.50 in attorney's fees as a Rule 37 sanction); *see also First Am. State Bank v. Continental Ins. Co.,* 897 F.2d 319, 331 (8th Cir. 1990) ("[Rule 37] Sanctions are an invaluable penalty and deterrent to be employed by district courts to thwart discovery abuse.").

Here, Defendants Manwin and Playboy cannot show that their non-compliance with this Court's July 9th Order was justified. Defendants specifically used their motion for protective order to put Skky request numbers 10, 11, 12, 13, 19, 20, 21, and 22 (and the categories of documents implicated therein) in front of the Court for resolution, *and their motion was denied.* At that point, any excuse for not producing all responsive financial information was eliminated. And yet, when the time came to make their financial productions, Defendants collectively served on Skky a total of seven "documents" that failed to provide the vast majority of information clearly sought by Skky's requests. There is no

justification for Defendants' continued failure to do as this Court ordered on July 9th. Skky and its counsel have incurred significant costs in bringing this motion and policing Defendants' non-compliance. Under the circumstances, it would be unjust if Defendants did not have to bear that cost.

## CONCLUSION

Defendants' eight months of delay tactics regarding their financial information have now risen to the level of non-compliance with a court order and other fundamental Federal Rules of Civil Procedure. Skky respectfully asks this Court to take the following actions:

(1) Ordering Defendants to immediately produce complete financial information sought by Skky's requests numbered 10, 11, 12, 13, 19, 20, 21, and 22;

(2) Ordering Defendant Manwin to re-produce its original four documents (and any future documents) in their entire unmodified form and without redactions; and

(3) Awarding Skky the fees and costs it has incurred in having to bring this motion.

Dated: August 26, 2014

ROBINS, KAPLAN, MILLER & CIRESI, LLP

By: *s/Ryan M. Schultz*

Ronald J. Schutz (0130849)
Becky R. Thorson (0254861)
Ryan M. Schultz (0392648)
William Bornstein (0392098)
Benjamen C. Linden (0393232)
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Phone: (612) 349–8500

PARKER ROSEN, LLC
Daniel N. Rosen (0250909)
888 Colwell Building, 123 Third Street North
Minneapolis, MN 55401

*Counsel for Skky, Inc.*

85031592.2