**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Skky, Inc., | Civil No. 13-2086 (PJS/JJG) |
| Plaintiff, | |
| vs. | **ORDER** |
| Manwin USA, Inc., and Manwin Holding, s.ar.l., | |
| Defendants. | |
| Skky, Inc., | Civil No. 13-2089 (PJS/JJG) |
| Plaintiff, | |
| vs. | |
| Playboy Enterprises, Inc., | |
| Defendant. | |
| Skky, Inc., | Civil No. 13-2087 (PJS/JJG) |
| Plaintiff, | |
| vs. | |
| Vivid Entertainment, Inc. | |
| Defendant. | |
| Skky, Inc., | Civil No. 13-2085 (PJS/JJG) |
| Plaintiff, | |
| vs. | |
| General Media Communications, Inc., | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

1

This matter came before the Court on September 25, 2014, for a hearing on Defendants Manwin USA, Inc., and Manwin Holdings, s.ar.l. (collectively "Manwin"); Playboy Enterprises, Inc. ("Playboy"); General Media Communications, Inc.; and Vivid Entertainment, LLC's ("Vivid") Motion to Stay Pending *Inter Partes* Review of the Patent-In-Suit Motion (ECF No. 112 in Civ. No. 13-2086, ECF No. 104 in Civ. No. 13-2089, ECF No. 76 in Civ. No. 13-2087, and ECF No. 46 in Civ. No. 13-2085), and Plaintiff Skky, Inc.'s Motion to Enforce This Court's July 9th, 2014 Order, Require Production of Unmodified Documents, and Award Skky Costs and Fees against Manwin and Playboy (ECF No. 122 in Civ. No. 13-2086 and ECF No. 114 in Civ. No. 13-2089).

For the reasons stated on the record, the Court granted in part Plaintiff's Motion (ECF No. 122 in Civ. No. 13-2086 and ECF No. 114 in Civ. No. 13-2089). Defendant Manwin was ordered to re-produce its original four documents and its financial information for 2009 in their entire unmodified form on or before October 3, 2014. The Court took Defendants' Motion (ECF No. 112 in Civ. No. 13-2086, ECF No. 104 in Civ. No. 13-2089, ECF No. 76 in Civ. No. 13-2087, and ECF No. 46 in Civ. No. 13-2085) and the remainder of Plaintiff's Motion (ECF No. 122 in Civ. No. 13-2086 and ECF No. 114 in Civ. No. 13-2089) under advisement.

ECF No. 46 in Civ. No. 13-2085 is now moot because *Skky, Inc. v. General Media Communications Inc.* settled (Min. Entry, Oct. 6, 2014, ECF No. 65 in Civ. No. 13-2085).

For the reasons set forth below, the Court denies Defendants' Motion (ECF No. 112 in Civ. No. 13-2086, ECF No. 104 in Civ. No. 13-2089, and ECF No. 76 in Civ. No. 13-2087) without prejudice and grants in part Plaintiff's Motion (ECF No. 122 in Civ. No. 13-2086 and ECF No. 114 in Civ. No. 13-2089).

2

## I.      Motion to Stay

### A.  Background

The present patent-infringement cases were filed by Plaintiff Skky, Inc. on July 31, 2013.[1] (Compl., ECF No. 1.)[2] On August 1, 2014, Defendants Manwin, Playboy, and General Media Communications (collectively "Defendants") filed a petition for *Inter Partes* Review ("IPR") with the United States Patent and Trademark Office ("PTO"), challenging the validity of all asserted claims of the U.S. Patent No. 7,548,875 ("the '875 patent" or "patent-in-suit") (the "Petition"), the sole patent asserted by Plaintiff in the above-captioned actions.[3] On August 6, 2014, Defendants moved for an order staying this case pending IPR of the patent-in-suit. (ECF No. 112.)  Defendant Vivid joined their motion. *Skky, Inc. v. Vivid Entm't, LLC*, Civ. No. 13-2087 (D. Minn. Aug. 7, 2014), ECF No. 76.

### B.  Discussion

A motion to stay the proceedings is not found in the Federal Rules of Civil Procedure. However, "[a]s a Federal District Court, we have the inherent power to stay the proceedings of an action, so as to control our docket, to conserve judicial resources, and to provide for the just determination of cases which pend before us." *Kemp v. Tyson Seafood Grp., Inc.,* 19 F. Supp. 2d

---

[1] In addition to the above captioned cases, Plaintiff has filed five other cases in this district within the last year, including *Skky, Inc. v. Myxer, Inc.*, Civ. No. 13-2070; *Skky, Inc. v. Thumbplay Ringtones, LLC*, Civ. No. 13-2072; *Skky, Inc. v. Click Sales, Inc.*, Civ. No. 13-2081; *Skky, Inc. v. Reflected Networks, Inc.*, Civ. No. 13-2088; and *Skky, Inc. v. Dada Entm't Inc.*, Civ. No. 13-2083.

[2] All references to docket entries herein refer to Civil Action No. 13-2086, *Skky Inc. v Manwin USA, Inc. and Manwin Holding, s.ar.l.*, unless otherwise specified. The documents referenced herein are also filed in the other above-captioned matters; however, the docket numbers differ.

[3] According to Plaintiff's infringement contentions dated February 24, 2014, Plaintiff alleges that Defendants have variously infringed Claims 1, 2, 5, 15, 17, 19, 21, 22, and 23 of the '875 patent. All of these asserted claims are subject to Defendants' IPR Petition. (*See* Defs.' Mem. 1 n.1, Aug. 6, 2014, ECF No. 114.)

961, 964 (D. Minn. 1998) (string citation omitted); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort . . . ."); *Schwendimann v. Arkwright Advanced Coating, Inc.*, Civ. No. 11-820, 2012 WL 5389674, at *5 (D. Minn. Nov. 2, 2012). This inherent power includes "the authority to order a stay of litigation pending the reexamination of a patent by the PTO." *Polaris Indus., Inc. v. BRP US Inc.*, Civ. No. 12-01405, 2012 WL 5331227, at *1 (D. Minn. Oct. 29, 2012) (citing *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted)).

