**ROBINS, KAPLAN, MILLER & CIRESI** L.L.P.

ATTORNEYS AT LAW

800 LASALLE AVENUE
2800 LASALLE PLAZA
MINNEAPOLIS, MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

RYAN M. SCHULTZ
rmschultz@rkmc.com
612-349-8408

January 19, 2015

**VIA ECF**

The Honorable Hildy Bowbeer
Magistrate Judge, U.S. District Court
632 Federal Building
316 North Robert Street
St. Paul, MN 55101

    Re:    *Skky v. Manwin USA, Inc. and Manwin Holding s.a.r.l.* (13-cv-2086); *Skky v. Playboy Enterprises, Inc.* (13-cv-2089)

Dear Magistrate Judge Bowbeer:

Plaintiff Skky, Inc. details the discovery issues identified in the Joint Letter Regarding Discovery Issues served on January 16, 2015. Each of the issues is discussed below in detail.

**Issue No. 1: Amended Deadline for Fact Witness Depositions**

Skky requests that the Court extend the deadline for completion of fact witness depositions until April 30, 2015. Fact discovery deadline is currently set for February 27, 2015. Despite repeated and significant efforts by Skky to obtain the necessary written and document discovery from Defendants in order to take efficient, effective depositions, Defendants continue to flout their discovery obligations. Indeed, as set forth below in more detail, Defendants refuse to produce highly relevant documents and interrogatory responses that are needed for the depositions, including identifying the proper witnesses. Skky will be prejudiced if required to take these fact witness depositions without written and document discovery that it has been requesting from Defendants for over a year. For this reason alone, a short extension of fact discovery for completion of depositions is needed.

Notwithstanding Defendants' continued discovery failures, the parties have worked to create a deposition schedule for the last few weeks of fact discovery. Attached as Exhibit 1 is the calendar of depositions that have been noticed in these cases. To date, **over 50** depositions are currently on the calendar. These depositions do not include the 4 or 5 depositions that Skky will notice for Playboy once Playboy satisfies its discovery obligations. As shown on the calendar, there are days where 4 or 5 depositions are scheduled. An extension of fact witness depositions will allow the parties to complete fact witness depositions in a reasonable manner.

Hon. Hildy Bowbeer
January 19, 2015
Page 2

Skky asked Defendants if they would jointly move for this short extension. Defendants refused without providing any reason. Nevertheless, Skky notes that the upcoming deadlines for expert discovery are tied to the entry of the claim construction order. Any extension will not impact these deadlines. The dispositive motion deadline or trial deadline may need to be moved due to when the claim construction order is entered. However, this short extension will not impact the parties to be adequately prepared for the current deadlines even if they remain as the parties will still have almost three months to prepare any dispositive motion.

As such, Skky respectfully requests an extension until April 30, 2015 for completion of fact witness depositions.

**Issue No. 2: Defendant Manwin's Discovery Deficiencies**

*Prospectuses/Presentations and Google Analytics.* This Court's December 19 Order, among other things, required Manwin by January 9 to complete production of 1) "responsive prospectuses or presentations to investors or prospective investors" relating to revenue generation or mobile content, and 2) production of "Google Analytics reports." Manwin has failed to do both. Manwin now indicates that it is continuing to search for the existence of relevant agreements or prospectuses or presentations. Ex. 2 at 2. This should have been done long ago. As to Google Analytics, Skky has been requesting reports from Manwin for months. And Manwin's counsel previously represented that "Manwin is preparing Google Analytic reports and will produce them as quickly as possible." Ex. 3. After this Court ordered a production of these reports by a date certain, Manwin chose instead to produce Excel spreadsheets created for litigation purposes. Manwin's recent and surprise refusal to simply producing the reports themselves—as Vivid has done—should be rejected.

*Manwin Third Party Relationships.* Manwin's interrogatory response and document production continues to obfuscate discovery into Manwin's third party relationships. Interrogatory 3 asks for basic information and a description of Manwin's relationships—formal or informal—with third party service providers. Ex. 4 at 9-11. Manwin's response fails to address six providers of hosting, network, or content services that Manwin's own production references. In addition, no agreements, contracts, or purchase orders have been produced for these providers. This Court should order a full supplementation of this interrogatory to include a description of the services that each one of the parties provides.

