

2049 CENTURY PARK EAST   SUITE 2100   LOS ANGELES, CA 90067
T 310.229.9900   F 310.229.9901   www.Venable.com

January 21, 2015

**VIA ELECTRONIC FILING**

The Honorable Hildy Bowbeer, U.S. Magistrate Judge
U.S. District Court for the District of Minnesota
632 Federal Building
316 N Robert St
St. Paul MN 55101

Tamany V. Bentz
T 310.229.9905
F 310.229.9901
TJBentz@Venable.com

Re:   *Skky v. Manwin USA, Inc. and Manwin Holding S.ár.l.*, 13-cv-2086; *Skky v. Playboy Enterprises, Inc.*, 13-cv-2089

Dear Judge Bowbeer:

Defendants Manwin and Playboy submit their response to plaintiff Skky's January 19, 2015 position letter in anticipation of the case management conference scheduled for Friday, January 23, 2015.

### Skky's Request to Extend the Deadline for Fact Witness Depositions

Skky requests a two-month extension of the deadline for fact witness depositions, to April 30, 2015, a date Skky argues will still leave the parties "almost three months to prepare any dispositive motion." But the Amended Pretrial Scheduling Order states that "[a]ll dispositive motions . . . must be served, filed and HEARD by July 13, 2015" and the Order reminds the parties that "the scheduling of a dispositive motion requires considerable advance notice (typically three (3) to four (4) months)." Dkt. No. 76 at 10 (emphasis in original). Three months before July 13, 2015 – the shortest advance notice contemplated by the Scheduling Order – is April 13, 2015. Accordingly, granting Skky's requested extension would require yet another amendment to the Scheduling Order; otherwise, briefing of dispositive motions would have to begin no later than April 13, 2015, more than two weeks *before* fact witness depositions were completed on April 30, 2015.

Contrary to Skky's representation and as explained in more detail below, leaving the current deadline of February 27, 2015 in place is not prejudicial because Skky has received all of the document discovery required to conduct fact witness depositions. Notably, Skky's lengthy recital of discovery issues contains no assertion that any of the discovery it seeks is specifically necessary to conduct any fact witness depositions.

#### Manwin's Discovery

- Prospectuses/Presentations: This week, Manwin produced to Skky two prospectuses that contain information regarding, among many other things, revenue generation.



VIA ELECTRONIC FILING
January 20, 2015

- Google Analytics: Manwin has repeatedly told Skky that Google Analytics reports responsive to its discovery requests do not necessarily exist in the ordinary course of business, which is why a report was prepared for production.
- Manwin Third-Party Relationships: Manwin has made a good faith effort to identify third parties and locate its agreements with the same. To date, Manwin has produced all responsive third-party agreements that it is aware of and able to locate. As repeatedly communicated to Skky, Manwin does not have a third-party relationship with Amazon Web Services. *See* Exhibit 1.
- Manwin's Interrogatory Responses
    - Interrogatory No. 1: Manwin's response to this interrogatory is complete and sufficient.
    - Interrogatories Nos. 6 and 9: Manwin is not confident it can generate reports that include each and every device that has accessed its sites back to 2009 and, even if it could, the immensity of the data means that preparing the reports would require a significant number of man hours. As an alternative, Manwin has pulled data on the top ten devices and the top ten wireless providers, which should account for 70-80% of the traffic on the accused sites. Manwin produced these reports before January 9, 2015. This issue was also raised in defendants' letter to the Court on December 17, 2014. *See* Dkt. No. 179.
    - Interrogatory No. 11: Manwin does not "provide rich media content to mobile users." Content aggregators, Internet service providers, and other third parties do. Manwin's citations to documents in its response to this interrogatory provide Skky with as much information as is available.
    - Interrogatory No. 13: Skky has yet to demonstrate how information concerning Manwin's parents, subsidiaries, or affiliates is relevant, or to specifically identify how documents already produced are insufficient to provide Skky with this information. Nevertheless, a complete organizational chart for Manwin is included in both prospectuses produced to Skky this week. *See* MAN00047233 - 368.
- Reality Kings Technical Documents: Manwin's document production as to the Reality Kings sites is complete. There are no additional responsive technical documents and Manwin does not have access to documents pre-dating its acquisition of Reality Kings. The apparent disparity between the number of documents concerning Reality Kings and the number of documents concerning other sites is understandable, given the fact that Manwin relatively recently acquired operational Reality Kings sites, and in contrast, many of the other sites at issue were developed by Manwin.
- Purchase Agreements: The purchase agreements are only relevant if Manwin is taking the position that it is not liable for pre-acquisition infringement. If Manwin is taking this position, then the relevant agreements for the purchase of accused services will be produced.



VIA ELECTRONIC FILING
January 20, 2015

- Production Errors: Contrary to Skky's baseless assertion, technical issues involved in Manwin's document productions are not part of any strategy to "mak[e] discovery as costly as possible." Manwin is working closely with its outside discovery vendor to rectify any of the issues raised with respect to Manwin's technical documents. Many of the issues Skky raises were caused because Manwin took the additional effort to collect whole wiki spaces, including wiki pages that were linked to responsive wiki spaces. This data was not easy to extract and has not been easy to process.

