# Exhibit 2

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Skky, Inc.,

        Plaintiff,

vs.

Playboy Enterprises, Inc.,

        Defendant.

Case No.:  13-2089 (PJS/HB)

---

## DEFENDANT'S SUPPLEMENTAL
## NON-INFRINGEMENT CONTENTIONS

Pursuant to the Amended Scheduling Order in the above-captioned matter (Dkt. No. 76), as well as the Court's October 9, 2014 Order, Defendant Playboy Enterprises, Inc. ("Playboy" or "Defendant") hereby provides the following Supplemental Non-infringement Contentions in response to Plaintiff Skky, Inc.'s ("Skky") Amended Infringement Contentions dated October 31, 2014.

Defendant incorporates herein by reference the entirety of Defendant's Preliminary Responsive Claim Charts and cover pleading dated March 24, 2014. Defendant further incorporates herein by reference all past and future responses by Defendant to any Skky interrogatory seeking Defendant's positions relating to non-infringement.

1

Defendant's Supplemental Non-infringement Contentions are based on information currently available and known to Defendant following a reasonable and diligent investigation in connection with making these contentions. Although discovery is ongoing, Skky has failed to produce timely, responsive discovery in response to Defendant's requests to date. Indeed, Defendant has had to rely on third party discovery to fill the significant gaps in Skky's document productions and discovery responses. Defendant, therefore, reserves all rights to further supplement and/or amend Defendant's Supplemental Non-infringement Contentions as discovery proceeds in these actions and once Skky becomes compliant with its discovery obligations under the Federal Rules of Civil Procedure.

Additionally, Skky's Amended Infringement Contentions fail to comply with the Court's July 9, 2014 Order (Dkt. No. 94) granting Defendant's motion to redact all explicit material in Skky's infringement contentions. Skky has stated to Defendant that it will not be able to serve fully redacted contentions (*i.e.*, redactions that will bring Skky into compliance with the Court's July 9, 2014 Order) until December 19, 2014. Accordingly, Defendant reserves all rights to further supplement and/or amend Defendant's Supplemental Non-infringement Contentions following Defendant's receipt of a fully-compliant set of infringement contentions from Skky.

Without the benefit of the Court's interpretation of the terms of the patent claims pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996), and as Defendant best understands Skky's infringement contentions at this time, Defendant states that Defendant does not infringe

any of the asserted claims of U.S. Patent No. 7,548,875 ("the '875 patent") for at least the reasons identified in Defendant's Preliminary Responsive Claim Charts and cover pleading, as well as those reasons set forth *infra* and in Defendant's Supplemental Non-infringement Charts attached hereto at Exhibits 1-3 and 5-10.[1]   Defendant expressly reserves the right to further supplement and/or amend its Supplemental Non-infringement Contentions and/or identify other non-infringement contentions after the disputed claims terms have been construed by the Court, in view of additional discovery from Skky or third parties, in the event that additional grounds for non-infringement are identified, and/or in view of any other basis in law or in fact.

Defendant also reserves the right to further supplement and/or amend Defendant's Supplemental Non-infringement Contentions because Skky's Amended Infringement Contentions and accompanying claim charts are deficient on their face in that they fail to identify factual bases for Skky's infringement allegations and, in many instances, do not allege that each step of an asserted claim is directly, jointly or indirectly practiced by Defendant.   Skky's Amended Infringement Contentions and accompanying claim charts similarly do not disclose any viable theory of direct, joint or indirect infringement, and those charts do not disclose *any* theory of infringement under the Doctrine of Equivalents as required by the Amended Scheduling Order. Defendant's Supplemental Non-

---

[1] Skky has withdrawn its claims of infringement for certain websites previously accused. Thus, there are certain gaps in the numbered exhibits to Skky's Amended Infringement Contentions.  Those gaps are also reflected in Defendant's numbered exhibits.  To the extent that Skky relies on any chart previously served with its infringement contentions dated February 24, 2014, Defendant will likewise rely on the corresponding charts served on March 24, 2014, *i.e*., Defendant's Preliminary Responsive Claim Charts.

infringement Contentions respond only to that which is disclosed in Skky's Amended Infringement Contentions and accompanying infringement claim charts.