When evaluating a request to stay litigation pending a patent reexamination, district courts generally consider three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues; and (3) whether discovery is complete and a trial date is set." *TimeBase Pty Ltd. v. The Thomson Corp.*, Civ. No. 07-1687, 2008 WL 1959061, at *1 (D. Minn. May 06, 2008); *3M Innovative Properties Co. v. Dupont Dow Elastomers LLC*, Civ. No. 03-3364, 2005 WL 2216317, at *1 (D. Minn. Sept. 8, 2005).[4]

## 1.  Undue Prejudice or Clear Tactical Disadvantage

In evaluating whether a plaintiff will be unduly prejudiced, a court may deny a request for a stay where the movant inexplicably or unjustifiably delayed seeking reexamination, or

---

[4] The America Invents Act ("AIA") amended the *inter partes* reexamination process, renaming it "*inter partes* review" and updating its procedures in an effort to make the PTO more effective and efficient at hearing patent challenges. *Dane Techs., Inc. v. Gatekeeper Sys*., *Inc.*, Civ. No. 12-2730, 2013 WL 4483355, at *1 n.2 (D. Minn. Aug. 20, 2013) (citing 35 U.S.C. §§ 311–319, Pub. L. No. 112–29, § 6(c), 125 Stat. 304–05 (Sept. 16, 2011)). Notwithstanding the change from reexamination to IPR, courts continue to analyze the same three factors in determining whether to grant a stay. *See, e.g., id.*, at *1-3.

where the stay will merely delay the proceedings. *Ecolab, Inc. v. FMC Corp.,* Civ. No. 05-831, 2007 WL 1582677, at *1 (D. Minn. May 30, 2007).

Defendants ask this Court to stay this litigation based soley upon their decision to petition the PTO to initiate an IPR. Defendants argue that the PTO has granted IPR petitions in approximately 85% of cases (Defs.' Mem. at 6 (citing Nosher Aff. Ex. 1, Aug. 6, 2014, ECF No. 115)), and they tout the "strength of the invalidating art raised in Defendants' [P]etition" (*id*. 6.). Plaintiff retorts that statistics are irrelevant, particularly because Defendants' Petition is based primarily on prior art that was "fully vetted" by the PTO. (Pl.'s Opp. Mem. 14, 16-17, Aug. 13, 2014, ECF No. 120.) Although the Court acknowledges that statistics suggest PTO review may be more likely than not, it refrains from speculating in this case. *Dane Techs., Inc.*, 2013 WL 4483355, at *2 ("Waiting for the PTO to make its initial decision is a delay, the benefit of which is uncertain.").

Plaintiff, on the other hand, argues that if a stay were granted, it would be prejudiced because of the delay. The PTO may not make its decision to accept or deny Defendants' Petition until February 2015. *See* 35 U.S.C. § 314(b). If the PTO does institute an IPR, a final decision may not occur until February 2016 and could be determined as late as August 2016. *See* 35 U.S.C. § 316(a)(11). Additionally, the losing party to the IPR would have the ability to appeal the final decision to Federal Circuit. *See* 35 U.S.C. § 319. In contrast, the Scheduling Order sets these cases for trial in November 2015. Accordingly, Plaintiff asserts that a stay would deprive it of "the benefit promised by the Federal Rules of Civil Procedure – a just, speedy and inexpensive determination of every action and proceeding." (Pl.'s Opp. Mem. at 7 (quoting *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, Civ. No. 1:13-3777 (S.D.N.Y. Aug. 11, 2014), ECF No. 154, at 6.)

"The mere potential for delay, however, is insufficient to establish *undue* prejudice." *Neste Oil OYJ*, Civ. No. 12-1744, 2013 WL 3353984, at *2 (D. Del. July 2, 2013); *see Card Tech. Corp. v. DataCard Corp.*, Civ. No. 05- 2546, 2007 WL 2156320, at *6 (D. Minn. July 23, 2007) ("Although a stay by definition involves delay, not all delay is necessarily unduly prejudicial . . . ."). Because Plaintiff is an admitted non-practicing entity and does not compete with any of the Defendants, it would not be unduly prejudiced if a stay were granted. Moreover, even if Plaintiff could demonstrate prejudice, it could be compensated monetarily for any damages resulting from the stay. *See Walker Digital, LLC v. Google, Inc*., Civ. No. 11-309, 2013 WL 1489003, at *2 (D. Del. Apr. 11, 2013) ("[B]ecause [plaintiff] is a non-practicing entity, any prejudice that may result from a stay can be remedied by monetary damages."); *see also Vdata, LLC v. Aetna, Inc.*, Civ. No. 06-1701, 2006 WL 3392889, at *5 (D. Minn. Nov. 21, 2006) (noting that availability of monetary damages can ameliorate potential undue prejudice, especially where the non-moving party has not explained why money damages are not an adequate remedy). Plaintiff's failure to seek a preliminary injunction also belies its claim that it would be unduly prejudiced by a stay.

Plaintiff further argues that as time passes, there is a greater chance that evidence, particularly third-party evidence, will be lost. This argument is speculative and unpersuasive. *See Internet Patents Corp. v. eBags, Inc.*, Civ. No. 12-03385, 2013 WL 4609533, at *4 (N.D. Cal. Aug. 28, 2013) (noting that the potential for loss of evidence, such as witness memory, applies to any case where IPR is sought and alone does not demonstrate undue prejudice).

Additionally, Plaintiff emphasizes that Defendants waited until the very last day possible to file their IPR petition,[5] without warning Plaintiff, which Plaintiff maintains weighs against granting a stay.[6] *See Freeny v. Apple Inc.*, 2014 WL 3611948, at *2 (denying a motion to stay partially because the defendant "waited for a year after the complaint was filed before filing its petition for *inter partes* review."); *see also Dane Techs., Inc.*, 2013 WL 4483355, at *2 (noting that defendant waited until approximately seven months into the litigation before seeking IPR and finding first factor weighed in favor of plaintiff). Defendants respond that using the time-period permitted by the AIA to file an IPR petition does not demonstrate a dilatory motive. *See Evolutionary Intelligence, LLC v. Twitter, Inc.*, Civ. No. 13-04207, 2014 U.S. Dist. LEXIS 28726, at *7 (N.D. Cal. Feb. 25, 2014). Defendants explain the reason for their delay as follows: ". . . [Plaintiff] did not disclose the asserted claims of the '875 patent until February 24, 2014 (by way of infringement contentions . . .). And although Defendants served their Prior Art Statement approximately three months ago, Defendants' Petition included newly found prior art not listed in that Statement." (Defs.' Mem. at 10.)