*Manwin's Interrogatory Responses (Nos. 1, 6, 9, 11, and 13).* Manwin's Interrogatory responses remain incomplete and deficient. First, Manwin has still not fully responded to **Interrogatory 1** requesting identification of its website and mobile application assets by name. Among other reasons, it is undisputed that Manwin maintains mobile applications, yet none of these are listed in the response. For **Interrogatory 6**, Manwin has failed to identify the types of mobile devices accessing Manwin's sites. Full Google Analytics reports—which Manwin refuses to produce—would provide much of this information. For **Interrogatory 9**—requesting information on processes Manwin uses to collect information on mobile devices accessing its sites—Manwin's general response fails to explain how it ascertains information regarding the cellular carrier, type of network connection and network speed of the accessing user. *See* Ex. 5 at 7-8 For **Interrogatory 11**, requesting description of the process that Manwin uses to provide rich media

Hon. Hildy Bowbeer
January 19, 2015
Page 3

content to mobile users, Manwin cites to 19 documents from its production. Ex. 5 at 10-11. The documents, however, result in more questions than answers. For example, a document referring to ███████████████ is cited, MAN00014183, yet this is precisely one of the third parties that Manwin refuses to acknowledge in its response to Interrogatory 3. Rule 33(d) is appropriate only where "the burden of deriving or ascertaining the answer will be substantially the same for either party." Here, a narrative response is required because the cited documents do not provide Skky a complete, accurate, or understandable response. Finally, for **Interrogatory 13**, Manwin has failed to provide a complete description of its corporate structure and the relationship of Manwin to past and present parents, subsidiaries, affiliates or divisions. The only two documents cited by Manwin in its response are organizational charts. *See e.g.*, Ex. 6. It is undisputed that this document fails to include information on parents, subsidiaries, or affiliates. Supplementation is required.

*Deficient RealityKings.com Technical Documents.* Manwin's position that because it acquired the Reality Kings brand and assets in 2012 it only has a handful of technical documents is belied by its own production and common sense. Reality Kings is a network of 50 or more websites that Manwin acquired in 2012. ███████████████████████████████████████████████████████████████████████████████████ and of the 6,400+ documents in Manwin's production, only <u>nineteen</u> documents contain the strings "Reality Kings" or "RealityKings." Moreover, Manwin has not produced any documents from "███████████" or any of the other thirteen individuals that Manwin's technical issue tracking system, ███ suggests have involvement in the Reality Kings brand. And regardless of Manwin's position, Reality Kings was a mature brand even before acquisition, yet not a single document has been produced from before 2012.

*Purchase Agreements.* Skky has requested production of Manwin's purchase agreements of the accused services for some time now. In yet another example of Manwin's failure to obey this Court's December 19 Order, these agreements were not produced on January 9. Manwin now indicates that to the extent the purchase agreements are "<u>relevant to damages</u>," they are being gathered and will be produced. Ex. 2 at 3. Notwithstanding Defendants' apparent narrow view on the standard for discoverability, these agreements are relevant to Manwin's liability for infringing acts prior to acquisition and estimation of damages. Manwin has not produced these agreements and should be ordered to do so by a date certain.

*Production Errors.* Even when Manwin does produce documents, technical deficiencies make the production difficult and sometimes impossible to review. These deficiencies include missing images with highly relevant data, *see e.g.*, ██████████████, voluminous non-responsive documents, *see e.g.*, Ex. 9 (excerpt from 14,000 page document of numbered rows from 1002851 to 0), cut-off highly relevant content, *see e.g.*, ██████████████████████████████. *See e.g.*, Ex. 11. Skky has attempted to police these systematic problems for months now. *See* Ex. 12 (October 27, 2014 Ltr.); Ex. 13 (Nov. 20, 2014 Ltr.); Ex.

14 (Jan. 14, 2014 Ltr.). Yet deficiencies remain. Manwin's strategy of making discovery as costly as possible for both parties should be rejected. The Court should order immediate correction of these and similar issues and issue sanctions as appropriate.