  **Playboy's Discovery**
- Playboy's Interrogatory Responses
    - Interrogatory No. 1: Playboy identified the websites it has operated since 2009 to the best of its ability, including the Cyber Club website, in the document cited in its original response to this interrogatory, PB00007254-88.
    - Interrogatory No. 2: Although Playboy can identify individuals knowledgeable about its websites, including Manwin employees, it cannot verify or attest to the job responsibilities of Manwin employees.
    - Interrogatory No. 6: Playboy has agreed to supplement its response to this interrogatory to identify the Google Analytics, Google Webmaster Tools, and Alexa data (PB00024210-38) included in Playboy's January 9, 2015 document production.
    - Interrogatory No. 7: Playboy has not identified the servers on which content was stored prior to its contract with Manwin because it is not able to identify the servers. Information concerning servers, among other matters, that pre-dates Playboy's contract with Manwin either no longer exists or never existed. Likewise, any employees who may have had this information are no longer with Playboy.
    - Interrogatory No. 10: As of Playboy's January 9, 2015 production, Skky has received the technical documents relevant to this matter that are in Playboy's possession, including any technical documents Playboy received from Manwin. Very soon after Playboy outsourced its website operations to Manwin, it was Manwin who created the websites' content.
    - Interrogatory No. 11: Playboy has already produced numerous financial documents responsive to this interrogatory.
- Documents: Skky argues that there are "categories of documents [that] remain largely or completely absent from Playboy's document production." But Skky fails to specifically identify which categories of documents are "completely" absent, which are "largely" absent, and the breadth of any "large" (but not "complete") absence. This lack of specificity precludes Playboy from responding substantively to several of the issues relating to document production Skky raises. Playboy made a good faith effort to identify and produce responsive documents, including the small number of technical documents in its possession given its outsourcing of the operation of its websites.



VIA ELECTRONIC FILING
January 20, 2015

    Nevertheless, and in addition to the responses provided above, Playboy provides these responses.
- Google Analytics Reports: The analytic data available to Playboy was produced on or before January 9, 2015, asPB00024210-38.
- Playboy's Relationship with Manwin: Non-privileged documents concerning Playboy's decision to contract with Manwin and its later decision to discontinue that relationship have either been produced, no longer exist, or never existed. Moreover, with the exception of Phillip Morelock, the individuals involved in those decisions are no longer Playboy employees.
- Server Locations: Until September, 2014, Playboy outsourced the operation of its websites. Playboy has not identified the servers on which content was stored prior to its contract with Manwin because it is not able to identify the servers. Information concerning servers, among other matters, that pre-dates Playboy's contract with Manwin either no longer exists or never existed. Likewise, any employees who may have had this information are no longer with Playboy.

**Custodians**

    Skky seeks documents from several individuals. Playboy produced responsive documents from Phillip Morelock, David Israel, and Tom Flores in its January 9, 2015 production. Playboy does not intend to produce documents from Jimmy Jellinek, Josh Schollmeyer, or Hazel Thomson. These individuals' job duties do not implicate Skky's allegations of infringement or Playboy's defenses to those allegations. As Skky correctly points out, Mr. Jellinek is Playboy's Chief Content Officer and, as a content creator, any documents in his possession are not relevant to the operation of any accused websites. Similarly, Mr. Schollmeyer was not involved in the technical details of the accused websites; rather, he acted as a content liaison with third parties and helped fashion the look of Playboy's digital offerings. And Ms. Thomson's responsibilities while a Playboy employee involved the licensing of Playboy's brand and not the operation of any accused websites.

    "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information" includes "matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-53 (1978) (rejecting respondents' attempt to obtain class members' names and addresses – even as a means to send the class notice – as one that could not be "forced into the concept of 'relevancy'"); *see also Bredemus v. Int'l Paper Co.*, 252 F.R.D. 529, 532 (D. Minn. 2008) (stating that "relevancy under Rule 26 is not without bounds").

    Skky, as the proponent of discovery, must make "[s]ome threshold showing of relevance . . . before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks,*

4



VIA ELECTRONIC FILING
January 20, 2015

*Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (citing *Oppenheimer*) (affirming denial of motion to compel where plaintiff sought detailed design plans and "minutiae" for models of trucks that were sufficiently dissimilar from the model in issue such that plaintiff did not make threshold showing of relevance to warrant production of the design plans); *see also United States v. Morse*, Civ. No. 07–226, 2007 WL 4233075, at * 2 (D. Minn. Nov. 28, 2007) (upholding the magistrate judge's refusal to compel the disclosure of certain evidence because the party seeking the discovery had not demonstrated relevance, and in his appeal stated only that "such evidence is relevant and material to the charge and elements of fraud"). Although some courts "liberally construe" the scope of discovery in patent cases under Rule 26 and the scope of discovery may include accused websites and systems "reasonably similar" to those accused in infringement contentions, *see AGA Med. Corp. v. W.L. Gore & Associates, Inc.*, Civ. No. CIV. 10-3734 JNE/JSM, 2011 WL 11023511, at *7 (D. Minn. Oct. 19, 2011) (collecting cases), there is no authority justifying an attempt to discover documents in the possession of those whose job duties are wholly separate from the alleged infringing technology.

      Finally, Playboy does not believe that Rachel Melville has any responsive documents that are not duplicative of the documents collected from Mr. Morelock; however, if Ms. Melville has responsive documents that are not duplicative, then they will be produced.

      Respectfully submitted,

      */s/Tamany Vinson Bentz*

      Counsel for Manwin USA, Inc., Manwin Holding, S.ár.l., and Playboy Enterprises, Inc.