Defendant states that it does not infringe directly, jointly, indirectly or under the Doctrine of Equivalents any asserted claim of the '875 patent with any of the websites listed in Exhibits 1-3 and 5-10 of Skky's Amended Infringement Contentions, or any other website owned or operated by Defendant.  Skky's Amended Exhibits 1-3 and 5-10 identify the specific websites that Skky contends infringe the asserted claims of the '875 patent, *i.e*., the Accused Instrumentalities, as follows: playboy.com (Amended Exhibit 1), Playboy mobile (Amended Exhibit 2), playboylive.com (Amended Exhibit 3), Playboy TV (Amended Exhibit 5), Thesmokingjacket.com (Amended Exhibit 6), Playboy Mobile Application (Amended Exhibit 7), PlayboyPlus.com (Amended Exhibit 8), playboywebmasters.com (Amended Exhibit 9) and Naughtyamateurhomevideos.com (Amended Exhibit 10) (collectively, the "Accused Instrumentalities").[2]  No other Playboy technology is accused of infringement in Skky's Amended Infringement Claim Charts.[3] The charts appended to Defendant's Supplemental Non-infringement Contentions address only those above-listed instrumentalities that Skky has identified as Accused Instrumentalities in Skky's infringement claim charts.

---

[2]  In addition to Defendants' non-infringement contentions set forth herein, Defendants are not liable for any alleged infringement by any Accused Instrumentality for any period of time during which Defendants did not own or operate said instrumentality.

[3] Skky lists numerous other websites in the cover pleading to its Amended Infringement Contentions, but does not provide infringement charts for those non-accused websites, or otherwise provide a theory of infringement for such websites.  Hence, those websites are not Accused Instrumentalities and are not subject to this litigation.

As set forth in Skky's infringement charts, Skky is asserting the following claims against the Accused Instrumentalities.  Defendant understands that certain claims are not asserted against specific Accused Instrumentalities as set forth below.

| Accused Instrumentality | Asserted Claims |
|---|---|
| Playboy.com | 1, 2, 15, 17, 21, 22, 23 |
| Playboymobile.com | 1, 15, 17, 22, 23 |
| Playboylive.com | 1, 15, 17, 22, 23 |
| Playboytv.com | 1, 2, 15, 17, 21, 22, 23 |
| Thesmokingjacket.com | 1, 15, 17, 22, 23 |
| Playboy Mobile Application | 1, 2, 5, 15, 17, 22, 23 |
| Playboyplus.com | 1, 15, 17, 22, 23 |
| Playboywebmasters.com | 1, 15, 17, 22, 23 |
| Naughtyamateurhomevideos.com | 1, 15, 17, 22, 23 |

## NO DIRECT INFRINGEMENT UNDER 35 U.S.C. § 271(a)

Skky fails to demonstrate direct infringement of any asserted claim of the '875 patent by any of the Accused Instrumentalities as demonstrated by Defendant's supplemental non-infringement charts. Skky's infringement charts demonstrate that Defendant does not perform each and every step or element of the claimed method as fully described in Defendant's supplemental non-infringement charts.  By way of example, Defendant does not transmit compressed audio and/or visual files wirelessly

5

overly the air to a "wireless device means."   Defendant, therefore, does not directly infringe the '875 patent as a matter of law.   *See e.g., 3M Innovative Props. Co. v. Louis M. Gerson Co*., 2011 U.S. Dist. LEXIS 27852, at \* 6 (D. Minn. Mar. 16, 2011) (citing *BMC Res., Inc. v. Paymentech, LP.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007).