Upon weighing these contrary positions, this Court concludes that the first factor is neutral. On the one hand, the PTO's review of the Petition is, at this point, speculative. On the other hand, because Plaintiff does not compete with Defendants, it can be compensated monetarily, even if it were to be prejudiced by the delay.

---

[5] A petition for IPR cannot be filed more than one year after a party has been served with a complaint alleging infringement of the patent at issue.  35 U.S.C. § 315(b).

[6] Defendants argue that Plaintiff's delay in filing this lawsuit contradicts Plaintiff's claims that it would be unduly prejudiced by a stay. However, it is irrelevant when Plaintiff chose to file its Complaints. *See Dane Techs., Inc.*, 2013 WL 4483355, at *7 n.5 (rejecting the argument that a patent holder cannot claim prejudice because it delayed bringing its lawsuit for many years, and reasoning that a patent holder's "alleged delay is not relevant to [defendant]'s delay in seeking *inter partes* review").

## 2.   Simplification of the Issues in This Litigation

Courts have noted numerous benefits to staying patent litigation during reexamination,

including:

(1) All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

(2) Many discovery problems relating to the prior art can be alleviated by the PTO examination.

(3) In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

(4) The outcome of the re-examination may encourage a settlement without the further use of the Court.

(5) The record of re-examination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

(6) Issues, defenses and evidence will be more easily limited in pre-trial conferences after a re-examination.

(7) The cost will likely be reduced both for the parties and the Court.

*Card Tech. Corp,* 2007 WL 551615, at *3 (citations omitted); *see also 3M Innovative Props.*

*Co.*, 2005 WL 2216317, at *2 ("Granting a stay will promote judicial economy by 'maximiz[ing]

the likelihood that neither the Court nor the parties expend their assets addressing invalid

claims.'") (quoting *Softview Computer Prods. Corp. v. Haworth, Inc.*, 56 U.S.P.Q.2d 1633, 1636

(S.D.N.Y. 2000)).

Defendants emphasized that because they "have petitioned for *all asserted claims* of the

lone patent-in-suit, there is a 100% overlap between the claims that will be reviewed by both the

PTO and this Court" (Defs.' Mem. at 12.) Accordingly, they argue that there are a number of

ways that the IPR will simplify the underlying patent infringement actions. Courts do recognize

the importance of such overlapping review. *See Polaris Indus., Inc.*, 2012 WL 5331227, at *3

8

(concluding that simplification of issues factor favored defendants where they had petitioned for reexamination of all asserted patents); *Dane Techs., Inc.*, 2013 WL 4483355, at *2 (determining second factor favored plaintiff where defendant only petitioned for review of two of the three patents in that case).

Defendants' simplification arguments, however, hinge on whether the PTO actually decides to grant the Petition. *See Dane Techs., Inc.*, 2013 WL 4483355, at *2 (rejecting the argument that a PTO decision could have preclusive effects and thereby simplify the issues, this Court reasoned, "whether the PTO will initiate *inter partes* review is speculative"); *Freeny*, 2014 WL 3611948, at *2 (noting the "simplification" issue does not cut in favor of granting a stay prior to the time the PTAB decides whether to grant the petition for IPR); *cf. Polaris Indus., Inc.*, 2012 WL 5331227, at *4 (granting stay pending *post-grant* reexamination).

Plaintiff asserted that even if the IPR is granted, the PTO could not resolve the issue of invalidity under Section 112;[7] Defendants' affirmative defenses of laches, estoppel, and unclean hands; or issues of infringement and damages. "The relevant inquiry here, however, is not whether the IPR would completely resolve this case, but rather whether it could make this litigation simpler and more efficient." *Intellectual Ventures II LLC v. US Bancorp*, Civ. No. 13-2071 (D. Minn. Aug. 7, 2014), ECF No. 77 at 16 (quoting *Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*, Civ. No. 2:13-04160, 2014 WL 2511308, at *2 (W.D. Mo. June 4, 2014)).

Plaintiff further expresses concern that, because Defendant Vivid is not one of the petitioners on the IPR, it could argue that it is not bound by the determination of the PTO and

---

[7] IPR is limited to addressing invalidity for anticipation or obviousness on the basis of printed publications and patents. *See* 35 U.S.C. § 311.

that the estoppel provision in IPRs, 35 U.S.C. § 315(e), is inapplicable to it. (Pl.'s Opp. Mem. at 15.) At the hearing, Vivid's counsel responded that, although at this time it was not waiving its right to bring additional arguments, it would be interested in allowing estoppel to occur if that were the only way for Defendants to obtain the stay from this Court.[8]

Because of the uncertainty about whether IPR will be granted, the second factor weighs against granting a stay at this time.

### 3.  Status of the Case

"[C]ourts which have denied stays pending reexamination proceedings have generally done so where the request for reexamination came late in the litigation, after extensive discovery or trial preparation." *Vdata, LLC.*, 2006 WL 3392889, at *8; *see also Dane Techs., Inc.*, 2013 WL 4483355, at *3 (concluding that the final factor was neutral where discovery had begun, but was not far advanced, and denying stay). On the other hand, courts have found a stay to be appropriate where discovery is not complete and the scheduled trial date is not impending. *See Card Tech. Corp*, 2007 WL 551615, at *1, 7 (granting stay based in part because the parties were "still in the early stage of pre-trial proceedings"). Some courts also look to whether claim construction briefing has commenced. *See, e.g., Brixham Solutions Ltd. v. Juniper Networks, Inc.*, Civ. No. 13-00616, 2014 WL 1677991, at *2 (N.D. Cal. Apr. 28, 2014) ("Nor has claim