### Issue No. 3: Defendant Playboy's Discovery Deficiencies

#### A. Incomplete Responses to Interrogatories No. 1, 2, 6, 7, 10, and 11.

Playboy's Interrogatory responses remain deficient in the following respects:

- Interrogatory No. 1 requires Playboy to identify the main websites it has operated since at least 2009. Playboy has still not identified cyber.playboy.com (Playboy's pre-Manwin subscription site) or its many "Adult" websites.

- Interrogatory No. 2 requires Playboy to identify and describe the responsibilities of individuals knowledgeable about its websites. Playboy has identified Manwin employees but has refused to describe their responsibilities.

- Interrogatory No. 6 requires Playboy to identify the specific devices that have accessed its websites since June 16, 2009. Playboy has responded by citing to one incomplete document. Google Analytics reports would provide this information, but Playboy has refused to produce them.

- Interrogatory No. 7 requires Playboy to identify the servers (and their location) on which website content has been stored since 2009. Playboy has failed to identify any pre-Manwin, shared, or Manwin-managed servers. Playboy has stated only that it presently stores some content on its "own file server," but has failed to identify that server's location.

- Interrogatory No. 10 requires Playboy to identify "all facts" regarding how website content is created and provided to Manwin. Playboy has stated only that Adobe is used and that content is put on an (unidentified) "shared server."

- Interrogatory No. 11 requires Playboy to identify all sources of revenue that it has received in connection with its websites since June 16, 2009. Playboy has responded by identifying only on document, from 2012. Playboy's response fails to identify any revenues from 2009, 2010, 2011, 2013, or 2014.

#### B. Missing Categories of Documents

The following categories of documents remain largely or completely absent from Playboy's document production: **Google Analytics reports** (and a complete set of other analytics) for the accused websites (RFP Nos. 26, 27, 28, 29, 30, 31, 32, 33, 56, 57, 58, 59); **documents regarding Playboy's decision to use and then discontinue using Manwin** (RFP Nos. 67, 68); **technical documents showing steps taken to develop and/or optimize mobile websites and applications** (RFP Nos. 34, 35, 44, 45); documents regarding the **file format standards, preferences, and requirements for the Manwin and post-Manwin eras** (RFP Nos. 39, 40); documents showing the **content Playboy has provided to Manwin** for use on Playboy's websites (RFP No. 72); documents showing the **location of Playboy's servers since 2009, including servers for the current playboy.com site** and mobile applications. (RFP Nos. 5, 6).

Hon. Hildy Bowbeer
January 19, 2015
Page 5

Equally striking is the fact that Playboy has not produced *any* of the following documents or things, despite the fact that Playboy's Manwin contract *requires* Manwin to provide these items to Playboy *on a regular basis*:

- ██████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████ The Manwin contract also required Playboy to provide Manwin with ████████
██████████████████████████████████████ Playboy has not produced these documents.

### C.  Missing Custodians

Playboy has thus far refused to produce documents from Jimmy Jellinek, Hazel Thomson, or Josh Schollmeyer. Mr. Jellinek has been Playboy's Chief Content Officer since 2009 and therefore has files covering the entire infringement period. His name appears in 149 documents that Playboy has already produced. Ms. Thomson is Playboy's Digital Account Director and appears to manage relationships relating to the distribution of content to mobile phones. Her name appears in 155 Playboy-produced documents. Mr. Schollmeyer has served as the company's Executive Director of Digital Content and supervised content creation and digital strategies, including Playboy's smart phone applications. His name appears in 191 Playboy-produced documents.

Playboy has also not produced any documents from the custody of Phillip Morelock or Rachel Melville. Ms. Melville is Playboy's Director of Product Management and a primary technical contact. Mr. Morelock is Playboy's Chief Product Officer of Digital Media. Playboy has acknowledged, in response to Interrogatory No. 4, that Mr. Morelock "has been responsible for Playboy's digital media since January 2014 and, as such, has information regarding how Playboy currently operates the accused web sites or services."

Defendants' persistent failure to respond adequately to interrogatories and requests for production, some of which have been pending for more than a year, has now prejudiced Skky. Skky therefore renews its request for sanctions pursuant to Rule 37.

Respectfully submitted,

*/s/ Ryan M. Schultz*
Ryan M. Schultz
Counsel for Skky, Inc.