## NO JOINT INFRINGEMENT UNDER 35 U.S.C. § 271(a)

Defendant does not jointly infringe the '875 patent under 35 U.S.C. § 271(a) because, *inter alia*, no single party performs, or directs and controls, all of the steps of the asserted method claims.[4]   By way of example, Defendant does not direct or control the compression, storage and/or transmission of digital content to a "wireless device means." At best, third parties, such as third party servers, third party aggregators, third party CDNs and third party cellular carriers – not Defendant – perform the compression, storage and/or transmission steps of the claimed method.[5]   And they do so without any direction or control by Defendant.   Indeed, joint infringement only exists "if one party exercises control or direction over the entire process such that every step is attributable to the controlling party, *i.e*., the mastermind." *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008) (citing *BMC Res. Inc. v. Paymentech L.P.*, 498 F.3d 1373, 1380-81 (Fed. Cir. 2007) (emphasis added).   This control or direction standard is only "satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to

---

[4] Skky's contentions admit that parties other than Defendant, including for example, third party cellular carriers including Verizon and AT&T, transmit digital data to wireless devices.

[5] As stated *infra*, although third parties may transmit digital data to wireless devices, they do not transmit digital data to "wireless device means" as claimed.

complete performance of a claimed method." *Id.* at 1330 (citation omitted) (emphasis added). And vicarious liability will only attach when an agency relationship exists between the parties. *Id.*  If evidence of joint infringement is lacking, the court will not "unilaterally restructure the claim or the standards for joint infringement to remedy ill-conceived claims." *BMC Res.*, 498 F.3d at 1381 (citation omitted).

Skky's infringement charts – and even its cover pleading – fail to identify, *inter alia*, a single "mastermind" that directs and controls any third party infringing activity. *See e.g.*, *NU Flow Techs. (2000) Inc.*, 2014 U.S. Dist. LEXIS 49870, at *5-6.  Skky also fails to demonstrate, *inter alia*, that the third parties referenced in its infringement charts are Defendant's agents. Skky incorrectly suggests that direction and control exists because Defendants purportedly contract with those parties for the compression, storage and/or transmission of digital files.  Not only does Defendant not contract with, at the very least, cellular carriers, arms-length agreements are not enough to prove direction and control.  *See Muniauction, Inc.*, 532 F.3d at 1329 ("where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, *i.e.*, the 'mastermind.' At the other end of this multi-party spectrum, *mere 'armslength cooperation' will not give rise to direct infringement by any party*") (emphasis added) (internal citations omitted). To the contrary, the agreements that are cited by Skky in its infringement claim charts make clear that the third party servers, third party aggregators, third party CDNs and third party cellular

carriers are not agents of Defendant, and that Defendant is not an agent of those third parties. Simply put, Defendant is not liable for the actions of those third parties.

## NO INDIRECT INFRINGEMENT UNDER 35 U.S.C. § 271(b)

Skky's infringement charts fail to meet the requirement set forth in the Court's Amended Scheduling Order that "[f]or each claim that is alleged to have been indirectly infringed, the chart shall include an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement…" (Dkt. No. 76)

Notwithstanding this fatal omission, Defendant does not induce the infringement of any asserted claim of the '875 patent. In fact, the recent *Limelight* decision has completely eviscerated Skky's claims of inducement. The Supreme Court held in *Limelight* that a defendant may not be liable for induced infringement under 35 U.S.C. § 271(b) unless one party has performed, or is the mastermind controlling, all steps of the patented method (*i.e.*, unless one party has committed direct infringement under § 271(a)). *Limelight Networks, Inc. v. Akamai,* 134 S. Ct. 2111, 2119.  Skky itself acknowledges that multiple parties are required to perform all of the method steps of the asserted claims – none of which directs or controls every step.  Because there is no direct infringement of the '875 patent, there can be no indirect infringement of that patent as a matter of law.  Additionally, because Defendant has a good faith belief that the '875 patent is invalid, as evidenced by, *inter alia*, Defendant's Petition for *Inter Partes* Review of the '875 patent, Defendant cannot be liable for induced infringement. *Commil USA, LLC v. Cisco Systems, Inc.*, No. 12-1042 (Fed. Cir. June 25, 2013).