---

[8] Some courts have conditioned the granting a motion to stay on the assumption of IPR estoppel to the party who was not a petitioner on the IPR request. *See, e.g., Evolutionary Intelligence, LLC v. Millenial Media, Inc*., Civ. No. 5:13-04206, 2014 WL 2738501, at *4 (N.D. Cal. June 11, 2014). The Court need not resolve this issue at this time, given that it recommends denying the stay without prejudice.

construction yet occurred, although the parties have submitted their claim construction briefs. Therefore, this factor also favors entry of a stay.").[9]

Here, the case was first filed on July 31, 2013. (Compl., ECF No. 1.) The fact discovery deadline is February 27, 2015, and trial is set for November 23, 2015. (Am. Pret. Sched. Order, Apr. 18, 2014, ECF No. 76.) The parties have exchanged and answered limited interrogatories and requests for admission. (Defs.' Mem. at 14.) They have also produced, and continue to produce, documents on a rolling basis. (*Id.*) Plaintiff represents that it has substantially completed its document production. (Pl.'s Opp. Mem. at 11.) Defendants have conducted third-party discovery and taken a third-party deposition. (*Id.*) However, certain forms of discovery have yet to commence (e.g., the parties have not yet begun email discovery under Section III of the Court's ESI Agreement Order,[10] and there has not been a single party deposition to date). (Defs.' Mem. at 14.)  The parties have also exchanged infringement and invalidity contentions, responses to the same, and proposed claim constructions. (Pl.'s Opp. Mem. at 11.) On July 11, 2014, Plaintiff moved for leave to file a second amended complaint (ECF No. 104),[11] which Defendants asserted shows that Plaintiff "is still developing its theory of the case" (Defs.' Mem. at 2, 14). At the time of filing its motion, the parties were less than one month away from filing

---

[9] Plaintiff asserts that "the stage of litigation 'must be balanced against the stage of the [USPTO] proceedings.'" (Pl.'s Opp. Mem. at 12 (quoting *SoftView*, 2012 U.S. Dist. LEXIS 104677, at *12)). However, as other courts have noted, "the stage of the reexamination process surely plays a role in the broader stay analysis" but falls more appropriately under the "undue prejudice" factor. *See Neste Oil Oyj v. Dynamic Fuels, LLC*, Civ. No. 12-662, 2013 WL 424754, at *6 (D. Del. Jan. 31, 2013) (disagreeing with approach taken in *Softview*). This Court agrees that the stage of the PTO proceedings does not fall specifically under this factor.

[10] At the hearing, however, Plaintiff's counsel stated that Plaintiff has not made a decision whether it will even pursue email discovery.

[11] On August 7, 2014, the Court denied the motion without prejudice. (ECF Nos. 118, 119.)

11

their joint claim-construction statement and requesting a claims-construction hearing.[12] (Pl.'s Opp. Mem. at 11.)

Accordingly, the "stage of litigation" factor is neutral or weighs slightly in favor of granting a stay.

### C.  Conclusion

The uncertainty as to whether the PTO will grant the petition for IPR review makes weighing the three factors above highly speculative. Currently, they do not strongly weigh in favor of either side.

In this District, it appears that most judges deny requests for a stay before the PTO has decided whether it will grant a petition. *See, e.g., Dane Techs., Inc.*, 2013 WL 4483355, *2 (concluding that balance of factors favored plaintiff where PTO had not yet decided whether it would grant defendant's IPR petitions); *Horton, Inc. v. Kit Masters, Inc.*, Civ. No. 08-6291, 2009 WL 1606472, at *1 (D. Minn. June 5, 2009) ("The fact that [defendant] has asked the PTO to reexamine the '719 patent proves nothing about the patent's quality and is therefore not a sufficient reason to grant a stay. Anyone can ask that a patent be reexamined; the mere fact that a litigant has asked the PTO to reexamine a patent does not mean that the patent is likely to be found invalid."); *cf. Intellectual Ventures II LLC v. US Bancorp*, Civ. No. 13-2071 (D. Minn. Aug. 7, 2014), ECF No. 77 (granting stay only after IPR proceedings had been instituted by the PTO on one of the patents-in-suit); *Transunion Intelligence LLC v. Search Am., Inc.*, Civ. No. 11-1075, 2014 WL 753781, at *3 (D. Minn. Feb. 26, 2014) ("To [defendant's] credit, it did not

---

[12]  Generally, the time of the motion is the relevant time to measure the stage of litigation. *VirtualAgility Inc.*, 759 F.3d at 1317. The Court will do so here.

seek a stay until the PTAB *granted* review—and, as soon as review was granted, [it] sought a stay . . . ."). The Federal Circuit "express[es] no opinion on which is the better practice," noting that "[w]hile a motion to stay could be granted even before the PTAB rules on [whether to review a patent], no doubt the case for a stay is stronger after . . . review has been instituted." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1315-16 (Fed. Cir. 2014) (discussing the timing of stay motions in the context of a stay request pending the post-grant review of a covered business method patent).

Accordingly, this Court denies the motion to stay without prejudice to the Defendants' right to renew the motion if and when the PTO grants the Petition. *See Freeny*, 2014 WL 3611148, at *3 (using this approach). Plaintiff "should be able 'to prosecute its claims, to take discovery, and to set its litigation positions, at least until such a time as the PTO takes an interest in reviewing the challenged claims.'" *Dane Techs., Inc.*, 2013 WL 4483355, at *3 (quoting *Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, No. 6:12-CV-1727-ORL-37, 2013 WL 1969247, at *3 (M.D. Fla. May 13, 2013)).

## II.    Motion to Enforce

### A.  Background

On July 9, 2014, this Court denied the motion of Defendants Playboy and Manwin for a protective order (ECF No. 89) and affirmatively ordered them to produce their financial documents responsive to Plaintiff's document requests numbered 10, 11, 12, 13, 19, 20, 21, and 22 by August 8, 2014. (Order, July 9, 2014, ECF No. 102.) These document requests state:

> **Request No. 10:** Documents sufficient to show the amount of advertising revenue the Services[13] generated, from January 1, 2000 to the present.