## NO INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

Skky's infringement charts fail to meet the requirement under the Court's Amended Scheduling Order that "[i]f there is a contention that there is infringement of any claims under the Doctrine of Equivalents, the party alleging infringement shall separately indicate this on its Claim Chart…"  (Dkt. No. 76) (emphasis added).  Indeed, none of Skky's infringement claim charts set forth any contention that Defendant infringes under the Doctrine of Equivalents. Skky's infringement claim charts are completely silent in this regard and therefore fatally deficient.

Beyond this fatal omission, Skky's Doctrine of Equivalents arguments are otherwise precluded by the Doctrine of Prosecution History Estoppel.  By way of example, the '875 patent applicants specifically amended and narrowed their claims so that those claims were directed to the transmission of data to a "wireless device means." The examiner cited this amendment and particularly the "wireless device means" when he allowed the claims over the prior art.  Skky's Doctrine of Equivalents argument alleges that transmission to wired devices, such as servers and data storage facilities, is the equivalent of transmission to "a wireless device."  Skky's argument is an inappropriate attempt to expand the scope of the claims and reclaim subject matter that the patentees gave up in order to overcome the prior art.

Similarly, the '875 patent applicants amended and narrowed the claim phrase "optimized and compressing comprises normalizing, sampling and compressing" by deleting the term "optimizing" from that phrase in Claim 1.  Therefore, Skky cannot now attempt to expand the scope of this limitation by arguing that any optimization by

Defendant – which Defendant contends does not exist as properly construed – includes normalizing and sampling. By doing so, Skky is attempting to reclaim subject matter that the patentees gave up in order to overcome the prior art.

The applicants further narrowed the scope of the limitations of the asserted claims throughout the lengthy prosecution of the '875 patent and Defendant may rely on additional estoppel arguments should Skky attempt to exceed the scope of those narrowed limitations.

In addition to the procedural and legal bars to Skky's Doctrine of Equivalents arguments, those arguments are otherwise defective substantively. As stated above and throughout Defendant's amended non-infringement claim charts, Defendant does not transmit compressed audio and/or visual files to a "wireless device means." At best, transmission is performed by third parties without any direction and control by Defendants, and such transmission is not to a "wireless device means" as claimed. Skky acknowledges this fact by stating "Defendant's method of transmitting the compressed audio and/or visual files involves sending the requested compressed audio and/or visual file to a wireless device means, possibly through intermediate entities." Indeed, it is those entities – not Defendant – who may perform the steps that Skky contends infringe the asserted method claims. But they do so without any direction or control by Defendant. Defendant is not involved in the decision of when and how such data is transmitted to a wireless device – let alone a "wireless device means" as claimed. To be clear, any third parties that may wirelessly deliver over the air one or more digital audio

and/or visual files from one or more servers, including those referenced in Skky's infringement contentions, do not do so to a "wireless device means" as claimed.

Because Defendant does not transmit wirelessly over the air compressed audio and/or visual files to a "wireless device means," it does not – and cannot – perform any method with substantially the same function, way or result as the claimed method, or any method that is "insubstantially different" than the claimed method.

There is no "same function" here. Skky incorrectly contends that "Defendant's method of transmission performs substantially the same function of transmitting or sending a compressed audio and/or visual file to a 'wireless device means.' Defendant's method of transmission performs this substantially same function in substantially the same manner because Defendants' method sends the compressed audio and/or visual files to the wireless device means wirelessly over the Internet." But Defendant does not transmit wirelessly over the air compressed audio and/or visual files to a "wireless device means" – let alone perform the same function as the claimed method. Moreover, the transmission to wired devices, such as servers and data storage facilities, is not the equivalent (function) of transmission to "a wireless device."