---

[13]  In its discovery requests, Plaintiff defined "Services" to mean "at least brazzers.com, brazzersmobile.com, and any other Web Sites identified in Skky's infringement contentions or

**Request No. 11:** Documents sufficient to show the amount of advertising revenue the Services generated from use or access by a device that is capable of receiving data over a cellular network in the United States, from January 1, 2000 to present.

**Request No. 12:** Documents sufficient to show the amount of subscription revenue the Services generated, from January 1, 2000 to the present.

**Request No. 13:** Documents sufficient to show the amount of subscription revenue the Services generated from use or access by a device that is capable of receiving data over a cellular network in the United States, from January 1, 2000 to the present.

**Request No. 19:** Documents sufficient to show (in U.S. dollars) revenue and profitability on a monthly, quarterly, and annual bases, including sales volume, gross sales and net sales, gross profit, incremental profit, operating profit, and net profit for the Services, from January 1, 2000 to the present.

**Request No. 20:** Documents sufficient to show (in U.S. dollars) revenue and profitability on a monthly, quarterly, and annual basis, including sales volume, gross sales and net sales, gross profit, incremental profit, operating profit, and net profit for the use or access of the Services by a device that is capable of receiving data over a cellular network, from January 1, 2000 to the present.

**Request No. 21:** Documents sufficient to show direct and indirect expenses associated with providing and maintaining the Services, from January 1, 2000 to the present.

**Request No. 22:** Documents sufficient to show direct and indirect expenses associated with providing and maintaining the Services for use or access by a device that is capable of receiving data over a cellular network, from January 1, 2000 to the present.

(Nosher Aff. Ex. 5, June 25, 2014, ECF No. 93-1.)

On August 8, 2014, Playboy produced only three documents, and Manwin produced only four documents. Playboy's three documents were spreadsheets that reflected aggregated figures for the calendar years 2009, 2010, and 2011. (Schultz Decl. Exs. 5-7, Aug. 26, 2014, ECF No.

---

that are later identified by Manwin as discovery continues, as well as any mobile applications identified in Skky's infringement contentions or that are later identified by Manwin as discovery continues." (Nosher Aff. Ex. 5 at 28, June 25, 2014, ECF No. 93-1.)

125.) Manwin's four documents were excerpts it took from its combined or consolidated financial statements for the calendar years 2010, 2011, 2012, and 2013. (*See id*. at Exs. 1-4). The excerpts reflected aggregated financial numbers as of December 31 of each year for Manwin's various operating "segments."

Plaintiff raises several deficiencies with Playboy's and Manwin's productions. Plaintiff first argues that financial information was missing for certain date ranges in response to Plaintiff's Request Nos. 10, 11, 12, 13, 19, 20, 21, and 22. (Pl.'s Mem. at 7, Aug. 26, 2014, ECF No. 124.)[14] Second, Plaintiff asserts that Playboy and Manwin failed to produce documents showing the amount of advertising or subscription revenue for Playboy's and Manwin's websites for the relevant time period in response to Plaintiff's Request Nos. 10, 11, 12, and 13. (*Id*.) At the hearing, Plaintiff's counsel explained that it seeks the information broken down by website so that it is clear which information relates to the websites Plaintiff accuses of infringement. For instance, due to the geographic limitations of Plaintiff's U.S. Patent, there may be certain websites that Plaintiff would exclude in its damages analysis. Third, Plaintiff contends there was no monthly or quarterly breakdown of revenue, profit, and sales numbers generated specifically by the accused websites in response to Plaintiff's Request Nos. 19 and 20. (*Id*.) At the hearing, Plaintiff's counsel stated that this breakdown is necessary to gauge trends in the market over the relevant time period, which could be relevant to assessing future royalties. Plaintiff's fourth complaint is that there was no specific disclosure of revenue attributable to mobile access in response to Plaintiff's Request Nos. 11, 13, and 20. (*Id*.) Fifth, Plaintiff takes issue with the fact that there was no specific disclosure of expenses attributable to their mobile services in response to Plaintiff's Request No. 22. (*Id*. at 7-8.) Finally, Plaintiff asserts that Playboy's and Manwin's

---

[14] Plaintiff's counsel agreed to limit the responsive date range to 2009 to the present. (*Id*.)

decision "to produce only a small fraction of the responsive relevant financial information" violates the Court's July 9th Order. (*Id*. at 8.)

Accordingly, Plaintiff asks the Court to (1) order Playboy and Manwin to immediately produce complete financial information sought by Plaintiff's Request Nos. 10, 11, 12, 13, 19, 20, 21, and 22; (2) order Manwin to re-produce its original four documents (and any future documents) in their entire unmodified form and without redactions; and (3) award Plaintiff the fees and costs it has incurred in having to bring its motion. (*Id*. at 15.)

Playboy's third-party vendor produced additional financials the same day Plaintiff filed its motion.[15] (Defs.' Opp. Mem. 3 n.2, Sept. 2, 2104, ECF 138.) Playboy estimates that it has produced over 300 documents that refer to financial information across its four productions, including many which were in this most recent production. (*Id.* at 6.)

Playboy and Manwin oppose Plaintiff's motion. (*See generally* Defs. Opp. Mem.) They maintain that Plaintiff requested documents "sufficient to show" revenues and costs associated with the accused "Services," and did not request "each and every" or "all" documents regarding such. (*Id*. at 2, 4.) Playboy and Manwin assert that their burden, therefore, was to produce documents kept in the ordinary course of business "sufficient to show" revenues related to the accused services. (*Id*. at 4-6, 8, 9.) They contend that they have done so and thus have met their obligations under the Court's Order and the Federal Rules of Civil Procedure. (*Id*.) Additionally, Playboy and Manwin represent that the information Plaintiff requested is not kept by them in the form and format that Plaintiff demands. (*Id*. at 3, 5-6, 8.)

---

[15] Playboy and Manwin criticize Plaintiff for filing this motion before Playboy was able to produce the financial information, given that Defense counsel told Plaintiff's counsel during the meet and confer that Playboy would be producing additional financial information as part of its next document production. (Defs.' Opp. Mem. at 3.)