There is no "same way" here. Skky incorrectly contends that "Defendant knows that the compressed audio and/or visual files will be sent wirelessly to the wireless device means prior to sending the compressed audio and/or visual files. Defendant's method may involve other intermediate entities that pass along the compressed audio and/or visual files prior to the eventual delivery to the "wireless device means." However, one of skill in the art would understand such process to be substantially the same way to

11

perform the function as claimed in the '875 patent."  But the "intermediate entities" acknowledged in Skky's assertion above, operate independently of Defendant without any direction and control by Defendant.  Defendant is not involved in the decision of whether, when or how intermediaries, such as cellular carriers, may transmit data to wireless devices.  Moreover, the transmission to wired devices, such as servers and data storage facilities, is not the equivalent (way) of transmission to "a wireless device means"

And there is no "same result" here.  Skky incorrectly contends that "Defendant's method achieves substantially the same result of sending the compressed audio and/or visual files to the wireless device means. Defendant expects and/or demands of all intermediate entities that the compressed audio and/or visual files be sent to the requesting wireless device means."   However, because Defendant does not transmit wirelessly over the air compressed audio and/or visual files to a wireless device means there can be no "same result" as the claimed method in which compressed audio and/or visual files are transmitted to "wireless device means." Defendant performs no method that causes the transmission of compressed audio and/or visual files wirelessly over the air to a "wireless device means."

Moreover, Skky's Doctrine of Equivalents arguments concerning "wireless device means" are at least belied by the proper construction for the structure for "wireless device means" under 35 U.S.C. § 112(6) as proposed by Defendant, *i.e.*, a "Cell phone 202 attached to an accessory unit 204 incorporating a board 203 including the following main blocks: digital Signal Processor 300, flash memory element 302, random access memory

element 305, initial bootstrap chip 306, analogue interface element 308 and digital interface element 310 or equivalents thereof." There is inadequate support in the specification for Skky's proposed construction. At best, the specification enables only an accessory unit (*i.e.*, "Jellyfish"). It provides no algorithms for the software embodiment, and no algorithms or structure for the chip embodiment. Even assuming *arguendo* that Skky's proposed construction of "wireless device means" under 35 U.S.C. § 112(6) is correct – which it is not – Skky's implication that a cellphone from 2001 is equivalent to a cellphone post-2009 when the '875 patent issued is simply not credible.

To be clear, the wireless devices that are illustrated in Skky's infringement claim charts are substantially different structurally than the "wireless device means" claimed in the '875 patent as properly construed. It is, therefore, not surprising that Skky, in its Amended Infringement Contentions and accompanying charts, did not even attempt to demonstrate that illustrated accused devices are structurally the same or structurally equivalent to the "wireless device means" as claimed. This omission is fatal to not only Skky's Doctrine of Equivalents, but all of its claims of infringement.

Defendant reserves all rights to further supplement and/or amend Defendant's Supplemental Non-infringement Contentions for the aforementioned reasons set forth herein.

Dated:      November 14, 2014

/s/ Frank M. Gasparo
Barbara Podlucky Berens (#209788)
Justi Rae Miller (#387330)
**Berens Miller, P.A.**
3720 IDS Center 80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 349-6171
Facsimile: (612) 349-6416
Bberens@berensmiller.com
Jmiller@berensmiller.com

Frank M. Gasparo (Admitted *Pro Hac Vice*)
Todd M. Nosher (Admitted *Pro Hac Vice*)
Jillian A. Centanni (Admitted *Pro Hac Vice*)
**Venable LLP**
1270 Avenue of the Americas
Twenty-Fourth Floor
New York, New York 10020
Telephone:  (212) 307-5500
Facsimile:  (212) 307-5598
fmgasparo@venable.com
tmnosher@venable.com
jacentanni@venable.com

Tamany Vinson Bentz (Admitted *Pro Hac Vice*)
**Venable LLP**
2049 Century Park E,
Los Angeles, CA 90067
Telephone:  (310) 229-9900
Facsimile: (310) 229-9901
tvbentz@venable.com

*ATTORNEYS FOR PLAYBOY ENTERPRISES, INC.*

14

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 14, 2014, a true and correct copy of the foregoing was served via electronic mail upon:

Ronald J. Schutz
Cyrus A. Morton
Ryan Schultz
William Bornstein
Benjamen Linden
ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Phone: (612) 349-8500
rjschutz@rkmc.com
camorton@rkmc.com
rmschultz@rkmc.com
wbornstein@rkmc.com
bclinden@rkmc.com


/s/ Todd M. Nosher
Todd M. Nosher