Manwin explains that its audited financial statements concern all aspects of Manwin's business and, in its opinion, much of the report was not responsive to Plaintiff's requests or related to the accused "Services." (*Id.* at 8.) Thus, Manwin produced only the sections of the report it deemed "sufficient to show" revenues and costs associated with the accused "Services" and specifically those sections addressing the accused "Services."[16] (*Id.*) When there were multiple sections of the report on a page, Manwin redacted the allegedly irrelevant section and produced what it deemed to be the relevant section. (*Id.*)

Playboy and Manwin did not provide a declaration or affidavit in support of their opposition memorandum.

Playboy and Manwin suggest that if Plaintiff has questions about the veracity of the information or Defense counsel's representations, Plaintiff should take a deposition. (*Id.* at 3.) Plaintiff requests that it be permitted to conduct a deposition of Playboy and Manwin (not to count against the 40 hours permitted under the Amended Pretrial Scheduling Order) if Playboy and Manwin maintain that additional responsive documents do not exist, to figure out whether that is true. (Pl.'s Mem. at 11 n.6.)

## B. Discussion

Under Rule 34 of the Federal Rules of Civil Procedure, a party need only produce those documents that are in its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). This Court has distinguished situations where a party does not have the information requested from situations where the party argues that it would be an undue burden to produce the information because it is not maintained in the ordinary course of business in the requested format. *Edeh v.*

---

[16] For example, Manwin omitted sections dealing with Manwin's cash flow, employment obligations, and leases.

*Equifax Info. Servs., LLC*, 291 F.R.D. 330, 337 (D. Minn. 2013) (distinguishing *Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D.Cal. 2006), where the third-party entity argued producing the information would be an undue burden, from the case at hand where Equifax maintained that it did not have the documents requested). Absent "any concrete basis for believing that [a party] is being untruthful," a party cannot be compelled to produce documents that it does not have in its possession, custody, or control. *Id.*

However, it is not necessarily true that just because something is not kept in the ordinary course of business that it is not in that party's possession, custody, or control. It is "understandable that [a party] may compile its financial data differently from the parameters identified" by the other party's discovery requests. *ParkerVision, Inc. v. Qualcomm Inc.*, No. 3:11-CV-719-J-37TEM, 2013 WL 84926, at *3 (M.D. Fla. Jan. 8, 2013). While a party is "not required to reformat, reconfigure, or independently generate [ ] financial data to satisfy the parameters set forth" in the other party's discovery request, it may be compelled to produce data that already exists. *Id.*[17]

---

[17] In that case, ParkerVision brought a motion to compel specific quarter-by-quarter financial information. *ParkerVision,* 2013 WL 84926, at *2. Qualcomm produced some financial data, but maintained that some of the financial information sought was not kept by it within the parameters set forth in ParkerVision's interrogatory. *Id.* at *3. The court directed Qualcomm to respond to the interrogatory "with all financial data within its possession, custody or control to the extent such financial data is kept in the ordinary course of business by Qualcomm, *or already exists within any of Qualcomm's databases,* on the devices identified by Qualcomm . . . ." *Id.* (emphasis added). It ordered Qualcomm to produce financial information for the smallest saleable unit on which financial data is kept that allegedly infringed on ParkerVision's patent. *Id.*

1.  **Playboy**

    a.  **"Missing Documents"**

Plaintiff asserts that Playboy failed to produce documents for 2012, 2013, or 2014.  (Pl.'s Mem. at 7.) Playboy explains that Manwin took over operations of all the accused "Services" late in 2011 and Playboy did not maintain or track revenue associated with the "Services" thereafter. (Defs.' Opp. Mem. at 6.) Playboy insists that the only financial information from 2012 to present that it has relating to the accused "Services" is a statement of annual license payments. (*Id*.) Playboy maintains that, although these license payments are not responsive to Plaintiff's requests, they were nevertheless previously produced because Playboy produced its Management Agreement with Manwin (the "Management Agreement"), which provides the Minimum Annual Management Fee by year. (*Id*. at 6-7.) Although the Management Agreement states that Manwin must provide Playboy with specified periodic financial information, Defense counsel clarified that the applicable minimum revenue threshold has not been met. In other words, because Manwin is not yet under an obligation to provide such periodic financial information to Playboy, Playboy does not possess the financial information sought by Plaintiff. At the hearing, Playboy's counsel brought to the Court's attention that Playboy took back one of its websites from Manwin and started operating it in September 2014. She indicated that Playboy plans to produce the financial information that it now keeps in the ordinary course of business for this website.

This Court accepts the representations of Defense counsel. Accordingly, Playboy should produce the financial information for the website it recently took back (and the financial information for any other websites it takes back in the future, to the extent that such information is responsive to Plaintiff's Requests). Additionally, if in the future Manwin's obligation to provide periodic financial information to Playboy is triggered under the Management

19

Agreement, such information must be produced in accordance with this Order. Finally, even if the obligation to provide periodic information has not been or is not triggered, if the terms of the Management Agreement give Playboy the right to demand financial information from Manwin that would be responsive to Plaintiff's requests, Playboy must take reasonable steps to exercise that right and demand such information from Manwin to the extent the Management Agreement so provides. The form and format in which such financial information shall be produced is discussed below.

### b.  Issues Relating to Form and Format

Playboy represents that it produced annual profit and loss reports of its online properties by business unit (playboy.com, CJI Entertainment (i.e., Club Jenna), and ICS Entertainment), which is how the revenue information is organized and kept in the ordinary course of business. (Defs.' Opp. Mem. at 4.) At the hearing, Plaintiff's counsel explained that Playboy is a licensing company focused on its brand, not a website company. Thus, it does not keep financials by website.  Moreover, Playboy states that it does not keep this type of financials broken down by quarter or months and by mobile and non-mobile revenue in the ordinary course of business, nor does it have revenue information related solely to mobile access to the "Services." (*Id.* at 5-6.) Plaintiff argues that this is implausible, given that Playboy is a highly sophisticated company that earns a significant amount of money each year from its web properties, is a sophisticated distributor of online content (much of which they have optimized for capturing the mobile market), and that many of its website revenues are subscription-based. (Pl.'s Mem. at 9.)

Here, Playboy maintains, and Plaintiff has provided no concrete evidence demonstrating otherwise, that it does not possess revenue information related solely to mobile access to the

"Services" or by-website financials. Thus, it cannot be compelled to produce information it does not have.

On the other hand, although Playboy may not maintain revenue, profit, and sales numbers on a monthly or quarterly basis "in the ordinary course of business," it did not clearly explain what underlying data it *does* possess. Clearly, *some* data was used to generate its aggregated figures for the calendar years 2009, 2010, and 2011 (*see* Schultz Decl. Exs. 5-7, Aug. 26, 2014, ECF No. 125). Even if Playboy does not happen to run regular reports or analyses with the information, or in the form, requested by Plaintiff, it must still produce the requested information to the extent it has possession, custody, or control of data responsive to Plaintiff's requests. Finally, this Court is not persuaded that *monthly* financial are necessary to show trends, but it does conclude that it is reasonable for Plaintiff to seek *quarterly* financials for that reason. Thus, if Playboy has responsive data that would allow it to respond to Plaintiff's requests on a quarterly basis, it must do so. If not, Playboy shall affirmatively advise Plaintiff of such by sworn statement.

### 2. Manwin

#### a. "Missing Documents"

Plaintiff contends that Manwin failed to produce documents for 2009 or 2014. (Pl.'s Mem. at 7.) In its Memorandum, Manwin admitted it inadvertently omitted 2009 from its production but was working to provide such financial information. (Defs.' Mem. at 7 n.5.) Manwin explains that the reason for this oversight was that it has changed ownership since 2009 and the financial information from that year is in a different format. (*Id*.) Manwin also suggests that the delay was due Manwin's in-house counsel being on vacation. (Defs.' Mem. at 3.) At the hearing, Defense counsel stated that she just recently obtained the 2009 annual statement

document relating to Manwin and desired to redact it, in the same manner Manwin had done with the other years, prior to production. Manwin also represents that it does not yet have complete audited financial numbers for 2014 but will produce them when it does. Plaintiff maintains that its Requests were never limited to those documents and that it did not believe that Manwin has not been tracking this information throughout 2014. (Pl.'s Mem. at 9.)

At the hearing, Manwin was ordered to produce the requested financial information for 2009 in its entire unmodified form on or before October 3, 2014. (Min. Entry, Sept. 25, 2014, ECF No. 146.) With respect to the 2014 information, Manwin shall produce its (unaudited) financial information, consistent with this Court's ruling regarding form and format, as outlined below.

### b.   Issues Relating to Form and Format

Manwin produced excerpts of its audited financial statements for 2010 through 2013. (Defs.' Opp. Mem. at 7.) Manwin contends that the report tells Plaintiff where the reported revenue comes from (for instance, sale of advertising space or membership subscriptions), and explains what countries revenue comes from, and aggregates all the operating segments revenue into "advertising revenue" or "membership subscription revenue." (*Id.*) Manwin insists that the information is not broken out into quarters or months because that is not how Manwin keeps or uses the information in the ordinary course of business. (*Id.* at 8.) At the hearing, Defense counsel clarified that the reason that the 2010 financial statement is for ten months, rather than twelve, is because Manwin first started tracking its financials two months into that year, not because it tracks these financials on a monthly basis. Moreover, Manwin represents that it does not have revenue information that relates solely to mobile access of the "Services." (*Id.*) Plaintiff argues that this is implausible for similar reasons that it doubted Playboy's representations. (Pl.'s

22

Mem. at 8-9.) Moreover, Plaintiff points out that the four documents produced by Manwin strongly suggest that it does keep records of financial metrics by website, which are then aggregated at the end of the year to create the summary numbers displayed in its "Combined Financial Statements." (Pl.'s Mem. at 10.) At the hearing, Defense counsel responded that Manwin is not a public company, so it does not keep organized financials in the way that one may expect. She stated that, "It isn't clear that [Manwin has] financials for by-website. They may have them by brand. But the notion that they have by-website financials is not, from what I am told, correct." She also explained that there is a definitional problem regarding "Services" because Plaintiff's Document Requests define that word to mean more than just the websites identified in Plaintiff's infringement contentions (*see* Nosher Aff. Ex. 5 at 28, June 25, 2014, ECF No. 93-1). Furthermore, Defense counsel justified Manwin's decision to produce annual audited statements, without the underlying monthly or quarterly data, because Manwin believed that they were the most accurate financials and were "sufficient to show" what Plaintiff was seeking.

Given that Manwin represents—and Plaintiff has failed to adequately refute—that Manwin does not possess revenue information that would allow it to break out revenues related specifically to mobile access to the "Services," the Court cannot compel Manwin to produce such information.

Manwin did not, however, clearly and definitively deny having by-website financials and did not clearly explain what underlying data it does possess that was used for its combined or consolidated financial statements for the calendar years 2010, 2011, 2012, and 2013 (*see* Schultz Decl. Exs. 1-4, Aug. 26, 2014, ECF No. 125). If Manwin is in fact able to produce by-website financials, it must do so.  The websites shall include brazzers.com, brazzersmobile.com, and any

other websites identified in Plaintiff's infringement contentions and its amended infringement contentions.  If Manwin is able to produce the requested financial information broken down by quarter, it must do so.  As noted with respect to Playboy above, it is not a sufficient response that Manwin does not run regular reports or analyses with the information, or in the form, requested by Plaintiff;  if it has possession, custody, or control of data responsive to Plaintiff's requests, it must produce the requested information. If Manwin is not able to do so, Manwin shall affirmatively advise Plaintiff of such by sworn statement. The parties may use depositions, sworn statements, or other appropriate means—consistent with the Federal Rules of Civil Procedure, Local Rules, and the deadlines and limitations set forth in the Amended Pretrial Scheduling Order (Am. Pret. Sched. Order, Apr. 18, 2014, ECF No. 76)—to address any accuracy concerns related to such documents.

### c.  Modifications and Redactions

Plaintiff further argues that Manwin's decision to create its own, smaller documents in response to the Court's July 9th Order violates Rule 34. The Federal Rules of Civil Procedure do not generally allow parties to create their own documents by pulling, merging, and then producing non-sequential pages from larger complete documents. Rule 34 mandates that "[a] party must produce documents as they are kept in the usual course of business . . . ." Fed. R. Civ. P. 34(b)(2)(E)(i). Courts in this District have held that "[r]edaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request." *Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011); *see also Burris v. Versa Products, Inc.,* Civ. No. 07-3938, 2013 WL 608742, at *3 (D. Minn. Feb. 19, 2013) ("The practice of redacting for nonresponsiveness or irrelevance finds no explicit support in the Federal Rules of Civil Procedure, and the only bases for prohibiting a

party from seeing a portion of a document in the Rules are claims of privilege or work-product protection."); *Hageman. v. Accenture, LLP,* Civ. No. 10-1759, 2011 U.S. Dist. LEXIS 61727, at *12-13 (D. Minn. June 7, 2011) (ruling that "Rule 34 does not permit the redaction of irrelevant portions of 'items,' 'documents,' 'electronically stored information,' and 'designated tangible things.'").[18]

Manwin does not cite any case law supporting its view that it may unilaterally redact based on relevancy or responsiveness grounds. Instead, it states that this is a "common practice in litigation."[19] (Defs.' Opp. Mem. 8.) Moreover, Manwin did not provide a declaration or other cognizable evidence supporting even retrospectively a claim of good cause to make the redaction.[20]

The Court ruled from the bench on this issue. Manwin was ordered to re-produce its original four documents in their entire unmodified form on or before October 3, 2014. (Min. Entry, Sept. 25, 2014, ECF No. 146.)

---

[18] Ideally, parties should address and attempt to reach agreement during their Rule 26(f) conference on the bases on which a party might redact allegedly irrelevant or unresponsive, but non-privileged, content from an otherwise discoverable document. Failing that, if a party desires to redact such content from an otherwise discoverable document, it must bring a motion for a protective order, seek leave of the Court to redact, and show "good cause." *Hageman.*, 2011 U.S. Dist. LEXIS 61727, at *12 (citing Fed. R. Civ. P. 26(c)); *see also Bartholomew,* 278 F.R.D. at 452. Here, Manwin did not move to redact the documents.

[19] Manwin accuses Plaintiff of being hypocritical because, Manwin says, Plaintiff redacts documents too. Plaintiff's counsel explained at the hearing that Plaintiff's counsel did not unilaterally redact documents on the grounds of lack of responsiveness or relevancy. He represented that Plaintiff's "redacted" document cited by Manwin was not a redaction by counsel; it was a marking already on the document at the time they received it.

[20] Counsel for Manwin alluded to, but did not support by declaration, a concern for confidential information contained in the redacted portions of the document. There is a protective order in this case that can be used to limit the dissemination of any confidential information. *See Bartholomew,* 278 F.R.D. at 452. Manwin provided no basis upon which to conclude that would not prove adequate to address its concerns.

### 3.   Fees and Costs

Plaintiff requests its costs and fees associated with having to bring this motion. Federal Rule of Civil Procedure 37(b)(2)(A) states that "[i]f a party. . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Moreover, Rule 37(b)(2)(C) provides that "the court must order the disobedient party. . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

Here, although Plaintiff objects to the form and format of the production, Playboy and Manwin maintain they have largely complied with this Court's July 9, 2014 Order to the extent they have possession, custody or control over the information they were ordered to produce. In addition, there appear to have been legitimate disputes about the definitions of "sufficient to show" and "Services." While Manwin's reasons for failing to produce its 2009 financial document in a timely manner or for unilaterally redacting the documents it did produce was not persuasive, Playboy and Manwin otherwise produced their financials in a timely manner and made a good faith effort to comply with this Court's Order. This is especially true given the status of this case and the nature of the requests, which relate to damages. Thus, this Court finds that an award of expenses would be unjust under the circumstances.

Based on the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendants' Motion to Stay Pending *Inter Partes* Review of the Patent-In-Suit (ECF No. 112 in Civ. No. 13-2086, ECF No. 104 in Civ. No. 13-2089 and ECF No. 76 in Civ. No. 13-2087), is **DENIED** without prejudice, and ECF No. 46 in Civ. No. 13-2085 is **DENIED** as moot; and

2.      Plaintiff's Motion to Enforce This Court's July 9th, 2014 Order, Require Production of Unmodified Documents, and Award Skky Costs and Fees (ECF No. 122 in Civ. No. 13-2086 and ECF No. 114 in Civ. No. 13-2089) is **GRANTED IN PART** as follows:

    a.  If Playboy has possession, custody, or control of data from which it is able to produce the requested information, broken down by quarter for 2009, 2010, 2011, and 2014 (for the website it took back in September 2014), it must do so. If not, Playboy shall affirmatively advise Plaintiff of such by sworn statement.

    b.  As previously ordered, Manwin shall produce its financial information for 2009 and shall re-produce its original four documents in their entire unmodified form on or before October 3, 2014. (Min. Entry, Sept. 25, 2014, ECF No. 146.)

    c.  If Manwin has possession, custody, or control of data from which it is able to produce the requested information, including by-website financials, broken out by quarter, for 2010, 2011, 2012, 2013, and (unaudited) 2014, it must do so. The websites shall include brazzers.com, brazzersmobile.com, and any other websites identified in Plaintiff's infringement contentions and its amended infringement contentions. If not, Manwin shall affirmatively advise Plaintiff of such by sworn statement.

    d.  Consistent with this Order, Playboy and Manwin must produce the above-referenced documents and sworn statements, if any, by three weeks from the date of this Order.

27

e.  Playboy's and Manwin's financial records may be designated as "Confidential – Outside Counsel's Eyes Only" Information under the terms of the parties' Protective Order (ECF No. 32).

f.  Playboy and Manwin are reminded of their ongoing duty to supplement their production, including financial information, with documents that are in their possession, custody, or control.

g.  The remainder of Plaintiff's Motion is **DENIED.**


Dated: October 29, 2014

         *s/ Jeanne J. Graham*
         JEANNE J. GRAHAM
         United States Magistrate Judge